UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

JAMES McMANUS on behalf of 1932 McGRAW
AVENUE, LLC, 47 POPLAR OWNERS LLC, and
and JAMES McMANUS, individually,

                                        Plaintiff,

—against—

JOHN C. LETTERA, STEVE WISSAK, PAT MARUGGI,
BRIAN T. WALTER, ANTHONY C. BALBO,
FAIRBRIDGE MORTGAGE LLC d/b/a/ FAIRBRIDGE
CREDIT LLC, FAIRBRIDGE ASSET MANAGEMENT
LLC, FAIRBRIDGE STRATEGIC CAPITAL LLC,
REALFI PRIVATE LENDING LLC, REALFI CAPITAL
FUNDING LLC,

                                        Defendants.
-------------------------------------------------------------------------X

Case No.: 25-10573

**COMPLAINT**

JURY TRIAL
DEMANDED

## PRELIMINARY STATEMENT

1. This action arises out of an extensive pattern of racketeering activity and financial misconduct

by Defendants Fairbridge Mortgage LLC d/b/a/ FAIRBRIDGE CREDIT LLC, Fairbridge Asset

Management LLC, Fairbridge Strategic Capital LLC, and all shell corporations, and their

principals John C. Lettera, Steve Wissak, Brian T. Walter Anthony C. Balbo, and employee Pat

Maruggi, who, in concert with affiliated entities including Realfi, Private Lending LLC and Realfi

Capital Funding LLC, engaged in a multi-year fraudulent scheme to extort, defraud, physically

and financially cripple Plaintiff, James McManus, 1932 McGraw Avenue LLC and 47 Poplar

Owners LLC, through fraudulent inducements, usurious lending practices, and unlawful UCC

foreclosures.

2. The predicate acts described herein—including mail fraud, wire fraud, and extortion under 18 U.S.C. §§ 1341, 1343, and 1951—constitute a pattern of racketeering activity as defined under 18 U.S.C. § 1961 et seq. and actionable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d).

3. Through a pattern of deception and coercion spanning from October 2021 through October 2025, Defendants manipulated Plaintiff into a series of loan transactions involving the property located at 1932 McGraw Avenue, Bronx, New York, and related projects in New Milford, Connecticut and 181 West 135th Street, New York, extracting millions of dollars in unlawful payments, triggering repeated fraudulent defaults, and leveraging sham UCC filings to seize or threaten seizure of valuable collateral.

## PARTIES

4. Plaintiff James McManus (Plaintiff") is an individual residing in the State of New York and was a guarantor on certain development loans related to 1932 McGraw Avenue, Bronx, New York.

5. 1932 McGraw Avenue, LLC is a limited liability company licensed to do business within the State of New York.

6. 47 Popular Owners, LLC is a limited liability company licensed to do business within the State of Connecticut.

7. Defendant Fairbridge Mortgage LLC ("Fairbridge") is a limited liability company organized under the laws of the State of New York and engaged in private lending and asset management.

8. Defendant Fairbridge Asset Management is an affiliated entity and alter ego of Fairbridge LLC.

9. Defendant Fairbridge Strategic Capital is an affiliated entity and alter ego of Fairbridge LLC.

10. Defendant Realfi, Private Lending LLC, ("Realfi") is a lending company that, together with Fairbridge, jointly structured and funded the original and "upsized" loans referenced below.

11. Defendant Realfi Strategic Capital Funding is an affiliated entity and alter ego of Realfi LLC.

12. Defendant John C. Lettera ("Lettera") is an attorney and principal of Fairbridge, a self-described founder of the company and active participant in all acts alleged herein.

13. Defendant Steve Wissak ("Wissak") is a co-founder and partner of Fairbridge and participated in the fraudulent inducement of Plaintiff's loans and subsequent acts of extortion.

14. Defendant Pat Maruggi ("Maruggi") was responsible for unwriting loans issued by Fairbridge who facilitated false communications and payoff calculations.

15. Defendant Brian T. Walter ("Walter") is co-founder and managing partner of Fairbridge and participated in the fraudulent inducement of Plaintiff's loans and subsequent acts of extortion.

16. Defendant Anthony C. Balbo ("Balbo") is an attorney and partner of Fairbridge Mortgage LLC.

## JURISDICTION AND VENUE

17. Jurisdiction over this action is conferred upon this court by 28 U.S.C §1331, 18 U.S.C §1962(c)-(d) and 18 U.S.C §1964. Supplemental jurisdiction over state law claims is proper under 28 U.S.C §1367.

18. Venue is proper under 28 U.S.C §1391(c) whereas the vast majority of the wrongful acts known to plaintiffs as alleged herein with particularity were carried out within the Southern District of New York.

## FACTUAL ALLEGATIONS

19. On October 28, 2021, Plaintiff and his associates closed on the property located at 1932 McGraw Avenue, Bronx, NY, intending to develop it into an 11-unit residential building.

20. Defendant Fairbridge entered into a pledge agreement with plaintiff pursuant to a consolidated, amended, and restated notes in the aggregate amount of $2,100,000.

21. Plaintiff McManus was made a guarantor of the loan even though there was a $5,000,000 judgment against him and possessed no personal assets.

22. Defendants knew of the plaintiff's criminal history, and despite this, still allowed and even encouraged the plaintiff to serve as a guarantor for numerous loans on behalf of 1932 McGraw Avenue LLC, and 47 Poplar Owners LLC.

23. The defendant's conduct must be taken in the context of a lifelong friendship of which the plaintiff was a part and for which he relied to his detriment in good faith.

24. The history of the parties shows that the defendants were well aware of and accepted the plaintiff's participation and the benefits thereof, despite his criminal history.

25. On June 3, 2022, the parties financed the acquisition of air rights, increasing the scope of development to 23 units for the McGraw Avenue property.

26. On September 13, 2022, as requested by defendants, plaintiff emailed new plans and budget for 1932 McGraw Avenue, Bronx, NY, accounting for the increase from 11 residential units to 23 units.

27. From July through September 2022, Defendants fraudulently induced Plaintiff to rely on their written promises to "upsize" the existing construction loan to match the increased project scope.

28. Defendants then refused to fund the project erroneously claiming budget deficiencies despite having received and acknowledged plans and cost breakdowns demonstrating no deficiencies.

29. On October 7, 2023, and October 9, 2023, defendant Lettera sends a text message to plaintiff stating he needs a forbearance agreement document on 1932 McGraw Avenue executed due to defendants unlawfully accelerating the note even though no acceleration was triggered under the agreement.

30. On October 10, 2023, due to fear that defendants would attempt to unlawfully transfer the property to themselves, James McManus sent a text message to John Lettera stating the forbearance agreement will be signed by David Delucia.

31. On December 6, 2023, a meeting was held at Fairbridge's Office regarding the delayed then rejected financing delineated above and defendants' unlawful acceleration of the terms of the loan.

32. Defendants continued their false claims they were not responsible for any delay on the project located at 1932 McGraw Avenye, Bronx, NY because they never received the new plan or budget and that they have complied with the terms of the note and agreements between the parties which was demonstratively false.

33. Thereafter, defendants continued their campaign of delay, deception, and coercion, falsely representing that loan extensions and additional funding were approved and forthcoming while continuing to extract default interest payments and fees on the outstanding loan, even though all payments were made in full and timely, thereby fraudulently increasing the overall debt load upon plaintiff rendering it impossible to satisfy.

34. On January 25, 2024, defendants insisted plaintiff to sign a listing agreement from Ariel Properties, Fairbridge's "preferred" real estate broker, stating that Fairbridge recommended they use this "to test the market" revealing, yet again, defendants' true intentions were to unlawfully deem the loan agreement between the parties in default, seize, and sell the property to further enrich themselves.

35. In February 2024, Defendants issued another default notice while simultaneously engaging Plaintiff in negotiations for new loans and representing they had no intention of foreclosing on the property or transferring ownership of McGraw LLC, further demonstrating the bad-faith nature of their negotiations.

36. On February 9, 2024, David Delucia, an officer and member of 1932 McGraw Avenue, LLC, emailed defendants regarding the latest Notice of Default for the McGraw Avenue property requesting an accounting of fees, interest charges and all calculations since he has not yet received a response.

37. On February 13, 2024, Mr. Delucia again emailed defendants requesting an accounting of the loan in relation to the default notice. Defendants failed to respond to either email.

38. On February 26, 2024, defendant Lettera requested a meeting with plaintiff. Plaintiff had major surgery scheduled later that week of which Mr. Lettera was aware. Defendant responded, stating that offers for the 1932 McGraw Avenue location were between $1,000,000 and $1,300,000 which needed to be discussed immediately.

39. On March 4, 2024, defendant Lettera insisted plaintiff immediately provide videos and pictures of footings for the 1932 McGraw Avenue location.

40. Plaintiff responded that he was still recovering from surgery and was suffering from secondary effects such as night sweats, insomnia, and inability to ambulate without assistance.

41. During this time, plaintiff was prescribed oxycontin for his pain which was administered in March, May and December 2024. However, he would endeavor to provide the requested information to defendants.

42. On March 6, 2024, plaintiff delivered photos of the footing to defendants. Plaintiff also mentioned that he was utilizing crutches and almost lost consciousness while doing so.

43. Thereafter, defendant Lettera threatened to file a lawsuit against Michael Mastrogiacomo, plaintiff's engineer retained for the McGraw property.

44. Defendant claimed he was "angry" that Mastrogiacomo was working with plaintiff to draft engineering plans.

45. His true predicate for threatening the lawsuit was to isolate plaintiff so other vendors would be fearful of being engaged, for fear of litigation thereby frustrating plaintiff's ability to improve the property, making it more likely plaintiff would enter default on the loan funded by defendants allowing them to seize the property which was their goal.

46. In furtherance of defendants' pressure campaign, Lettera threatened to issue a "subpoena" for plaintiff's engineer, no lawsuit or seeming right to issue such subpoena existed, for an unknown purpose.

47. Plaintiff felt pressured to accept the issuance of said subpoena due to defendants' threat of holding the McGraw loan in default.

48. Ultimately, no subpoena was issued or lawsuit filed as this was simply another "loan shark" tactic engaged in by defendants to further their goal of unlawfully obtaining the McGraw property from plaintiff.

49. On August 14, 2024, after several more months of threatening default even while plaintiff was making timely and full payments, defendants sent an email rescinding their previously promised offer to further finance both the McGraw and Poplar projects.

50. Between February and September 2024, Defendants repeatedly threatened foreclosure, demanded payments under duress, and fabricated payoff figures to induce Plaintiff to make further "forbearance" payments.

51. Plaintiff complied under duress and while suffering serious medical conditions, including a sextuple bypass and heart valve surgery necessitated by stress caused by Defendants' conduct.

52. In September 2024, Defendants filed the first of several UCC-1 financing statements against 1932 McGraw Avenue, a tactic they later repeated in February 2025 and September 2025, each time leveraging the filings to extort money from and unlawfully seize Plaintiff's assets.

53. On October 2, 2024, plaintiff received additional correspondence from Fairbridge's Accounting department stating plaintiff owed around $590,000 in interest on all loans and that they officially entered a "grace period" thereby continuing a pattern of strongarm tactics against plaintiff.

54. On January 1, 2025, and January 28, 2025, defendant Lettera sent numerous texts messages to plaintiff insisting he enter a sale with Ariel Properties brokerage regarding the 1932 McGraw Avenue property and that they need to end the construction project immediately.

55. On January 28, 2025, plaintiff replied that he is recovering from significant injuries since he was involved in a car accident the day before.

56. Thereafter, defendant Lettera continued his harassment and pressure campaign telephonically and via text against plaintiff insisting plaintiff must sell the McGraw property either to or via his broker, Ariel Properties.

57. On or about March 25, 2025, plaintiff met with a potential business parter for the McGraw Avenue property to satisfy the debt held by defendants.

58. During their due diligence, the investor's office, utilizing the City of New York's online research tool ACRIS, had come to learn defendants sold the mortgage notes several years ago to American Life and Security Corporation.

59. On March 25, 2025, when asked about American Life and Security Corporation defendant Lettera informed plaintiff the assignment of the loan was made to an old credit facility. This information was never disclosed to plaintiff.

60. On March 31, 2025, the investor issued a Letter of Intent to satisfy the outstanding amount of the loan in full.

61. Throughout the end of March until May 2025 defendant Lettera continued his pattern of harassment delivering various correspondence to plaintiff insisting, he sell the McGraw property to or via Ariel Properties.

62. Defendants' actions extended beyond McGraw Avenue, targeting Plaintiff's unrelated projects in New Milford, Connecticut, and 181 West 135th Street, New York, where they conditioned new financing upon additional payments or concessions on McGraw Avenue.

63. In May 2025, Defendants falsely represented that the McGraw Avenue note would be sold to an entity named "Mavic" unless Plaintiff paid $1 million to "keep the loan on the books."

64. On June 25, 2025, Lettera sends plaintiff a text message stating he is meeting with Fairbridge legal counsel to auction plaintiff's membership interest in McGraw and force a sale of the property.

65. Shortly thereafter a business parter of plaintiff, non-party Bozhena Shevchenko, required some liquidity for repairs in conjunction with an unencumbered property located at 181 West 135th Street, New York, New York. Said property had a valuation of approximately 7 million dollars.

66. The opportunity to mortgage the property was presented to Fairbridge.

67. Defendants were very interested in the transaction and requested Ms. Shevchenko order a title report and enter into a real estate tax escrow agreement to effectuate it.

68. They further stated they would condition the loan of $1.3 million on applying or "wrapping" it on the McGraw Ave property.

69. The loan would also not be funded at closing as defendants would retain and fund it as needed for the McGraw property similar to a line of credit. Ms. Shevchenko found this acceptable.

70. On July 21, 2025, defendants presented to plaintiff and his partner a Letter of Intent delineating the terms for the 181 West 135th transaction.

71. On or about August 13, 2025, a conference call with defendants was held regarding the transaction including the term of "wrapping" $1.3 million of the loan against the McGraw Avenue property.

72. On or about August 15, 2025, defendant Lettera left plaintiff a voicemail suddenly rejecting the offer and proposing the plaintiff sever the 181 West 135th Street property from the transaction and simply deed over the property located at 181 West 135th Street.

73. On or about August 17, 2025, Defendant repeatedly asked plaintiff in a threatening manner when he was going to deed the McGraw property to him.

74. On August 22, 2025, plaintiff received an email from Ariel Properties, cc'ing defendants, that states they have a potential buyer for the McGraw project for over $2 million.

75. Shortly thereafter, McManus received text messages along with several phone calls from defendant Lettera.

76. Lettera insisted plaintiff accept this offer although he had doubts about the legitimacy of it.

77. Plaintiff then informed defendant he had no desire to sell the property.

78. On September 4, 2025, James McManus contacted Lettera requesting confirmation of the 1 million paydown of the loan encumbering the McGraw property.

79. He responded that it was not a paydown rather a "mortgage" to stay the foreclosure.

80. On September 19, 2025, plaintiff received a text message from his engineer, stating defendants asked him to obtain information on the McGraw project, a bizarre request.

81. Plaintiff then inquired why defendants would directly contact his engineer regarding the McGraw property.

82. Lettera responded that a "Mr. Gold" from Ariel properties emailed him and requested information for the potential buyer because he could not reach me.

83. Plaintiff informed defendant that this request was completely inappropriate and that Ariel is not his broker.

84. Defendant Lettera, an attorney and professor at Pace Law school, sounding panicked responded "forget I did it, you handle it, I am out of this…".

85. Plaintiff then emailed Ariel Properties stating they were "no longer" his broker since any exclusive agreement had previously lapsed and it was tortious interference to contact his lender without his consent.

86. Lettera did this to ascertain the actual value of the McGraw Avenue property to force a sale.

87. Despite receiving the $1 million "paydown," Defendants continued their campaign of fraudulent UCC filings, including the third UCC auction notice in October 2025, demonstrating an ongoing pattern of racketeering activity.

88. On October 7, 2025, defendant Lettera demanded payment of over $50,000 for legal expenses and to postpone auction until December of 2025.

89. Defendant delivered a text message to plaintiff later that day stating he needs the $50,000 by the next day to consent to adjourn the auction of the McGraw Avenue LLC assets.

90. On October 8, 2025, Lettera demanded payment again, lowering the price of his legal expenses to $25,000 stating this will postpone the aforesaid auction until December of 2025.

91. Plaintiff was unable to make this payment.

92. On or about October 14, 2025, defendants did conduct a foreclosure auction of the membership units of the McGraw LLC transferring them to themselves.

93. Simultaneously, and in retaliation, defendants delivered a notice of default and reservation of rights regarding the loan on 47 Poplar St, New Milford, CT.

94. On October 15, 2025, defendants, via counsel, delivered the following correspondence to plaintiff to "legalize" their fraudulent transfer of plaintiff's assets:

> "My client is amenable to a resolution on the transaction (and will agree to waive any deficiency claims under the existing payment guaranty and performance obligations under the completion guaranty) if your clients acknowledge the effectiveness of the UCC auction that occurred yesterday. For that acknowledgment we will agree to provide an option agreement back for the remainder of this year where the option price will consist of all amounts due and owing under the loan through the repurchase date."

95. Between October and November 2025, the defendants placed a physical sign at the property located at 1932 McGraw Avenue misrepresenting and asserting new ownership and claiming authority over all vehicles towed from the premises purportedly allowing them to remove vehicles and equipment.

96. On December 12, 2025, defendants delivered to plaintiff a proposed agreement regarding their retaliatory notice of default 47 Poplar Owners LLC.

97. Defendants demanded an additional $1 million while simultaneously depleting interest reserves on the Poplar loan thereby enriching defendants an additional $500,000 via delaying the New Milford project an additional 10 months costing plaintiff several millions in gains.

98. This had the impact of transferring the McGraw Avenue property to defendants since it was the sole asset held by the LLC.

99. Defendants' actions caused Plaintiff severe financial losses, reputational harm, and physical injury.

## FIRST CAUSE OF ACTION

### (Civil RICO – 18 U.S.C. § 1962(c) and Enterprise Corruption Penal Law §460.20)

100. Plaintiff repeats and realleges paragraphs 1–23 as though fully set forth herein.

101. Defendants constituted an "enterprise" within the meaning of 18 U.S.C. §1961(4), engaging in interstate commerce through lending, mail, and wire communications.

102. Through repeated acts of wire fraud, mail fraud, and extortion, Defendants engaged in a pattern of racketeering activity spanning more than three years, intended to defraud and financially ruin Plaintiff.

103. Defendants and their associates are a version of what today's modern-day mafia strives for.

104. Calculated intimidation, threats, misdeeds inducing stress leads to physical harm and life-threatening events as well as financial ruin.

105. Defendants and their affiliated companies are comprised of professional con-artists and disbarred attorneys.

106. Defendant Lettera once stated to plaintiff that he " (g)ot his start in lending as a shylock with the mafia."

107. A "shylock" is an individual who demands an exorbitant price or harsh payment for a debt, becoming synonym for greed and usury. To "Shylock" means to exploit someone financially, a merciless creditor.

108. Defendants and their affiliated entities conducted themselves in this manner towards plaintiff of the course of several years.

109. This is Wrong on all levels and is the courts sworn responsibility under the constitution to punish and prosecute especially those sworn to a higher standard in this case Fairbridge.

110. As a direct result, Plaintiff suffered damages exceeding $25,000,000, including lost property value, lost development profits, and severe personal injuries.

111. Plaintiff is entitled to treble damages, costs, and attorney's fees under 18 U.S.C. §1964(c).

## SECOND CAUSE OF ACTION

### (RICO Conspiracy – 18 U.S.C. § 1962(d))

112. Defendants conspired among themselves to further the fraudulent scheme and conceal their unlawful conduct through falsified payoff calculations, fabricated communications, and threats of foreclosure unlawfully compelling plaintiff's loss of his assets and property.

113. Each Defendant knowingly participated and performed overt acts in furtherance of the conspiracy.

## THIRD CAUSE OF ACTION

### (Common Law Fraud)

114. Defendants knowingly made false representations concerning loan modifications, funding commitments, and payoff obligations, intending to induce Plaintiff's reliance and payments.

115. Plaintiff reasonably relied upon those misrepresentations to his detriment, sustaining substantial monetary and consequential damages.

## FOURTH CAUSE OF ACTION

### (Economic Duress and Extortion)

116. Defendants repeatedly used threats of foreclosure, reputational harm, and financial ruin to extract payments and concessions from Plaintiff.

117. Such conduct constitutes economic duress and unlawful extortion under both New York common law and federal statutes.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

118. Defendants' conduct—repeatedly threatening financial ruin, coercing payment under duress while Plaintiff was recovering from major heart surgery and abusing their fiduciary-like position— was extreme, outrageous, and beyond all bounds of decency.

119. As a result, Plaintiff suffered severe emotional distress and physical harm.

## SIXTH CAUSE OF ACTION

### (Fraudulent and Voidable Transfer of Real Property – DCL §§ 273, 274, 276 – UVTA)

120. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

121. At all relevant times, Plaintiff was a guarantor of real property located at 1932 McGraw Avenue Bronx, New York, more fully described as Block 3931 and Lot 18 (the "Property").

122. At the time of the transfer described below, Plaintiff was a debtor of Defendant, having a right to payment arising from a construction loan, in the amount of $2,100,000.

123. Upon information and belief, on or about October 14, 2025, Defendant creditor unlawfully transferred the Property to itself for little or no reasonably equivalent value.

124. The Transfer was made with actual intent to hinder, delay, or defraud Plaintiff and/or other creditors, and is therefore voidable under DCL § 273(a)(1).

125. In the alternative, the Transfer is voidable as a constructive fraudulent transfer under DCL § 274 and/or § 275, because:

      a.  The Transfer was made without receiving reasonably equivalent value; and

      b.  Plaintiff was either (i) insolvent at the time of the Transfer, (ii) rendered insolvent as a result of the Transfer, or (iii) engaged or about to engage in a transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

126. Plaintiff has been damaged by the Transfer, which has frustrated or obstructed the satisfaction of Plaintiff's claim.

## SEVENTH CAUSE OF ACTION

### (Fraudulent and Voidable Transfer of LLC Membership Interest – DCL §§ 273, 274, 275 – UVTA)

127. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

128. At all relevant times, plaintiff was a guarantor of the loan for the McGraw, LLC, a New York limited liability company (the "LLC"), which held significant assets and income-producing operations.

129. At the time of the events described herein, defendant was a creditor of plaintiff, having a right to payment in the amount of approximately $2,100,000, arising from a construction loan.

130. On or about October 14, 2025, Defendant unlawfully transferred or assigned all or a portion of the LLC membership interest to itself, even though Plaintiff was not in default and without Plaintiff receiving reasonably equivalent value in exchange (the "Transfer").

131. The Transfer was made with actual intent to hinder, delay, or defraud Plaintiff and/or other creditors, and is therefore voidable under DCL § 273(a)(1).

132. Alternatively, the Transfer is voidable as a constructive fraudulent transfer under DCL § 274 and/or § 275, because:

      a.  Plaintiff did not receive reasonably equivalent value in exchange for the membership interest; and

      b.  Plaintiff was insolvent at the time of the Transfer or became insolvent as a result of the Transfer.

133. As a result, Plaintiff has been deprived of access to a valuable asset that could have satisfied or partially satisfied the debt owed.

## EIGHTH CAUSE OF ACTION

### (Deceptive Acts and Practices Unlawful)

134. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

135. Defendant's conduct as described above constitutes deceptive acts and practices in the conduct of business, trade, or commerce or in the furnishing of services in violation of New York General Business Law § 349(a).

136. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

137. Defendants engaged in consumer-oriented conduct that was misleading in a material respect.

138. Specifically, Defendant unlawfully transferred McGraw, LLC interests and the property it owned to itself even though Plaintiff was not in default of its loan obligations.

139. These deceptive acts and practices were directed at consumers and have a broad impact on the public at large.

140. A reasonable consumer would have been misled by Defendant's conduct.

141. Plaintiff suffered actual injury because of Defendant's deceptive acts, including but not limited to significant and severe financial loss.

142. Defendants deceptively coerced Plaintiff to transfer money, assets, and cause a significant diminution of value of properties to unjustly enrich themselves to the detriment of plaintiff and the businesses.

143. Defendants' deceptive acts were committed knowingly and maliciously with intent to deceive Plaintiff.

144. The Defendants knew their representations and/or omissions, or the representations they were facilitating, were deceptive and that they would be relied upon by Plaintiff.

145. Plaintiff has been damaged in that, upon information and belief, the defendants did unlawfully take, misappropriate, embezzle, abscond, sell, and remove both money and assets from the companies for their own personal use and benefit to the detriment of plaintiff and the business.

146. Plaintiff justifiably relied upon Defendants' deceptive acts and representations.

147. Defendants fraudulent scheme was undertaken in the conduct of their business and in the furnishing of services in the State of New York, in violation of New York General Business Law § 349(d), et. seq.

148. Defendants' materially deceptive acts and practices have damaged Plaintiff by depriving him of several millions of dollars due and owing to plaintiff and a significant diminution of value of jointly held properties and assets for the sole benefit of defendants.

149. Defendant's actions were willful and knowing, and as a result, Plaintiff is entitled to recover actual damages, statutory damages, and reasonable attorneys' fees and costs, pursuant to GBL § 349(h).

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

150. Plaintiffs reallege, replead and incorporate by reference all paragraphs set forth as if fully set forth herein.

151. The Defendants' scheme to defraud Plaintiffs was engineered and conducted for the sole benefit of Defendants.

152. Upon information and belief, the defendants did unlawfully take, misappropriate, embezzle, abscond, sell, and remove both money and assets from plaintiff's business for their own personal use and benefit to the detriment of plaintiff and the business.

## TENTH CAUSE OF ACTION

### (Demand for Accounting)

153. Plaintiffs repeat and reallege the foregoing paragraphs as if fully restated herein.

154. Defendants have in the past and continues to this day to exercise exclusive management and control over the loan agreement, charges, interest calculation, account(s), ledgers and other books and records.

155. Defendants thus possess a monopoly on information necessary for monitoring defendants' compliance with their agreement with and legal obligations to plaintiff, including, without limitation, a monopoly on information concerning the payments, receipts, charges, and credits concerning the loan afforded plaintiff's business.

156. Plaintiff has a right and reasonable expectation to complete financial and other information about the loan payments, interest, costs, and disbursements charged.

157. The information to which plaintiff has a right and reasonable expectation has been denied to him.

158. The damages suffered and continuing to be suffered by plaintiff due to defendants illegal and improper conduct cannot be fully ascertained without a full accounting with respect to the loan(s) and agreement(s) entered into between the parties.

159. Plaintiff has a right to a full accounting from defendants for the operations of Empire from the date of commencement of operations.

### ELEVENTH CAUSE OF ACTION

### (Tortious Interference with a Contract)

160. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

161. At all relevant times, Plaintiff had a valid and enforceable contract with Ariel Properties, at the insistence of defendants, to list the property located at 1932 McGraw Avenue for 90 days.

162. Defendants had knowledge of the existence of the contract between Plaintiff and Ariel Properties or reasonably should have known of its existence.

163. Despite this knowledge, Defendant intentionally and without justification interfered with the contract by pressuring the plaintiff to make decisions on this potential sale in a timeframe that was outside of normal practice (48 hours to sign, potential purchasers declined the offer).

164. Defendant's interference was intentional, wrongful, and done with the purpose of causing a breach of the contract or otherwise rendering Plaintiff's rights under the contract more difficult or burdensome to perform.

165. As a direct and proximate result of Defendant's interference, the contract was breached, or its performance was otherwise impaired, and Plaintiff suffered actual damages, including but not limited to lost profits, loss of business opportunity, reputational harm, etc.

166. Defendant's actions were willful, wanton, and malicious, entitling Plaintiff to an award of punitive damages in addition to compensatory damages.


## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

a)      Treble damages pursuant to 18 U.S.C. §1964(c);

b)      Compensatory damages in an amount to be determined at trial, but not less than $25,000,000.

c)      Punitive damages;

d)      Rescission of all fraudulent loan agreements and UCC filings;

e)      Injunctive relief barring Defendants from further enforcement actions;

f)      Attorney's fees, interest, and costs; and

g)      Such other and further relief as this Court deems just and proper.

Dated: Bronx, New York
December 12, 2025

Andrew C. Laufer
Attorney for Plaintiff
LAW OFFICE OF ANDREW
C. LAUFER, PLLC
264 W 40th Street, Suite 604
New York, NY 10018
P: (212) 422-1020
alaufer@lauferlawgroup.com

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK    )
                               ss:

COUNTY OF NEW YORK  )

      **James McManus**, individually, being duly sworn, deposes and states as follows:

      I am the plaintiff in the above- entitled action and therefore am fully familiar with the circumstances surrounding this situation. I have read the foregoing Summons and Verified Complaint and know the contents thereof; that the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

Dated: New York, New York
       December  1/2025

James McManus

Sworn to and subscribed before me
On the ___ day of _____ ,

_____
      NOTARY PUBLIC

Andrew Charles Laufer
Notary Public, State of New York
No. 01LA5057516
Qualified in Nassau County
Commission Expires Nov. 08, 2024