# EXHIBIT 1

<u>OWNERSHIP INTERESTS PLEDGE AND SECURITY AGREEMENT</u>

THIS OWNERSHIP INTERESTS PLEDGE AND SECURITY AGREEMENT (this "<u>Agreement</u>") is made as of the 19th day of February, 2021, by and between DAVID DELUCIA, a New York resident with an address at 243 Manhattan Avenue, Yonkers, New York 11010 (hereinafter collectively referred to as the "<u>Pledgor</u>"), and REALFI REAL ESTATE INVESTMENT TRUST LLC, a Delaware limited liability company with its place of business at 707 Westchester Avenue, Suite 305A, White Plains, New York 10604 ("<u>Lender</u>").

WHEREAS, pursuant to the terms of the Secured Promissory Note, the Mortgage, Assignment of Leases and Rents and Security Agreement and any and all other security documents and guarantees securing the note (collectively herein, the "<u>Loan Documents</u>") of even date herewith between 1932 MCGRAW AVENUE LLC., a New York limited liability company (the "<u>Company</u>") and Lender, Lender has agreed to make that certain secured loan to the Company in the principal amount of FIVE HUNDRED SEVENTY-SIX THOUSAND AND XX/100 DOLLARS ($576,000.00) (the "<u>Loan</u>"); and

WHEREAS, the Pledgor is a Member of the Company; and

WHEREAS, in order to induce Lender to make the Loan, it is a condition precedent under the Loan Documents that Pledgor shall have (a) granted to Lender the security interests, and undertaken the obligations, set forth in this Agreement, and (b) executed and delivered to Lender this Agreement.

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Pledge of Collateral</u>. Pledgor hereby irrevocably and unconditionally pledges and assigns to Lender, and irrevocably and unconditionally grants to Lender a security interest in, all of Pledgor's right, title, and interest in and to the following (the "<u>Collateral</u>"):

(a)    the Pledged Interests (hereinafter defined) together with all rights to Distributions (hereinafter defined) or other payments arising therefrom or relating thereto, and all options, rights, instruments, and other property or proceeds from time to time received, receivable, or otherwise distributable in respect of or in exchange for any or all of the Pledged Interests;

(b)    to the extent not covered by subparagraph (a), all rights to receive all income, gain, profit, loss, or other items allocated, allocable, distributed, or distributable to Pledgor under the Organizational Documents of the Issuer, and all general intangibles, accounts, investment property, payment intangibles, supporting obligations, other contract rights or rights to the payment of money, and all proceeds, as each of the foregoing terms is defined in the UCC, arising out of, or in connection with, membership interests in Issuer;

(c)    all of Pledgor's ownership interest in any capital accounts in the Issuer;

(d) all of Pledgor's voting, consent, management, management removal and replacement, and approval rights, and/or rights to control or direct the affairs of the Issuer, inclusive of the management rights of the Pledgor in the Company, as set forth in the Shareholders Agreement;

(e) any additional ownership interests of, and any ownership interests exchangeable for or convertible into and warrants, options, and other rights to purchase or otherwise acquire shares of ownership interests of, the Issuer, or entity which is the successor of the Issuer, from time to time acquired by Pledgor in any manner (all of which interests shall be deemed to be part of the Pledged Interests), and any certificates or other instruments representing such additional interests, warrants, options, and other rights, and all Distributions and other property or proceeds from time to time received, receivable, or otherwise distributed or distributable in respect of or in exchange for any or all of such additional shares, warrants, options, or other rights. Pledgor agrees that Lender may from time to time attach as Schedule A hereto an updated list of the Collateral at the time pledged to Lender hereunder (although the failure to so update Schedule A shall not limit the pledge of such additional interests to Lender); and

(f) to the extent not covered by clauses (a) through (e) above, all proceeds of any or all of the foregoing Collateral. For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Collateral or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, proceeds of any indemnity or guaranty payable to Pledgor from time to time with respect to any of the Collateral.

2. <u>Certain Definitions</u>. Capitalized terms used herein without definition shall have the respective meanings provided therefor in the Loan Documents. Terms (whether or not capitalized) used herein and not defined in the Loan Documents or otherwise defined herein that are defined in the Uniform Commercial Code as in effect in the State of New York or other applicable jurisdiction (the "<u>UCC</u>") have such defined meanings herein, unless the context otherwise indicates or requires. In addition, the following terms used herein shall have the following meanings:

(a) "<u>Article 8 Matter</u>" means any action, decision, determination or election by the Issuer or its members that the membership interest in the Issuer be, or cease to be, a "security" as defined in and governed by Article 8 of the UCC, and all other matters related to any such action, decision, determination or election.

(b) "<u>Contractual Obligation</u>" means, as to any Person, any contract, agreement, or undertaking, regardless of how characterized, oral or written, to which such Person is a party, or by which such Person or such Person's property is bound, or to which such Person or such Person's property is subject.

(c) "<u>Distributions</u>" means any distribution of property (including cash) (regardless of whether from cash flow, capital transactions, or otherwise) on account of a Pledged

Interest, or any other distribution or payment on or in respect of any membership interest or the redemption or repurchase thereof.

(d)     "Governmental Authority" means any national, state, or local government, any political subdivision thereof, or any other governmental, quasi-governmental, judicial, public, or statutory instrumentality, authority, body, agency, bureau, or entity or any arbitrator with authority to bind a Person at law, and any agency, authority, department, commission, board, bureau, or instrumentality of any of them.

(e)     "Issuer" means 1932 MCGRAW AVENUE LLC. and any other issuer of a Pledged Interest from time to time.

(f)     "Legal Requirements" means all applicable federal, state, county and local laws, by-laws, rules, regulations, codes and ordinances, and the requirements of any Governmental Authority having or claiming jurisdiction with respect thereto, including, but not limited to, all orders and directives of any Governmental Authority having or claiming jurisdiction with respect thereto.

(g)     "Lien" means any lien, encumbrance, security interest, mortgage, restriction, charge or encumbrance of any kind.

(h)     "Loan Collateral" means the "Collateral" as defined in the Mortgage, and includes the Collateral hereunder.

(i)     "Organizational Documents" means for any corporation, partnership, trust, corporation, limited liability partnership, unincorporated association, business or other legal entity, the agreements pursuant to which such entity has been established or organized, its affairs are to be governed, and its business is to be conducted, as such documents may be amended from time to time.

(j)     "Pledged Interests" means the ownership interests or corporation interests now or hereafter listed on Schedule A hereto or which would be listed on an updated Schedule A at any time of reference, together with all related rights of the holder thereof pursuant to the Organizational Documents of the Issuer.

3.     Security for the Secured Obligations. This Agreement secures, and the Collateral is collateral security for, the payment and performance in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand, or otherwise (including the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)), of the following (the "Secured Obligations"):

(a)     the Obligations, including all obligations and liabilities of every nature of the Company now or hereafter existing under or arising out of or in connection with the Loan Documents and the other Loan Documents and all renewals or extensions thereof, whether for principal, interest, fees, expenses, indemnities, or otherwise, whether voluntary or involuntary, direct or indirect, absolute or contingent,

- 3 -

liquidated or unliquidated, whether or not jointly owed with others, and whether or not from time to time decreased or extinguished and later increased, created, or incurred, and all or any portion of such obligations or liabilities that are paid, to the extent all or any part of such payment is avoided or recovered directly or indirectly from Lender as a preference, fraudulent transfer, or otherwise, and all obligations of every nature of the Pledgor now or hereafter existing under this Agreement; and

(b)     the obligations of Pledgor hereunder.

4.     Delivery of Collateral.

(a)     If at any time the Pledged Interests are evidenced by one or more certificates, Pledgor shall deliver to Lender any original certificate evidencing the Pledged Interests (the "Certificate"), in suitable form for transfer by delivery or, as applicable, accompanied by any necessary endorsement or duly executed instruments of transfer or assignment, in blank, all in form and substance reasonably satisfactory to Lender.

(b)     Lender shall have the right, at any time after the occurrence and during the continuation of an Event of Default, in its discretion and without notice to Pledgor, to transfer to or to register (if not already so registered) in the name of Lender or any of its nominees any or all of the Collateral. In addition, Lender shall have the right at any time to exchange certificates or instruments representing or evidencing Collateral for certificates or instruments of smaller or larger denominations.

5.     Representations and Warranties. Pledgor hereby represents and warrants as follows:

(a)     Organization; Address of Pledgor. Pledgor is the type of entity, organized in the jurisdiction, set forth with respect to Pledgor in the introductory paragraph to this Agreement.

(b)     No Conflict. The execution, delivery, and performance by Pledgor of this Agreement will not (i) violate any provision of any Legal Requirement applicable to Pledgor, or any order, judgment, or decree of any Governmental Authority binding on Pledgor, (ii) result in a breach of, or constitute with due notice or lapse of time or both, a default under any Contractual Obligation of Pledgor, (iii) result in or require the creation or imposition of any Lien upon any of Pledgor's properties or assets, except pursuant to this Agreement, (iv) require the approval or consent of any Person under any Contractual Obligation of Pledgor, except for the approvals or consents described on Schedule B hereto, which approvals or consents have been obtained, and true and complete copies of which have been furnished to Lender, or (v) conflict with any provision of Pledgor's Organizational Documents.

(c)     Binding Obligation. The execution, delivery and performance of this Agreement and the transactions contemplated hereby is within the authority of Pledgor, has been duly authorized by all necessary proceedings, and is the legally valid and binding obligation of Pledgor, enforceable against Pledgor in accordance with its

- 4 -

terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or similar laws or equitable principles generally.

(d)     Description of Collateral. The Pledged Interests are being certificated pursuant to this Agreement, and are fully paid and non-assessable. The Pledged Interests constitute all of the issued and outstanding ownership interests of the Issuer owned beneficially or of record by Pledgor. Neither Pledgor nor any other Person holds, or has any right to the issuance of, any options or other rights to purchase, and is not party to any other agreement with respect to, and does not hold or have the right to any property that is now or hereafter convertible into, or that requires the issuance or sale of, any ownership interests of the Issuer. No Person other than Pledgor owns any ownership interests of any type in the Issuer. Other than the Certificate, if any, delivered to Lender pursuant to this Agreement, there currently exist no certificates, instruments or writings representing the Ownership Interests. However, to the extent that in the future there exist any such certificates, instruments or writings, Pledgor shall deliver all such certificates, instruments or writings to Lender.

(e)     Ownership of Collateral. (i) Pledgor is the legal and beneficial owner of, and has good and marketable title to, the Collateral, and is the record owner of the Pledged Interests, free and clear of, and subject to no, pledges, Liens, security interests, charges, options, restrictions or other encumbrances, except the pledge and security interest created by this Agreement; (ii) Pledgor has the legal capacity to execute, deliver and perform Pledgor's obligations under this Agreement and to pledge and grant a security interest in all of the Collateral of which it is the legal or beneficial owner pursuant to this Agreement; (iii) except for authorizations and consents which have already been obtained, no authorization, consent of or notice to any party that has not been obtained is required in connection with the execution, delivery, performance, validity or enforcement of this Agreement, including, without limitation, the assignment and transfer by Pledgor of any of the Collateral to Lender or the subsequent transfer by Lender pursuant to the terms hereof; and (iv) Lender's filing of UCC-1 financing statements with the Secretary of State of the State of New York results in the perfection of Lender's security interest in the Pledged Interests, and such portion of the other Collateral in which a security interest may be perfected by filing such UCC-1 form or financing statement.

(f)     Governmental Authorizations. No authorization, approval, or other action by, and no notice to or filing with, any Governmental Authority is required for either (i) the pledge by Pledgor of the Collateral pursuant to this Agreement and the grant by Pledgor of the security interest granted hereby, (ii) the execution, delivery, or performance of this Agreement by Pledgor, or (iii) the exercise by Lender of the voting or other rights in respect of the Collateral provided for in this Agreement (except as may be required in connection with a disposition of Collateral by laws affecting the offering and sale of securities generally).

(g)     Article 8. Pledgor acknowledges and agrees that the terms of the Pledged Interests do and will provide that they shall constitute a "security" within the meaning of Article 8 of the UCC (including Section 8-102(a)(15) thereof) as in effect from time

- 5 -

to time in the State of New York, and Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995. Pledgor acknowledges and agrees that the Pledged Interests, and the Certificates of Pledgor in Issuer which have been delivered to Lender on the date hereof, constitute and will constitute "certificated securities" (as defined in the UCC). Pledgor therefor covenants and agrees that Pledgor shall not, directly or indirectly, without the prior written consent of Lender, alter, amend modify, supplement or change in any way, the operating agreement of Issuer as in effect on the date hereof. However, the Pledged Interests are not and will not be, investment company securities within the meaning of Section 8-103 of the Code. The Pledged Securities (i) will not become "financial assets" (within the meaning of Section 8-102(a)(9) of the UCC) and (ii) will not be credited to a "securities account" (within the meaning of Section 8-501(a) of the UCC).

(h)     Creation, Perfection and Priority of Security Interest. This Agreement constitutes an authenticated record, and Lender is authorized at any time and from time to time to file any and all UCC financing statements and take such other actions determined by Lender to be necessary or desirable to perfect its security interest in the Collateral.

(i)      No Other Financing Statements. Other than the UCC financing statements filed by Lender describing the Collateral, there is no financing statement (or similar statement or registration under the laws of any jurisdiction) now on file or registered in any public office covering any interest of Pledgor or any other Person in the Collateral.

(j)      Other Information. All information heretofore, herein or hereafter supplied to Lender by Pledgor with respect to the Collateral in writing is accurate and complete in all material respects.

6.      Assurances and Covenants of Pledgor.

(a)     Transfers and Other Liens. Pledgor shall not:

(i)       sell, assign (by operation of law or otherwise), pledge, or hypothecate or otherwise dispose of, or grant any option with respect to, any of the Collateral, except to Lender pursuant to this Agreement; or

(ii)      create or suffer to exist any Lien upon or with respect to any of the Collateral, except for the Lien created hereunder.

(b)     Covenants of Pledgor. Pledgor covenants and agrees, with respect to itself and the Pledged Interests, that so long as any Secured Obligation is outstanding:

- 6 -

(i)    Pledgor shall not vote for, or agree or consent to, the sale, transfer, pledge or encumbrance of the Pledged Interests while the Loan is outstanding.

(ii)    Pledgor shall not vote for, or agree or consent to, the discontinuance of the business or the dissolution or liquidation of the Issuer.

(iii)    Pledgor shall not vote for, or agree or consent to, any material modifications to the Organizational Documents of the Issuer.

(iv)    Pledgor shall provide Lender with copies of any modifications made to the Organizational Documents of the Issuer within thirty (30) days after the date such modifications are made.

(v)    Pledgor shall not enter into any agreements which restrict, limit or otherwise impair the transferability of the Pledged Interests.

(vi)    Pledgor shall be the sole member of the Issuer and the sole holder of membership interest in the Issuer, and shall not resign or withdraw as a member or vote for, agree or consent to, or permit the admission of any new members to the Issuer or any change in the management of the Issuer.

(c)    Additional Collateral. Pledgor shall pledge hereunder, immediately upon Pledgor's acquisition (directly or indirectly) thereof, any and all additional ownership interests of Pledgor in the Issuer.

(d)    Pledge Amendments. Pledgor shall, upon obtaining any additional ownership interests or other securities required to be pledged hereunder promptly (and in any event within five (5) Business Days) deliver to Lender such documents as Lender reasonably may require to confirm the pledge hereunder of such additional collateral; provided that the failure of Pledgor to execute any such additional documents with respect to any additional Pledged Interests pledged pursuant to this Agreement shall not impair the security interest of Lender therein or otherwise adversely affect the rights and remedies of Lender hereunder with respect thereto.

(e)    Taxes and Assessments. Pledgor shall pay promptly when due all taxes, assessments, and governmental charges or levies imposed upon, and all claims against, the Collateral, except to the extent the validity thereof is being contested in good faith and by appropriate proceedings and in which reserves or other appropriate provisions have been made or provided therefor; provided that Pledgor shall in any event pay such taxes, assessments, charges, levies, or claims not later than five (5) days prior to the date of any proposed sale under any judgment, writ, or warrant of attachment entered or filed against Pledgor or any of the Collateral as a result of the failure to make such payment.

(f)    Further Assurances. Pledgor shall from time to time, at the expense of Pledgor, promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary and that Lender may reasonably request in writing, in order to give full effect to this Agreement and to perfect and protect any

- 7 -

security interest granted or purported to be granted hereby or to enable Lender to exercise and enforce its rights and remedies hereunder with respect to any Collateral, provided that such further instruments, documents and action are consistent with this Agreement.

(g)    Warranty of Title to Collateral. Pledgor covenants that Pledgor will defend its rights and title in the Collateral against the claims and demands of all Persons whomsoever. Pledgor further covenants that Pledgor will have title to and right to pledge and grant a security interest in the Collateral hereafter pledged or in which a security interest is granted to Lender hereunder, and will likewise defend its rights therein.

(h)    Good Standing. Pledgor will at all times be duly formed and is, and will at all times be, validly existing, in good standing and qualified to do business in each jurisdiction where required. Pledgor will at all times have all requisite power to own its property and conduct its business as now conducted and as presently contemplated.

7.    Voting Rights, Dividends, Etc.

(a)    So long as no Event of Default shall have occurred and be continuing:

(i)    Pledgor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Collateral or any part thereof for any purpose not inconsistent with the terms of this Agreement, the Loan Documents or any other Loan Document; provided, however, that any and all such rights shall remain subject to the provisions of Section 7(b) hereof;

(ii)    Subject to the terms and conditions of the Loan Documents, Pledgor shall be entitled to receive and retain, and to utilize free and clear of the Lien of this Agreement, any and all Distributions, paid in respect of the Collateral; provided, however, if any such property is distributed in the form of shares of membership interest in the Issuer, such membership interest shall be pledged, and any certificates representing such membership interest delivered, to Lender (collectively, "Collateral Payments and Distributions").

(b)    During the continuation of an Event of Default:

(i)    all rights of Pledgor to exercise the voting, management, and other consensual rights which it would otherwise be entitled to exercise pursuant to Section 7(a)(i) shall cease, and all such rights shall thereupon become vested in Lender who shall thereupon have the sole right to exercise such voting, management, and other consensual rights;

(ii)    all rights of Pledgor to receive the Collateral Payments and Distributions which Pledgor would otherwise be authorized to receive and retain pursuant to Section 7(a)(ii) shall cease, and all such rights shall thereupon become

- 8 -

vested in Lender who shall thereupon have the sole right to receive and hold as Collateral such Collateral Payments and Distributions; and

(iii)    all Collateral Payments and Distributions which are received by Pledgor contrary to the provisions of paragraph (ii) of this Section 7(b) shall be received in trust for the benefit of Lender, shall be segregated from other funds of Pledgor, and shall forthwith be paid over to Lender as Collateral in the same form as so received (with any necessary endorsements).

(c)    In order to permit Lender to exercise the voting and other consensual rights which it may be entitled to exercise pursuant to Section 7(b)(i) and to receive all Collateral Payments and Distributions which it may be entitled to receive under Section 7(a)(ii) or Section 7(b)(ii), (i) Pledgor shall promptly execute and deliver (or cause to be executed and delivered) to Lender all such proxies, dividend payment orders, and other instruments as Lender may from time to time reasonably request in writing, and (ii) without limiting the effect of the immediately preceding clause (i), Pledgor hereby grants to Lender an irrevocable proxy to vote the Pledged Interests and to exercise all other rights, powers, privileges, and remedies to which a holder of the Pledged Interests would be entitled (including, without limitation, giving or withholding written consents of members, calling special meetings of members, and voting at such meetings), which proxy shall be effective, automatically and without the necessity of any action (including any transfer of any Pledged Interests on the record books of the issuer thereof) by any other Person (including the issuer of the Pledged Interests or any officer or agent thereof), provided, however, Lender shall not exercise any rights granted under such proxy except upon the occurrence and during the continuance of an Event of Default.

(d)    Notwithstanding any of the foregoing, Pledgor agrees that this Agreement shall not in any way be deemed to obligate Lender to assume any of Pledgor's obligations, duties, expenses, or liabilities unless Lender otherwise expressly agrees to assume any or all of said obligations, duties, expenses, or liabilities in writing.

8.    Lender Appointed Attorney-in-Fact. Pledgor hereby irrevocably appoints Lender as Pledgor's attorney-in-fact, with full authority in the place and stead of Pledgor and in the name of Pledgor, exercisable during the continuation of an Event of Default, from time to time in Lender's discretion to take any action and to execute any instrument that Lender may in good faith deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation:

(a)    upon the occurrence and during the continuance of an Event of Default, to ask, demand, collect, sue for, recover, compound, receive, and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b)    upon the occurrence and during the continuance of an Event of Default, to receive, endorse, and collect any instruments made payable to Pledgor representing any

- 9 -

dividend or other distribution in respect of the Collateral or any part thereof and to give full discharge for the same; and

(c) upon the occurrence and during the continuance of an Event of Default, to file any claims or take any action or institute any proceedings that Lender may reasonably deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Lender with respect to any of the Collateral.

9. Standard of Care. The powers conferred on Lender hereunder are solely to protect its interest in the Collateral and except as specifically set forth herein shall not impose any duty upon it to exercise any such powers. Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Lender shall have no duty as to any Collateral, it being understood that Lender shall have no responsibility for (a) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders, or other matters relating to any Collateral, whether or not Lender has or is deemed to have knowledge of such matters, (b) taking any necessary steps (other than steps taken in accordance with the standard of care set forth above to maintain possession of the Collateral) to preserve rights against any parties with respect to any Collateral, (c) taking any necessary steps to collect or realize upon the Secured Obligations or any guaranty therefor, or any part thereof, or any of the Collateral, or (d) initiating any action to protect the Collateral against the possibility of a decline in market value. In no event shall the standard of care imposed upon Lender hereunder exceed the minimum applicable standard of care imposed under Section 9-207 of the UCC.

10. Waiver of Defenses; Secured Obligations Not Affected.

(a) Pledgor hereby waives and agrees not to assert or take advantage of any defense based on: (i) except for a breach of the standard of care set forth in Section 9, any lack of diligence by Lender in collection, protection or realization upon any Loan Collateral; (ii) the failure to make or give notice of presentment and demand for payment, or failure to make or give protest and notice of dishonor or of default to Pledgor or to any other party with respect to the Secured Obligations; (iii) any exculpation of liability of any party contained in the Loan Documents; (iv) the failure of Lender to perfect any security or to extend or renew the perfection of any security; (v) any valuation, stay, moratorium law or other similar law now or hereafter in effect or any right to require the marshalling of assets of Pledgor; (vi) any fraudulent, illegal or improper act by the Company or Pledgor; (vii) all rights and remedies, including, but not limited to, any rights of subrogation, contribution, reimbursement, exoneration or indemnification pursuant to any agreement, express or implied, or now or hereafter accorded by applicable law to any party; (viii) the right to a trial by jury in any manner related to this Agreement; and (ix) to the fullest extent permitted by law, any other legal, equitable or suretyship defenses whatsoever to which Pledgor might otherwise be entitled, it being the intention that the obligations of Pledgor hereunder shall be absolute, unconditional and irrevocable.

- 10 -

(b)     All rights and remedies of Lender hereunder, and all obligations of Pledgor hereunder, shall be absolute and unconditional irrespective of, shall remain in full force and effect without regard to, and shall not be impaired by, any of the following, whether or not Pledgor shall have notice or knowledge thereof:

(i)     any lack of validity or enforceability of the Loan Documents or any of the other Loan Documents or any other agreement or instrument relating to any of the foregoing;

(ii)    Pledgor has or had no legal existence or legal capacity or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from Pledgor by operation of law or for any other reason;

(iii)   the acceleration of the time for payment of any of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of Pledgor, or for any other reason;

(iv)    any exercise or nonexercise, or any waiver, by Lender of any right, remedy, power or privilege under or in respect of any of the Obligations or any security therefor (including this Agreement);

(v)     any change in the time, manner, or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment, waiver, or modification of or any consent to any departure from the Loan Documents or any of the other Loan Documents or any provision thereof;

(vi)    any exchange, release, or nonperfection of any interest in any Collateral, or any release or amendment or waiver of or consent to any departure from any guaranty, for all or any of the Obligations, or the taking of additional security for, or any other assurances of payment of, any of the Obligations; or

(vii)   any other circumstances (other than payment in full of the Secured Obligations) that might otherwise constitute a defense available to, or a discharge of, Company.

11.   Remedies.

(a)     If any Event of Default shall have occurred and be continuing, then Lender may exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral), inclusive of the management rights of the Pledgor in the Company, as set forth in the Company's Presidents Agreement, and Lender may also in its sole discretion, without notice except as specified below, sell the Collateral or any part thereof in one or more parts at public or private sale, at any recognized exchange or broker's board or at any of Lender's offices or elsewhere, for cash, on credit, or for future delivery, at such time or times and at such price or

- 11 -

prices and upon such other terms as Lender may reasonably deem commercially reasonable. Lender may be the purchaser of any or all of the Collateral at any such sale, and Lender shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such public sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price for any Collateral payable by Lender at such sale. Notwithstanding anything herein to the contrary, Pledgor shall have a right of redemption prior to a UCC sale of the Collateral in accordance herewith. Each purchaser at any such sale shall hold the property sold absolutely free from any claim or right on the part of Pledgor, and Pledgor hereby waives all rights of redemption which such Pledgor now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted which might otherwise have been applicable subsequent to a UCC sale of the Collateral in accordance herewith. In addition, Pledgor hereby waives all rights of stay, and/or appraisal which such Pledgor now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted. Pledgor agrees that, to the extent notice of sale shall be required by law, at least twenty (20) days' notice to Pledgor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. Lender shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. Lender may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Pledgor hereby waives any claims against Lender arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Lender accepts the first offer received and does not offer such Collateral to more than one offeree.

(b)     Pledgor recognizes that, by reason of certain prohibitions contained in the Securities Act of 1933, as from time to time amended (the "Securities Act"), and applicable state securities laws, Lender may be compelled, with respect to any sale of all or any part of the Collateral conducted without prior registration or qualification of such Collateral under the Securities Act and/or such state securities laws, to limit purchasers to those who will agree, among other things, to acquire the Collateral for their own account, for investment and not with a view to the distribution or resale thereof. Pledgor acknowledges that any such private sales may be at prices and on terms less favorable than those obtainable through a public sale without such restrictions (including, without limitation, a public offering made pursuant to a registration statement under the Securities Act) and, notwithstanding such circumstances, Pledgor agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner and that Lender shall have no obligation to engage in public sales and no obligation to delay the sale of any Collateral for the period of time necessary to permit the issuer thereof to register it for a form of public sale requiring registration under the Securities Act or under applicable state securities laws, even if such issuer would, or should, agree to so register it.

(c)     If Lender determines to exercise its right to sell any or all of the Collateral, then, upon Lender's written request, Pledgor shall, and Pledgor shall cause the Issuer to, furnish to Lender such information as Lender may reasonably request of Pledgor concerning Pledgor and the Collateral.

12.     Application of Proceeds. Except as expressly provided elsewhere in this Agreement, all proceeds received by Lender in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of Lender, be held by Lender as Collateral for, and/or then, or at any time thereafter, applied in full or in part by Lender against, the Secured Obligations in the following order of priority:

FIRST: To the payment of all reasonable costs and expenses of such sale, collection, or other realization, including reasonable compensation to Lender and its agents, the reasonable fees and expenses and disbursements of Lender's counsel, and all other reasonable, actual expenses, liabilities, and advances made or incurred by Lender in connection therewith, and all reasonable amounts for which Lender is entitled to indemnification hereunder and all advances made by Lender hereunder for the account of the Pledgor, and to the payment of all reasonable costs and expenses paid or incurred by Lender in connection with the exercise of any right or remedy hereunder, all in accordance with Section 13;

SECOND:  To the payment in full of the Secured Obligations, in the manner provided for in the Loan Documents; and

THIRD: To the payment to or upon the order of Pledgor, or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct, of any surplus then remaining from such proceeds.

13.     Indemnity and Expenses.

(a)     Pledgor agrees to indemnify Lender from and against any and all claims, losses, and liabilities in any way relating to, growing out of, or resulting from this Agreement and the transactions contemplated hereby (including, without limitation, enforcement of this Agreement), except to the extent such claims, losses, or liabilities result from Lender's gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction.

(b)     Pledgor shall pay to Lender upon demand the amount of any and all reasonable, actual costs and expenses, including the reasonable fees and expenses of its counsel and of any experts and agents, that Lender may incur in connection with (i) the sale of, collection from, or other realization upon, any of the Collateral, (ii) the exercise or enforcement of any of the rights of Lender hereunder, or (iii) the failure by Pledgor to perform or observe any of the provisions hereof.

14.     Continuing Security Interest. This Agreement shall create a continuing security interest in the Collateral and shall (a) remain in full force and effect until the payment in full of all Secured Obligations and Lender has no further obligations under the Loan Documents,

- 13 -

(b) be binding upon Pledgor and Pledgor's legal representatives, successors and assigns, and (c) inure, together with the rights and remedies of Lender hereunder, to the benefit of Lender and its successors, transferees and assigns. Upon the payment in full of all Secured Obligations and the cancellation or termination of the Loan Documents, the security interest granted hereby shall terminate and all rights to the Collateral shall revert to Pledgor. Upon any such termination Lender will, at Pledgor's reasonable expense, execute and deliver to Pledgor such documents as Pledgor shall reasonably request to evidence such termination, and Pledgor shall be entitled to the return, upon Pledgor's request and at Pledgor's expense, against receipt and without recourse to Lender, of such of the Collateral as shall not have been sold or otherwise applied pursuant to the terms hereof.

15.    Amendments, Etc. No amendment, modification, termination, or waiver of any provision of this Agreement, and no consent to any departure by Pledgor from the terms and conditions hereof, shall in any event be effective as to Pledgor unless the same shall be in writing and signed Lender and, in the case of any such amendment or modification, by Pledgor. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

16.    Failure or Indulgence Not Waiver; Remedies Cumulative. No failure or delay on the part of Lender in the exercise of any power, right, or privilege hereunder shall impair such power, right, or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right, or privilege preclude any other or further exercise thereof or of any other power, right, or privilege. All rights and remedies existing under this Agreement are cumulative to, and not exclusive of, any rights or remedies otherwise available.

17.    Severability. In case any provision in or obligation under this Agreement shall be invalid, illegal, or unenforceable in any jurisdiction, the validity, legality, and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

18.    Headings. Section and subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

19.    Counterparts. This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document. Further, facsimile or electronic (e.g., .pdf format) copies of signatures shall be considered originals for purposes of binding the parties hereto.

20.    Marshalling. Lender shall not be required to marshal any present or future security for (including, but not limited to, this Agreement and the Collateral), or other assurances of payment of, the Secured Obligations or any of them, or to resort to such security or other assurances of payment in any particular order. All of Lender's rights hereunder and in

- 14 -

respect of such security and other assurances of payment shall be cumulative and in addition to all other rights, however existing or arising. To the extent lawfully permissible, Pledgor hereby agrees that Pledgor will not invoke any law, doctrine, or principle relating to the marshalling of collateral that might cause delay in or impede the enforcement of Lender's rights under this Agreement or under any other instrument evidencing any of the Secured Obligations or under which any of the Secured Obligations is outstanding or by which any of the Secured Obligations is secured or payment thereof is otherwise assured, and, to the extent that Pledgor lawfully may, Pledgor hereby irrevocably waives the benefits of all such laws.

21.    Notices, Etc. All notices, requests and other communications to any party hereunder shall be in writing (including facsimile transmission followed by telephonic confirmation or similar writing) and shall be given to such party as follows: (i) to Lender, to the address set forth in the Loan Documents, and (ii) to Pledgor, to the following address:

> David DeLucia
> 243 Manhattan Avenue
> Yonkers, New York 11010
>
> with a copy in like manner to:
>
> Pat Longobucco, Esq.
> 44 Church Street
> White Plains, NY 10601
> Tel: (914) 761-6131

Any such addressee may change its address for such notices to any other address in the United States as such addressee shall have specified by written notice given as set forth above.

Each such notice, request or other communication shall be effective (i) if given facsimile transmission, when such facsimile is transmitted to the facsimile number specified in this Section and the appropriate facsimile confirmation is received, (ii) if given by mail, on the earlier of actual receipt or three (3) Business Days after such communication is deposited in the mails with first class certified or registered mail, postage prepaid, addressed as aforesaid, (iii) if given by a nationally recognized overnight carrier, one (1) Business Days after such communication is deposited with such carrier with delivery charges prepaid, or (iv) if given by any other means, when delivered at the address specified in this Section.

22.    Delay Not Waiver. No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right. No waiver by Lender in any instance shall constitute a waiver in any other instance.

23.    Irrevocable Proxy. With respect to Article 8 Matters and all other matters, including without limitation the rights, remedies and powers granted by this Agreement, and to the extent applicable, Pledgor hereby irrevocably grants and appoints Lender, from the date of this Agreement until the payment in full of the Secured Obligations and the termination of

all obligations of the Lender under the Loan Documents, exercisable whether or not there has been an Event of Default under the Loan Documents, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead, to vote the Pledged Shares in the Company pledged by Pledgor, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters. The proxy granted and appointed in this Section 23 shall include the right to sign Pledgor's name (as the holder of a shares in the Issuer) to any consent, certificate or other document relating to an Article 8 Matter and the related Pledged Shares that applicable law may permit or require, to cause the Pledged Shares to be voted in accordance with the preceding sentence. Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter. Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged s with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect.

THE PROXIES AND POWERS GRANTED BY PLEDGOR PURSUANT TO THIS AGREEMENT ARE COUPLED WITH AN INTEREST AND ARE GIVEN TO SECURE THE PERFORMANCE OF PLEDGOR'S OBLIGATIONS UNDER THIS AGREEMENT.

24.    Miscellaneous.

(a)    Any waiver, express or implied, of any provision hereunder and any delay or failure by Lender to enforce any provision shall not preclude Lender from enforcing any such provision thereafter.

(b)    Pledgor hereby authorizes Lender to file one or more financing statements describing all or part of the Collateral, and continuation statements, or amendments thereto, relative to all or part of the Collateral as authorized by applicable law. Such financing statements, continuation statements and amendments will contain any other information required by the UCC for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Pledgor is an organization, the type of organization and any organizational identification number issued to Pledgor. Pledgor agrees to furnish any such information to Lender promptly upon request.

(c)    This Agreement shall be governed by and construed according to the internal laws of the State of New York, without regard to the conflict of law provisions thereof other than Sections 5-1401 and 5-1402 of the New York General Obligations Law. Pledgor and Lender hereby irrevocably (i) submit to the non-exclusive jurisdiction of any United States Federal or State court sitting in New York County, New York, in any action or proceeding arising out of or relating to this Agreement, and (ii) waive to the fullest extent permitted by law any defense asserting an inconvenient forum in connection therewith. Service of process by Lender in connection with such action or proceeding shall be binding on Pledgor if sent to Pledgor by registered or certified mail at its address specified above.

- 16 -

25.    WAIVER OF JURY TRIAL.  TO THE EXTENT ALLOWED BY APPLICABLE LAW, PLEDGOR AND LENDER EACH WAIVE TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT OR PROCEEDING ON OR ARISING OUT OF THIS AGREEMENT.

IN WITNESS WHEREOF, intending to be legally bound, Pledgor and Lender have caused this Agreement to be executed as of the date first above written.

**PLEDGOR:**

DAVID DELUCIA

**LENDER:**

**REALFI REAL ESTATE INVESTMENT TRUST LLC**

By:

Name: Steven T. Wissak

Title: Authorized Signatory

[Signature page to Ownership Interests Pledge and Security Agreement]

## JOINDER AND CONSENT OF THE ISSUER

The undersigned hereby (a) joins in the above Agreement for the sole purpose of consenting to the terms thereof; (b) agrees to cooperate fully and in good faith with the Lender and Pledgor in carrying out this Agreement (including, without limitation, by admitting Lender or its transferee (including from a secured party's sale) as a substituted member); (c) waives any transfer or other restrictions, existing pursuant to Contractual Obligations, Organizational Documents, or otherwise (other than under any applicable securities laws), which otherwise might apply to the granting of the pledges and security interests hereunder, or to the exercise by the Lender of the rights and remedies provided in this Agreement or applicable law, at law or in equity, so as to, among other things, permit (x) Pledgor to enter into and perform Pledgor's obligations under this Agreement, and (y) the Lender's exercise of the Lender's rights and remedies hereunder and under applicable law, at law or in equity; (d) represents and warrants that the (i) Issuer has elected to have its shares deemed to be "securities" for the purposes of Articles 8 and 9 of the UCC, and the Certificates being delivered to Lender pursuant to the Agreement are "certificated securities," (as defined by the UCC) (ii) Lender is duly noted in the Issuer's books and records as the sole pledgee of the Collateral, and (iii) Issuer will not recognize any transferee or pledgee of the Collateral other than Lender or pursuant to the exercise of Lender's rights and remedies under this Agreement; and (e) agrees to comply with any "instructions" (as defined in Section 8-102(a)(12) of the UCC) originated by the Lender in conformity with this Agreement without further consent of the Pledgor, including, without limitation, instructions regarding the transfer, redemption or other disposition of the Collateral or the proceeds thereof, including any Distributions with respect thereto (this clause (e) shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the above Agreement).

Capitalized terms used and not otherwise defined herein shall have the meanings assigned to them in the Agreement.

IN WITNESS WHEREOF, intending to be legally bound, the undersigned has caused this Joinder and Consent to be executed as an instrument under seal of the date first above written.

**ISSUER:**

**1932 MCGRAW AVENUE LLC.**
a New York limited liability company

By: _____

Name: David DeLucia
Title:   Member and Authorized Signatory

Joinder & Consent of Issuer

## SCHEDULE A

### Pledged Membership Interests

| **Issuer** | **Pledgor** | **Pledgor's Ownership Interest in Issuer** |
|---|---|---|
| 1932 MCGRAW AVENUE LLC | DAVID DELUCIA | 30% of membership interests |

## SCHEDULE B

<u>Consents</u>

None.