# **EXHIBIT 10**

## GUARANTY OF COMPLETION

This **GUARANTY OF COMPLETION** (this "**Guaranty**") is made as of October 28, 2021 by **DAVID DELUCIA**, an individual having an address at 243 Manhattan Avenue, Yonkers, New York 11010, **JAMES MCMANUS**, an individual having an address at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465 and **RANDYLYNN RASTELLO-MCMANUS**, an individual having an address at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465 (collectively, the "**Guarantor**"), in favor of **REALFI REAL ESTATE INVESTMENT TRUST LLC**, a Delaware limited liability company, having its principal place of business at 707 Westchester Avenue, Suite 305A, White Plains, New York 10604 (together with its successors and/or assigns, as their interests may appear, the "**Lender**"). Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Mortgage (as hereinafter defined).

## WITNESSETH:

WHEREAS, **1932 MCGRAW AVENUE LLC**, a New York limited liability company (the "**Borrower**"), has requested Lender to lend to Borrower the sum of up to One Million Three Hundred Ninety Four Thousand and 00/100 Dollars ($1,394,000.00) through a building loan (the "**Loan**") to assist Borrower in the construction, completion and equipment of the Construction Work and the Project (as such terms are defined in the Building Loan Agreement)(collectively herein, the "**Improvements**") pursuant to the Plans (as defined in the Building Loan Agreement) regarding 1932 McGraw Avenue, Bronx, New York 10462 (the "**Premises**"), more particularly described in a certain Building Mortgage and Security Agreement made by Borrower to secure the Loan (the "**Mortgage**"), and which Loan is evidenced by a certain Building Loan Note made by the Borrower (the "**Note**") to be secured by the Mortgage; and

WHEREAS, simultaneously with the delivery of this Guaranty, Borrower and Lender will execute and deliver a certain building loan agreement in connection with the Loan (the "**Building Loan Agreement**") to establish and declare the terms and conditions upon which advances shall be made upon the Loan. The Note, the Mortgage, the Building Loan Agreement, and all other documents executed by Borrower, Guarantor or any third parties in connection with the Loan, hereinafter collectively the "**Loan Documents**"; and

WHEREAS, as part of the consideration for the making of the Loan and the execution and delivery of the Building Loan Agreement, Borrower has agreed to procure and deliver this Guaranty; and

WHEREAS, the Guarantor will receive direct and indirect benefits from the Loan being made to the Borrower, and Lender has declined to make the Loan unless this Guaranty is executed by the Guarantor and duly delivered to Lender.

NOW, THEREFORE, in consideration of the premises and as part of the consideration for the making of the Loan, and in order to induce Lender to execute and deliver the Building Loan Agreement and to make the Loan and advances thereunder, Guarantor hereby jointly and severally unconditionally covenants and agrees to and with Lender as follows:

1.      Guarantor unconditionally guarantees, jointly and severally, to Lender (a) the prompt and complete observance, fulfillment and performance of all conditions, covenants and other agreements of the Borrower contained in the Building Loan Agreement or any other instrument relative thereto, and (b) the completion of construction of the Improvements in accordance with the terms and conditions of the Building Loan Agreement.

2.      The Guarantor unconditionally guaranties to the Lender that (a) the Borrower shall fully and punctually pay and discharge any and all costs, expenses and liabilities for and/or in connection with the construction, equipment and completion of the Improvements, as the same may become due and payable, and also pay and discharge all proper claims and demands for labor, materials and services used for and/or in the construction, equipment and completion of the Improvements which are, or, if unpaid, may become, due and payable and also pay all taxes and assessments in respect of the Premises; and (b) the Premises and the Improvements shall be and remain free and clear of all liens from any and all persons, firms, corporations or other entities furnishing materials, labor or services for or in the construction, equipment and/or completion of the Improvements, other than liens by the Lender.

3.      The Guarantor unconditionally guaranties to the Lender that in the event the Improvements are not completed and paid for as aforesaid or are not free of all such liens, claims and demands upon the completion thereof, or the taxes, assessments, or other costs are not paid for as aforesaid, the Guarantor will fully indemnify and save harmless the Lender from all reasonable costs and actual damages that the Lender may suffer by reason thereof.

4.      At Lender's option, following the occurrence of an Event of Default that continues beyond the expiration of any applicable notice or cure period on the Loan, Lender shall have the right, as its sole remedy, to require Guarantor to pay to Lender, as Guarantor's sole and complete liability for the obligations guaranteed hereby, as liquidated damages, an amount equal to the excess, if any of (i) all Hard Costs, Soft Costs, carry costs, and all other costs, including without limitation, interest on the Loan and real estate taxes (as estimated by Lender's construction consultant) necessary to complete the construction of the Project (as such term is defined in the Loan Agreement) lien-free (without any obligation of Lender to actually complete or expend any further costs or other amounts in connection with such completion), in accordance with the Plans and Specifications, as determined by Lender's Consultant (as such term is defined in the Loan Agreement) in its sole discretion, and (ii) the unreleased portion of the Loan as of the date of the maturity or acceleration of the Loan following an Event of Default.  Such payment shall be due to Lender no later than fifteen (15) days following Lender's written demand therefor.  If the Lender elects to receive the payment set forth in this Section 4, such payment shall be retained by Lender as liquidated damages and not as a penalty, the parties agreeing the estimation of such cost of completion would be difficult to compute.

5.      The Guarantor hereby agrees that its liability hereunder shall be unaffected by (a) any amendment or modification of the provisions of the Building Loan Agreement, the Note, the Mortgage or any other instrument made to or with the Lender by the Borrower, or any person who succeeds the Borrower as owner of the Premises, or any part thereof, (b) any extension of time for performance required thereby, (c) any sale, assignment or foreclosure of the Note, the Mortgage

or any sale of the Premises, or any part thereof, (d) exculpatory provisions, if any, in any of said instruments limiting Lender's recourse to property encumbered by the Mortgage or to any other security or limiting Lender's rights to enforce a deficiency judgment against the Borrower, (e) the release of the Borrower or any other person or entity from performance or observance or any of the agreements, terms or conditions contained in any of said instruments by operation of law, whether made with or without notice to the Guarantor, (f) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship affecting the Borrower, the Premises, and/or the Guarantor or any of its respective successors or assigns, whether or not any notice thereof is given to the Guarantor, or (g) Lender's failure to record the Mortgage or file any UCC-1 financing statements or the Building Loan Agreement or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Note.

6.    The Guarantor hereby waives any and/or all legal requirements that Lender shall institute any action or proceedings at law or in equity against Borrower, or anyone else, in respect of the Loan, or the obligation evidencing the same or the Building Loan Agreement or the Mortgage or in respect of any other security held by Lender, as a condition precedent to bringing an action against the Guarantor upon this Guaranty. All remedies afforded to Lender by reason of this Guaranty are separate and cumulative remedies, and it is agreed that no one of such remedies, whether exercised by Lender or not, shall be deemed to be an exclusion of any of the other remedies available to Lender and shall not limit or prejudice any other legal or equitable remedy which the Lender may have.

7.    It is understood and agreed that until each and every term, covenant and condition of this Guaranty is fully performed, the Guarantor shall not be released by any act or thing which might, but for this provision of this instrument, be deemed a legal or equitable discharge of a surety or a guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstances which may or might vary the risk or affect the rights or remedies of the Guarantor or by reason of any further dealings between the Borrower and Lender, whether relating to the Loan, the Building Loan Agreement or otherwise, and the Guarantor hereby expressly waives and surrenders any defense to the Guarantor's liability hereunder based upon any of the foregoing acts, omissions, things, agreements, waivers or any of them and hereby expressly waives and relinquishes all other rights and remedies accorded by applicable law to guarantors and sureties, it being the purpose and intent of this Guaranty that the obligations of the Guarantor hereunder be absolute and unconditional under any and all circumstances.

8.    THE GUARANTOR HEREBY WAIVES NOTICE OF ACCEPTANCE OF THIS GUARANTY BY LENDER AND OF PRESENTMENT FOR PAYMENT, DEMAND, PROTEST, NOTICE OF PROTEST AND OF DISHONOR, NOTICES OF DEFAULT AND ALL OTHER NOTICES OF EVERY KIND AND DESCRIPTION NOW OR HEREAFTER PROVIDED BY ANY STATUTE OR RULE OF LAW. THE GUARANTOR HEREBY WAIVES TRIAL BY JURY OR THE RIGHT TO INTERPOSE ANY COUNTERCLAIM IN CONNECTION WITH ANY ACTION ARISING OUT OF OR RELATED TO THIS GUARANTY, THE NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENT.

9.      In the event that the Guarantor shall advance or become obligated to pay any sums toward the construction, equipment or furnishing of the Improvements, or for any other purpose in connection with the Premises, or in the event that for any reason whatsoever the Borrower or any subsequent owner of the Premises is now, or shall hereby become, indebted to the Guarantor, the Guarantor agrees that the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, time of payment and in all other respects to all sums, including principal, interest and other amounts at any time owing to Lender under the Loan or the obligations evidencing the same or the Building Loan Agreement or the Mortgage, and that the Guarantor shall not be entitled to enforce or receive payment thereof until such sums owing to Lender have been paid.  Nothing herein contained is intended or shall be construed to give the Guarantor any right of subrogation in or under the Loan, the obligations evidencing the same, the Building Loan Agreement or the Mortgage or any right to participate in any way therein or in the right, title or interest of Lender in or to the Premises or other mortgaged property, notwithstanding any payments made by the Guarantor to or toward the construction, equipment, rental, sale or completion of the Improvements or the Premises, or any part thereof, or any payment relating thereto or any payments made by the Guarantor under this Guaranty,  all such rights of subrogation and participation being hereby expressly waived or released.

10.      Any notice shall be conclusively deemed to have been received by a party hereto and to be effective on the day on which delivered to such party at the address set forth below if hand delivered or sent by Federal Express or other reputable courier of national reputation, or if sent by registered or certified mail, on the third business day after the day on which mailed in the United States, addressed to such party at said address:

|  | |
|---|---|
| If to Guarantor: | David DeLucia<br>243 Manhattan Avenue<br>Yonkers, New York 11010 |
| | James McManus<br>214 Outlook Avenue<br>Sunrise Marina Estates, New York 10465 |
| | Randylynn Rastello-McManus<br>214 Outlook Avenue<br>Sunrise Marina Estates, New York 10465 |
| with a copy to: | Pat Longobucco, Esq.<br>44 Church Street<br>White Plains, New York 10601 |
| If to Lender: | RealFi Real Estate Investment Trust LLC<br>707 Westchester Avenue, Suite 305A<br>White Plains, New York 10604 |
| with a copy to: | Mavrides, Moyal, Packman & Sadkin, LLP<br>276 Fifth Avenue, Suite 404 |

4

New York, New York 10001
Attention: David Koshers, Esq.

or, as to each such party, at such other address as such party shall have designated to the other in a written notice complying as to delivery with the provisions of this Section 10.

11.     **THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. THE GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK AND ANY COURT IN THE STATE OF NEW YORK IN ANY ACTION, SUIT OR PROCEEDING BROUGHT AGAINST THE GUARANTOR AND RELATED TO OR IN CONNECTION WITH THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY, AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE GUARANTOR HEREBY WAIVES AND AGREES NOT TO ASSERT BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY CLAIM THAT THE GUARANTOR IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF SUCH COURTS, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR PROCEEDING IS IMPROPER, OR THAT THIS GUARANTY OR ANY DOCUMENT OR ANY INSTRUMENT REFERRED TO HEREIN OR THE SUBJECT MATTER THEREOF MAY NOT BE LITIGATED IN OR BY SUCH COURTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE GUARANTOR AGREES (i) NOT TO SEEK AND HEREBY WAIVES THE RIGHT TO ANY REVIEW OF THE JUDGMENT OF ANY SUCH COURT BY ANY COURT OF ANY OTHER NATION OR JURISDICTION WHICH MAY BE CALLED UPON TO GRANT AN ENFORCEMENT OF SUCH JUDGMENT, AND (ii) NOT TO ASSERT ANY COUNTER-CLAIM, IN ANY SUCH SUIT, ACTION OR PROCEEDING UNLESS SUCH COUNTERCLAIM COULD NOT, BY REASON OF ANY APPLICABLE FEDERAL OR STATE PROCEDURAL LAWS, BE INTERPOSED, PLEADED OR ALLEGED IN ANY OTHER ACTION. THE GUARANTOR AGREES THAT SERVICE OF PROCESS MAY BE MADE UPON THE GUARANTOR BY CERTIFIED OR REGISTERED MAIL TO THE ADDRESS FOR NOTICES SET FORTH IN THIS GUARANTY OR ANY METHOD AUTHORIZED BY THE LAWS OF NEW YORK. THE GUARANTOR IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTY, THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.**

12.     The Guarantor hereby represents and warrants that:

(a)     The most recent financial statement of the Guarantor, copies of which have been furnished to Lender, fairly present the financial condition of the Guarantor as of such dates in accordance with generally accepted accounting principles applied on a consistent basis, and, since the date of each of such financial statement, there

5

has been no material adverse change in such condition or operations. The Guarantor shall submit to the Lender such additional financial statements as may be required under the terms of the Building Loan Agreement, on such dates and within such time periods as shall be specified therein.

(a)    There are no actions, suits or proceedings pending or, to the knowledge of the Guarantor, threatened against or affecting the Guarantor or the properties of the Guarantor before any court, governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to the Guarantor, would have a material adverse effect on the financial condition, properties or operations of the Guarantor.

(b)    If not an individual, it is a general partnership, limited partnership, corporation, limited liability company or limited liability partnership (as indicated on the signature page hereto) duly organized or formed, as the case may be, under the laws of the jurisdiction of its incorporation or formation and has all requisite power and authority to enter into this Guaranty and to carry out its obligations hereunder.

(c)    The execution, delivery and performance of this Guaranty by the Guarantor have been duly authorized by all necessary action (other than a Guarantor who is an individual), and this Guaranty constitutes the legal, valid and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms.

(d)    If not an individual, it has the power and authority to own its properties and assets and to conduct its business as now being conducted and is duly qualified to do business in every jurisdiction in which the nature of its assets or the conduct of its business requires it to be so qualified.

(e)    Neither this Guaranty nor any other Loan Document to which the Guarantor is a party will violate any provision of law, rule or regulation or any order of any court or other governmental agency to which the Guarantor is subject, the organizational documents of the Guarantor, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's properties or assets are bound, or be in conflict with, result in a breach of, or constitute a default under (with or without notice or lapse of time), any such agreement or instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any properties or assets of the Guarantor.

6

(f)     No action or approval by or of and no filing or registration with any governmental or public body or authority, or any subdivision thereof, nor the consent of any other person or entity, nor any other legal formality is required in connection with the entering into, performance or enforcement of this Guaranty, except such as have been obtained or taken and with respect to which a copy or other satisfactory evidence thereof has been furnished to the Lender.

(g)     No information, exhibit or report furnished by the Guarantor to Lender in connection with the negotiation of this Guaranty contained as of the date thereof, or, if there be no such date of furnishing thereof, contains or contained any material misstatement of fact or omitted to state a material fact or any fact necessary to make the statements contained therein not misleading.

13.     If any of the provisions of this Guaranty, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, or the application of such provision to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

14.     The Guarantor hereby agrees to indemnify the Lender against loss, cost or expense caused by the assertion by the Borrower of any defense to its obligations under the Note, Mortgage, Building Loan Agreement or the assertion by the Guarantor of any defense to the obligations of the Guarantor under this Guaranty. The Guarantor hereby waives any right or claim of right to cause a marshaling of Borrower's assets or to cause Lender to proceed against any security for the Note before proceeding against the Guarantor or to proceed against the Guarantor in any particular order. The Guarantor agrees that any payments required to be made by them hereunder shall become due in accordance with the Note and Mortgage immediately upon the happening of any default under the Note or the Mortgage and without presentment of the Note to the Borrower, demand for payment or protest thereof, or notice of nonpayment or protest thereof.

15.     Should Lender be obligated by any bankruptcy or other law to repay to Borrower or any other Guarantor, or to any trustee, receiver or other representative of any of them, any amounts previously paid in respect of and/or pursuant to this Guaranty, then this Guaranty shall be reinstated to include the amount of such repayment. Lender shall not be required to litigate or otherwise dispute its obligations to make such repayments if it, in good faith and on the advice of counsel, believes that such obligation exists.

16.     Intentionally Omitted.

17.     If any action, suit or proceeding which either directly or indirectly involves this Guaranty is commenced, each of the Guarantors waives their right to any jury trial in connection therewith.

18.     This Guaranty is separate, distinct and in addition to any liability and/or obligations that the Guarantor may have under any other guaranty or any other agreement executed by the

7

Guarantor in connection with the Loan.

19.    This Guaranty shall be binding upon the respective heirs, legal representatives, successors and assigns of the Guarantor and shall inure to the benefit of Lender and its successors and assigns.

20.    All of the terms and provisions of this Guaranty are recourse obligations of Guarantor and not restricted by any limitation on personal liability. Guarantor hereby consents and agrees that Lender may at any time and from time to time without further consent from Guarantor do any of the following events, and the liability of Guarantor under this Agreement shall be unconditional and absolute and shall in no way be impaired or limited by any of the following event, whether occurring with or without notice to Guarantor or with or without consideration: (i) any extensions of time for performance required by any of the Loan Documents or extension or renewal of the Note; (ii) any sale, assignment or foreclosure of the Note, the Mortgage or any of the other Loan Documents or any sale or transfer of the Property; (iii) any change in the ownership of the Property, including, without limitation, the withdrawal or removal of Guarantor from any current or future position of ownership, management or control of the Property; (iv) the accuracy or inaccuracy of the representations and warranties made by Guarantor herein or in any of the Loan Documents; (v) the release of any Guarantor or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; (vi) the release or substitution in whole or in part of any security for the Loan; (vii) Lender's failure to record the Mortgage or to file any financing statement (or Lender's improper recording or filing thereof) or to otherwise perfect, protect, secure or insure any lien or security interest given as security for the Loan; (viii) the modification of the terms of any one or more of the Loan Documents; or (ix) the taking or failure to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents or any collateral for the Loan, nor any course or dealing with Guarantor or any other person, shall limit, impair or release Guarantor's obligations hereunder, effect this Agreement in any way or afford Guarantor any recourse against Lender. Nothing contained in this Section shall be construed to require Lender to take or refrain from taking any action referred to herein.

**[Remainder of Page Intentionally Left Blank]**

8

**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty of Completion as of the day and year first above written.

_____
**DAVID DELUCIA**

_____
**JAMES MCMANUS**

_____
**RANDYLYNN RASTELLO-MCMANUS**


STATE OF NEW YORK          )
                          ) ss:
COUNTY OF WESTCHESTER      )

On the 28 day of October, in the year 2021, before me, the undersigned, a Notary Public in and for said State, personally appeared, DAVID DELUCIA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

HELEN J. BELSITO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BE6203964
Qualified in Suffolk County
Commission Expires April 7, 2025


STATE OF NEW YORK          )
                          ) ss:
COUNTY OF WESTCHESTER      )

On the 28 day of October, in the year 2021, before me, the undersigned, a Notary Public in and for said State, personally appeared, JAMES MCMANUS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

HELEN J. BELSITO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BE6203964
Qualified in Suffolk County
Commission Expires April 7, 2025

**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty of Completion as of the day and year first above written.

_____
**DAVID DELUCIA**


_____
**JAMES MCMANUS**


_____
**RANDYLYNN RASTELLO-MCMANUS**


STATE OF NEW YORK     )
                            ) ss:
COUNTY OF               )

On the _____ day of October, in the year 2021, before me, the undersigned, a Notary Public in and for said State, personally appeared, DAVID DELUCIA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.


_____
Notary Public


STATE OF NEW YORK     )
                            ) ss:
COUNTY OF               )

On the _____ day of October, in the year 2021, before me, the undersigned, a Notary Public in and for said State, personally appeared, JAMES MCMANUS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.


_____
Notary Public

STATE OF NEW YORK            )
                            ) ss:
COUNTY OF WESTCHESTER        )

On the 28 day of October, in the year 2021, before me, the undersigned, a Notary Public in and for said State, personally appeared, RANDYLYNN RASTELLO-MCMANUS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

HELEN J. BELSITO
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BE6203964
Qualified in Suffolk County
Commission Expires April 7, 2025