# **EXHIBIT 11**

**FIRST AMENDMENT**
**TO**
**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**1932 MCGRAW AVENUE LLC**

**THIS FIRST AMENDMENT TO LIMITED LIABILITY COMPANY AGREEMENT** (this "**Amendment**") of **1932 MCGRAW AVENUE LLC**, a New York limited liability company (the "**Company**") is made by and among the individuals and/or entities signing it below (collectively, the "**Members**") as of October 28, 2021.

**WHEREAS**, the parties signing this Amendment desire to amend that certain Limited Liability Company Agreement of the Company dated as of February 19, 2021 (the "**Operating Agreement**"), which governs the Company, pursuant to the New York Limited Liability Company Law;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the individuals signing this Amendment below agree to amend the Operating Agreement as follows by adding the following provisions, which terms shall modify, supersede and replace the terms of the Operating Agreement:

1. **Single Purpose Entity Provisions.**

Notwithstanding any other provision of the Operating Agreement, any other organizational documents or any provisions of law that empowers the Company, the following provisions shall be operative and controlling so long as (a) that certain land loan in the principal sum of Seven Hundred Six Thousand and 00/100 Dollars ($706,000.00)(the "**Land Loan**") by **REALFI REAL ESTATE INVESTMENT TRUST LLC**, a Delaware limited liability company (together with its successors and/or assigns, as their interests may appear, the "**Lender**"), and (b) that certain building loan in the principal sum of up to One Million Three Hundred Ninety Four Thousand and 00/100 Dollars ($1,394,000.00)(the "**Building Loan**", and collectively herein with the Land Loan, the "**Loan**"), remain outstanding:

(a)    Company has not owned, does not own and will not own any asset or property other than (i) 1932 McGraw Avenue, Bronx, New York 10462 (the "**Mortgaged Property**"), and (ii) incidental personal property necessary for the ownership, management or operation of the Mortgaged Property.

(b)    Company has not engaged, does not engage, and will not engage in any business other than the ownership, management and operation of the Mortgaged Property and Company will conduct and operate its business as presently conducted and operated.

(c)    Company has not entered and is not a party to and will not enter into or be a party to any contract or agreement with any affiliate of Company, any constituent party of Company or

any affiliate of any constituent party, except in the ordinary course of business and on terms and conditions that are disclosed to Lender in advance and that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms-length basis with third parties other than any such party.

(d)    Company has not incurred and will not incur any indebtedness other than (i) the Loan and (ii) unsecured trade payables and operational debt not evidenced by a note and in an aggregate amount not exceeding one percent (1.00%) of the original principal amount of the Loan at any one time; provided that any indebtedness incurred pursuant to sub-clause (ii) shall be (x) not more than sixty (60) days past due and (y) incurred in the ordinary course of business (the indebtedness described in the foregoing clauses (i) and (ii) is referred to herein, collectively, as **"Permitted Indebtedness"**). No indebtedness other than the Loan may be secured (subordinate or pari passu) by the Mortgaged Property.

(e)    Company has not made and will not make any loans or advances to any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, entity, party or government (whether territorial, national, federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body or department thereof) (including any affiliate or constituent party) (a **"Person"**), and has not acquired and shall not acquire obligations or securities of its affiliates.

(f)    Company is and will remain solvent and Company has paid and will pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due.

(g)    Company has done or caused to be done and will do all things necessary to observe organizational formalities and preserve its existence, and Company will not (i) terminate or fail to comply with the provisions of its organizational documents, or (ii) unless Lender has consented, amend, modify or otherwise change its Operating Agreement or other organizational documents.

(h)    Company has maintained and will maintain all of its accounts, books, records, financial statements and bank accounts separate from those of its affiliates and any other Person. Company's assets have not been and will not be listed as assets on the financial statement of any other Person; provided, however, that Company's assets may be included in a consolidated financial statement of its affiliates if (i) appropriate notation shall be made on such consolidated financial statements to indicate the separateness of Company and such affiliates and to indicate that Company's assets and credit are not available to satisfy the debts and other obligations of such affiliates or any other Person, and (ii) such assets shall be listed on Company's own separate balance sheet. Company has and will file its own tax returns (to the extent Company is required to file any such tax returns) and will not file a consolidated federal income tax return with any other Person. Company has maintained and shall maintain its books, records, resolutions and agreements as official records.

(i)     Company has been and will be, and has held and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity (including any affiliate of Company or any constituent party of Company), has corrected and shall correct any known misunderstanding regarding its status as a separate entity, has conducted and shall conduct business in its own name, has not identified and shall not identify itself or any of its affiliates as a division or part of the other, and has maintained and shall maintain and utilize separate stationery, invoices and checks bearing its own name.

(j)     Company has maintained and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

(k)     Neither Company nor any constituent party has sought or will seek or effect the liquidation, dissolution, winding up, consolidation or merger, in whole or in part, of Company.

(l)     Company has not commingled and will not commingle the funds and other assets of Company with those of any affiliate or constituent party or any other Person, and has held and will hold all of its assets in its own name.

(m)     Company has maintained and will maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any affiliate or constituent party or any other Person.

(n)     Company has not assumed or guaranteed or become obligated for the debts of any other Person and has not held itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person, and Company will not assume or guarantee or become obligated for the debts of any other Person and does not and will not hold itself out to be responsible for or have its credit available to satisfy the debts or obligations of any other Person.

(o)     Company hereby covenants and agrees that it will comply with or cause the compliance with, (i) all the representations, warranties and covenants contained within the Loan documents, and (ii) all the organizational documents of Company.

(p)     Company has not permitted and will not permit any affiliate or constituent party independent access to its bank accounts.

(q)     Company has paid and shall pay the salaries of its own employees (if any) from its own funds and has and shall maintain a sufficient number of employees (if any) in light of its contemplated business operations.

(r)     Company has compensated and shall compensate each of its consultants and agents from its funds for services provided to it and pay from its own assets all obligations of any kind incurred.

(s)    Company has not, and without the unanimous consent of all of its members or managers/managing members will not, take any action that might reasonably be expected to cause Company to become insolvent.

(t) Company has allocated and will allocate fairly and reasonably any shared expenses, including shared office space.

(u)    Notwithstanding any provision of the Operating Agreement or this Amendment, except in connection with the Loan or any prior mortgage financing that has been fully paid and discharged in full prior to the date hereof, Company has not pledged and will not pledge its assets for the benefit of any other Person.

(v)    Company either (i) has no, and will have no, obligation to indemnify its officers, directors, managers, members, shareholders or partners, as the case may be, or (ii) if it has any such obligation, such obligation is fully subordinated to the Loan and will not constitute a claim against Company if cash flow in excess of the amount required to pay the Loan is insufficient to pay such obligation.

(w)    Company will consider the interests of Company's creditors in connection with all limited liability company actions.

(x)    Except as provided in the Loan documents, Company has not and will not have any of its obligations guaranteed by any affiliate.

(y)    The Company shall not be divided into one (1) or more than one (1) entity.

(z)    Intentionally Omitted.

## 2.    **Uniform Commercial Code**

(a)    Each "*Membership Interest*" (defined to mean a member's rights in the Company, collectively, including the member's economic interest, any rights to vote or participate in management, and any right to information concerning the business and affairs of the Company) in the Company shall constitute and shall remain a "security" within the meaning of, and be governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 and the Company hereby "opts-in" to such provisions for the purpose of the Uniform Commercial Code.

(b)    The Company shall maintain books for the purpose of registering the transfer of Membership Interest of the Company. Notwithstanding anything in this Amendment to the

contrary, the transfer of any Membership Interest in the Company requires delivery of an endorsed Certificate and any transfer of Membership Interest in the Company shall not be deemed effective until the transfer is registered in the books and records of the Company.

(c)     Each Membership Interest in the Company shall be represented by a certificate, and shall contain the following legend: "THE TRANSFER OF THIS CERTIFICATE AND THE MEMBERSHIP INTEREST REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE OPERATING AGREEMENT, AS THE SAME MAY BE AMENDED OR AMENDED AND RESTATED FROM TIME TO TIME." Each such Certificate shall be denominated in terms of the percentage of Membership Interest in the Company evidenced by such Certificate and shall be signed by the manager on behalf of the Company.

(d)     Notwithstanding any provision of this Amendment to the contrary, to the extent any provision of this Amendment is inconsistent with any non-waivable provision of Article 8 of the Uniform Commercial Code as in effect in the State of New York, the provisions of Article 8 of the Uniform Commercial Code as in effect in the State of New York shall control.

(e)     THE TRANSFER OF THE MEMBERSHIP INTEREST IN THE COMPANY DESCRIBED IN THIS AMENDMENT ARE RESTRICTED AS PROVIDED HEREIN.

(f)     To the fullest extent permitted by applicable law, without any further act, vote or approval of any member, Person or officer the Company shall issue a new Certificate in place of any Certificate previously issued if the holder of the Membership Interest in the Company represented by such Certificate, as reflected on the books and records of the Company:

(i)     makes proof by affidavit, in form and substance satisfactory to the Company, that such previously issued Certificate has been lost, stolen or destroyed;

(ii)     requests the issuance of a new Certificate before the Company has notice that such previously issued Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(iii)     if requested by the Company, delivers to the Company a bond, in form and substance satisfactory to the Company, with such surety or sureties as the Company may direct, to indemnify the Company against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Certificate; and

(iv)     satisfies any other reasonable requirements imposed by the Company.

(g)     To the fullest extent permitted by applicable law, upon a member's transfer or assignment, in whole or in part, of its Membership Interest in the Company represented by a Certificate, the transferee of such Membership Interest in the Company shall deliver the Certificate or Certificates representing such Membership Interest to the Company for cancellation (executed by such transferee on the reverse side thereof), and the Company shall thereupon issue a new Certificate to such transferee for the percentage of Membership Interest in the Company so

transferred or assigned and, if applicable, cause to be issued to the transferring or assigning member a new Certificate for that percentage of Membership Interest in the Company that were represented by the canceled Certificate and that are not so transferred or assigned.

3.    **Additional Provisions.**

(a)    The recitals contained above are true and correct and are incorporated herein by this reference.

(b)    Any capitalized term used but not defined herein shall have the meaning given to such term in the Operating Agreement.

(c)    The Company shall not, without the prior written consent of the Lender issue, and shall not permit the issuance of any additional Membership Interest in the Company other than its initial issuance of Membership Interest issued on or prior to the date of this Amendment.

(d)    For so long as the Loan is outstanding, **DAVID DELUCIA, RANDYLYNN RASTELLO-MCMANUS** and **ELIEZER TORRES**, each an individual shall be the members of the Company unless Lender enforces its rights under the Ownership Interests Pledge and Security Agreement executed in connection with the Loan (the "**Pledge Agreement**") and Lender or third party nominee of Lender becomes the member, manager or managing member in connection therewith.

(e)    For so long as the Loan is outstanding, **DAVID DELUCIA** and **RANDYLYNN RASTELLO-MCMANUS**, shall remain as managers of the Company and may not resign, or appoint a successor manager for Company, in addition to observing all other resignation requirements of this Amendment, unless Lender enforces its rights under the Pledge Agreement, in which event, Lender or third party nominee of Lender shall be, without any further action, appointed the managing member of the Company.

(f)    The Members shall not, and cause the Company to not, amend, alter, change or repeal any Section or Schedule of the Operating Agreement if such change would adversely impact (i) any of the Lender's collateral, or (ii) Lender's ability to enforce its remedies under the Loan documents or (iii) amend any of the terms in this Amendment.

(g)    Notwithstanding anything to the contrary set forth in this Amendment or any other agreement, no provision of the Operating Agreement shall restrict or otherwise impede Lender from enforcing or realizing upon rights and remedies under the Pledge Agreement. The Company consents to all such rights and remedies.

(h)    Notwithstanding any other provision contained herein to the contrary, each Member shall be permitted to pledge and to transfer to the Lender its Membership Interest.

(i)    All parties signing this Amendment agree to the terms of the Loan.

(j)    Notwithstanding any other provision of the Operating Agreement, a secured party or other successful bidder at a foreclosure sale or other disposition will automatically be deemed admitted as a member of the Company immediately before the Member ceases to be a member.

(k)    This Amendment may be executed in any number of counterparts, and each such counterpart shall for all purposes be deemed to be an original, and all such counterparts together constitute but one and the same agreement. Further, facsimile or electronic (e.g., .pdf format) copies of signatures shall be considered originals for purposes of binding the parties hereto.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, the individuals and entities signing this Amendment below conclusively evidence their agreement to the terms and conditions of this Amendment by so signing this Amendment.

**MEMBERS**:

_____
DAVID DELUCIA

_____
RANDLYNN RASTELLO-MCMANUS

_____
ELIEZER TORRES

IN WITNESS WHEREOF, the individuals and entities signing this Amendment below conclusively evidence their agreement to the terms and conditions of this Amendment by so signing this Amendment.

**MEMBERS**:

_____
DAVID DELUCIA

_____
RANDLYNN RASTELLO-MCMANUS

_____
ELIEZER TORRES