# **EXHIBIT 14**

## SECURED PROMISSORY NOTE

$500,000.00

Dated: As of June 3, 2022
New York, New York

This **SECURED PROMISSORY NOTE** (hereinafter, this "**Note**") made as of the 3rd day of June, 2022, by **1932 MCGRAW AVENUE LLC**, a New York limited liability company, having an address at 1932 McGraw Avenue, Bronx, New York 10462 (hereinafter, the "**Maker**"), for the benefit of **FAIRBRIDGE REAL ESTATE INVESTMENT TRUST LLC**, a Delaware limited liability company, having an address at c/o 707 Westchester Avenue, Suite 305A, White Plains, New York 10604 (together with its successors and/or assigns, as their interests may appear, the "**Payee**").

**FOR VALUE RECEIVED**, Maker promises to pay to the order of Payee, at c/o 707 Westchester Avenue, Suite 305A, White Plains, New York 10604, or at such other place as Payee may designate to Maker in writing from time to time, the principal sum of FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) together with interest thereon at the Interest Rate (as defined below) (or the Default Rate, as defined below, if applicable), calculated in accordance with the terms and conditions set forth in this Note, from and including the date of this Note to the date this Note is paid in full, as follows:

A.      On the date hereof (the "**Closing Date**"), interest on the principal sum of this Note from (and including) the Closing Date to June 30, 2022 at the Interest Rate.

B.      Thereafter, interest only at the Interest Rate on the outstanding Principal Balance (as defined below) shall be due monthly and shall be paid monthly in arrears, commencing on August 1, 2022, and continuing thereafter on each Payment Date (as such term is defined below) through and including the Maturity Date (as such term is defined below)(each such monthly payment, a "**Monthly Payment**").

C.      Thereafter, on the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest through the Maturity Date at the Interest Rate, and all other sums payable to the Maker of this Note (whether pursuant to this Note or the Mortgage or Other Security Documents (as such terms are hereinafter defined)) shall become due and payable.

1.      For the purposes of this Note, these terms shall be defined as follows:

a.      The term "**Business Day**" shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

b.      The term "**Debt**" shall mean all principal, interest and other sums of any nature whatsoever, which may or shall become due to Payee in accordance with the provisions of this Note, the Mortgage or Other Security Documents.

c.      The term "**Interest Rate**" as used in this Note shall mean a fixed rate equal to twelve and 00/100 percent (12.00%) per annum.

d.    The term "**Loan Documents**" shall mean this Note, the Mortgage and all and any of the documents now or hereafter executed by Maker and/or others and by or in favor of Payee, which evidences, secures or guarantees all or any portion of the payments due under this Note or otherwise is executed and/or delivered in connection with this Note, the Mortgage, guarantees and agreements.

e.    The term "**Maturity Date**" shall mean the earlier of (i) **April 28, 2023**, or (ii) such sooner date, by acceleration or otherwise, as may be applicable pursuant to the terms hereof, at which time the entire Debt shall become due and payable.

f.    The term "**Mortgage**" shall mean that certain Mortgage and Security Agreement dated as of the date hereof in the principal amount of $500,000.00 encumbering premises located at 1932 McGraw Avenue, Bronx, New York 10462 (the "**Property**").

g.    The term "**Other Security Documents**" shall mean any of the documents other than this Note or the Mortgage, now or hereafter executed by the Maker or others, and by or in favor of Payee, which wholly or partially secure or guarantee payment of this Note, or which otherwise pertain to the loan evidenced by this Note (the "**Loan**").

h.    The term "**Payment Date**" shall mean the first (1st) day of the month, and if such day is not a Business Day, the next succeeding Business Day.

i.    The term "**Person**" shall mean an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

j.    The term "**Principal Balance**" shall mean the outstanding principal balance of this Note from time to time.

2.    Any capitalized terms used herein but not defined shall have the meanings ascribed to them in the Mortgage or Other Security Documents.

3.    Interest shall for all purposes hereunder be calculated on the basis of a three hundred sixty (360) day year and charged on the basis of a three hundred sixty five (365) or three hundred sixty six (366) day year counting the numbers of days elapsed.

4.    The failure to make any payment required under this Note or the occurrence of any Event of Default (as such term is defined in the Mortgage or the Other Security Documents) shall constitute an Event of Default under this Note.

5.    Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate prior to and subsequent to the entry of a Judgment of Foreclosure and Sale, (b) Payee may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note and the Debt

immediately due and payable and (c) Payee may pursue all rights and remedies available hereunder or under Mortgage and the Other Security Documents.  Payee's rights, remedies and powers, as provided in this Note, the Mortgage or the Other Security Documents are cumulative and concurrent, and may be pursued singlely, successively or together against Maker, any Guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged by Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Payee.  Additionally, Payee may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Payee's sole discretion. Failure of Payee, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note and the Debt immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

6.  A payment shall not be deemed to have been made on any day unless such payment has been received by Payee, at the required place of payment, in U.S. dollars by no later than 3:00 p.m. (New York time) on such day.  Whenever any payment to Payee hereunder would otherwise be due (except by reason of acceleration) on a day that is not a Business Day, such payment shall instead be due on the next succeeding Business Day.  If any installment of principal, interest or other sums due hereunder or under the Mortgage or any Other Security Document are not paid within five (5) days of the date on which same are due, the Maker shall pay to the Payee a late charge of ten percent (10.00%) of such unpaid installment as a late payment charge, such late charge to be immediately due and payable without demand by the Payee.  Notwithstanding anything to the contrary, all payments due under this Note, the Mortgage and the Loan Documents shall be made by means of wire transfer to the order of Payee, as directed by Payee, and Payee shall have the absolute right to reject any payment not made by wire transfer. In addition, Maker shall pay to Payee the sum of Fifty and 00/100 Dollars ($50.00) for any payment which is returned for any reason by Maker's bank unpaid unless due to no fault of Maker.

7.  Provided that the following conditions are met, the Maker shall have the option of extending the Maturity Date until October 28, 2023 (such date, or such earlier date on which Maker accelerates payment of the indebtedness evidenced hereby pursuant to the provisions hereof or of any of Loan Documents being herein referred to as the **"Extended Maturity Date"**) upon compliance with the following conditions: (a) no default or Event of Default exists under this Note, the Mortgage or any of the Loan Documents upon the period commencing with Maker's receipt of Extension Notice (as defined hereunder) through the Maturity Date; (b) Payee's due diligence review and satisfactory receipt of an appraisal of the Property, paid for by Maker, demontrating an "as is" value of the Property of not less than $3,500,000.00 and otherwise satisfactory to Payee at its sole discretion; (c) Maker provides Payee with written notice of its intention to extend the term of this Note to the Extended Maturity Date, such notice being received not less than thirty (30) days and no more than one hundred twenty (120) days prior to the Maturity Date (the **"Extension Notice"**), *time being of the essence with respect thereto*; (d) simultaneous with the delivery of the Extension

Notice, an extension fee equal to One and 00/100 Percent (1.00%) of the outstanding balance of the Principal Sum (the "**Extension Fee**") shall be earned due and owing as of such date, however, payment of the Extension Fee shall be deferred until the earlier of: (i) an Event of Default under this Note; (ii) prepayment of the obligations under the Loan Documents and (iii) the Extended Maturity Date; and (e) simultaneous with the delivery of the Extension Notice, Maker shall be required to fund a reserve in an amount sufficient to pay the interest at the Interest Rate during through the Extended Maturity Date (or, if one is established herewith, then replenish such interest reserve), real estate taxes and insurance premiums on the Property that will be due through the Extended Maturity Date. If the Maturity Date is extended to the Extended Maturity Date, the Interest Rate shall increase to a rate equal to twelve and 50/100 percent (12.50%) per annum, and payment terms shall otherwise remain as set forth in this Note, except as expressly modified herein. Notwithstanding anything herein to the contrary, the term of this Note may not be extended unless, simultaneously with such extension, the terms of the Senior Loans and Senior Loan Documents (as such terms are hereinafter defined) are also extended in accordance with terms thereof.

8.    Subject to the following provisions, provided that, simultaneously with any prepayment of the Debt, Maker shall pay to Payee a prepayment premium in an amount equal to six (6) full Monthly Payments (excluding short term interest paid for the partial month of May, 2022) which would have been due and payable to Payee absent prepayment of the obligations hereunder, less any Monthly Payments of interest actually paid in full by Maker and received by Payee, such that Payee shall have received not less than six (6) full Monthly Payments hereunder (excluding short term interest paid for the partial month of May, 2022)(the "**Prepayment Premium**"), then Maker shall have the right to prepay the Principal Balance in whole only, along with interest, additional interest, and any other sums due under this Note, the Mortgage or the Other Security Documents upon prior irrevocable written notice sent by Maker (an "**Prepayment Notice**"), setting forth the intended prepayment date ("**Prepayment Date**"), which Prepayment Notice must be received by Payee not more than sixty (60) days prior to the Prepayment Date and not less than thirty (30) days prior to the Prepayment Date and on the Prepayment Date, Maker shall make prepayment as herein above provided, failure of which to timely prepay shall result in a One Thousand and 00/100 Dollars ($1,000.00) prepayment cancellation fee to compensate Payee for expenses associated with Maker's failure to comply with its request and is not a penalty. Notwithstanding anything to the contrary contained herein, unless prepayment is tendered on the first day of a calendar month and unless Maker has tendered the Monthly Payment for the month in which the prepayment of the Debt occurs, Maker shall along with the prepayment of the Debt pay the entire Monthly Payment due for the month in which the Prepayment Date occurs (which amount shall constitute additional consideration for the prepayment). **SUCH PREPAYMENT PREMIUM SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR THE OTHER LOAN DOCUMENTS. UPON ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE CALCULATED BASED UPON THE AMOUNT OF THE PREPAYMENT DUE ON THE DATE OF SUCH ACCELERATION; PROVIDED, HOWEVER, IF**

SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR, CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD OF TIME THE LOAN IS OUTSTANDING.

Notwithstanding anything to the contrary contained herein, the Principal Balance of this Note may not be prepaid by Maker unless, simultaneously with such prepayment, Maker also prepays (i) that certain land loan originated as of October 28, 2021 (the "**Land Loan**") in the principal amount of $706,000.00 from Payee to Maker's predecessor, RealFi Real Estate Investment Trust LLC, a Delaware limited liability company (hereinafter, "**RealFi**") as evidenced by that certain Consolidated, Amended and Restated Note dated as of October 28, 2021 (the "**Land Loan Note**") in the principal amount of $706,000.00 executed by Maker in favor of RealFi, and as secured by that certain Mortgage and Security Agreement executed by Maker in favor of RealFi in the principal amount of $706,000.00 and encumbering the Property (the "**Land Loan Mortgage**"), as well as all guarantees, pledges, and other documents executed in connection with the Land Loan (collectively, the "**Land Loan Documents**"), (ii) that certain building loan originated as of October 28, 2021 (the "**Building Loan**") in the principal amount of up to $1,394,000.00 from Payee to RealFi as evidenced by that certain Building Loan Note dated as of October 28, 2021(the "**Building Loan Note**") in the principal amount of up to $1,394,000.00 executed by Maker in favor of RealFi, and as secured by that certain Building Mortgage and Security Agreement executed by Maker in favor of Payee in the principal amount of $1,394,000.00 and encumbering the Property (the "**Building Loan Mortgage**"), as well as all guarantees, pledges, and other documents executed in connection with the Building Loan (collectively, the "**Building Loan Documents**"), and (iii) that certain subordinate loan originated as of October 28, 2021 (the "**Subordinate Loan**", and collectively herein with the Land Loan and Building Loan, the "**Senior Loans**") in the principal amount of $200,000.00 from Payee to RealFi as evidenced by that certain Subordinate Promissory Note dated as of October 28, 2021 (the "**Subordinate Loan Note**") in the principal amount of $200,000.00 executed by Maker in favor of RealFi, and as secured by that certain Subordinate Mortgage and Security Agreement executed by Maker in favor of RealFi in the principal amount of $200,000.00 and encumbering the Property (the "**Subordinate Loan Mortgage**", and collectively herein with the Land Loan Mortgage and Building Loan Mortgage, the "**Senior Mortgages**"), as well as all guarantees, pledges, and other documents executed in connection with the Subordinate Loan (collectively, the "**Subordinate Loan Documents**", and collectively herein with the Land Loan Documents and Building Loan Documents, the "**Senior Loan Documents**").

9.    Separate and in addition to all other payment obligations of Maker contained herein,

Maker shall be required to pay a loan origination fee on the date of this Note equal to two and one half percent (2.50%) of the Principal Balance (the "**Origination Fee**").

10. Intentionally Omitted.

11. Maker acknowledges that this Note and Maker's obligations under this Note are and shall at all times continue to be absolute and unconditional in all respects. This Note, the Mortgage and the Other Security Document set forth the entire agreement and understanding of Payee and Maker.

12. Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of any of its rights or remedies hereunder or under the Mortgage and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts, whether or not any action or proceeding on this Note, on the Mortgage and/or the Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Mortgage and the Other Security Documents.

13. The indebtedness herein evidenced by this Note is secured by the Mortgage and the Other Security Documents.

14. THIS NOTE HAS BEEN EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND, THIS NOTE, THE MORTGAGE AND EACH OF THE OTHER SECURITY DOCUMENTS SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

15. Maker does hereby agree that upon the occurrence of an Event of Default, or upon the failure of Maker to pay the Debt in full on the Maturity Date, Payee shall be entitled to receive and Maker shall pay interest on the entire Debt at the rate of twenty-four percent (24.00%) per annum or at the maximum rate of interest which Maker may by law pay, whichever is lower (the "**Default Rate**"), to be computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt, including all periods prior to or subsequent to the entry of a Judgment of Foreclosure and Sale. This charge shall be added to the Debt, and shall be deemed secured by the Mortgage. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Payee by reason of the occurrence of any Event of Default.

16. This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee

to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Payee for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the Loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If, by the terms of this Note, Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate, and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

17. No delay on the part of Payee in exercising any right or remedy under this Note, the Mortgage or the Other Security Documents or failure to exercise the same shall operate as a waiver in whole or in part of any such right or remedy. No notice to or demand on Maker shall be deemed to be a waiver of the obligation of Maker or of the right of Payee to take further action without further notice or demand as provided in this Note, the Mortgage and the Other Security Documents.

18. Each of Payee's rights and remedies under this Note shall be in addition to all of its other rights and remedies under the Mortgage, Other Security Documents and applicable law.

19. **TIME IS OF THE ESSENCE** with regard to Maker's performance of all the terms, covenants and conditions of this Note.

20. Any provision of this Note, the Mortgage or the Other Security Documents that is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof or affecting the validity or enforceability of such provision.

21. All of the provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

22. Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

23. Maker (and the undersigned representative of Maker, if any) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt hereunder constitutes a valid and binding obligation of Maker.

24. All notices to be given under this Note shall be given in the same manner as provided in the Mortgage.

25. This Note, and any provisions hereof, may not be modified, amended, waived,

extended, changed, discharged or terminated orally or by any act or failure to act on the part of Maker or Payee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

26. Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives valuation, appraisement, presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, lack of diligence, delays in collection or enforcement of this Note, notice of the intention to accelerate, the benefit of all applicable law affording any right or redemption or cure and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Other Security Documents, and in connection with any suit, action or proceeding brought by Payee on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Payee on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Payee. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Payee with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

27. FOR ANY CLAIM, ACTION, OR DISPUTE ARISING UNDER, OR TO INTERPRET OR APPLY, THIS NOTE OR ANY OTHER SECURITY DOCUMENT, OR TO RESOLVE ANY DISPUTE ARISING UNDER THE FOREGOING OR THE RELATIONSHIP BETWEEN THE PARTIES, MAKER IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, NEW YORK, AND APPELLATE COURTS FROM ANY OF SUCH COURTS. MAKER IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY HAVE AT ANY TIME TO VENUE OF ANY SUCH SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, INCLUDING ANY CLAIM THAT ANY SUCH SUIT, ACTION, OR PROCEEDING SO BROUGHT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THE MORTGAGE OR OTHER

SECURITY DOCUMENTS SHALL BE DEEMED TO PRECLUDE PAYEE FROM BRINGING ANY SUIT, ACTION, OR PROCEEDING RELATING TO ANY OTHER SECURITY DOCUMENT OR THE DEBT IN ANY OTHER JURISDICTION WHERE PAYEE COULD OTHERWISE PROPERLY BRING SUCH SUIT, ACTION, OR PROCEEDING. MAKER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO MAKER AT THE ADDRESS SET FORTH ON PAGE 1 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

28. To the extent applicable, in an action commenced in the Commercial Division, New York State Supreme Court, the parties hereby agree, subject to the requirements for a case to be heard in the Commercial Division, to apply the Court's accelerated adjudication procedures set forth in Rule 9 of the Rules of Practice for the Commercial Division, in connection with any dispute, claim or controversy arising out of or relating to this Note or any of the Loan Documents, or the breach, termination, enforcement or validity thereof.

29. Without limiting the generality of the foregoing, the liability of the Maker hereunder shall not be affected or impaired in any way by any of the following acts or things (which the Payee is hereby expressly authorized to do, omit or suffer from time to time without notice to or consent of anyone): (a) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness arising under this Note, the Mortgage or the Other Security Documents; (b) any extension or renewal of any such indebtedness (whether or not for longer than the original period) or any modification of the interest rate, maturity or other terms of any such indebtedness; (c) any delay or lack of diligence in the enforcement of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; (d) any full or partial release of, compromise or settlement with, or agreement not to sue any guarantor or other person liable on any such indebtedness; (e) any release, surrender, cancellation or other discharge of any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or the acceptance of any instrument in renewal or substitution for any instrument evidencing any such indebtedness; (f) any failure to obtain collateral security (including rights of setoff) for any indebtedness arising under this Note, the Mortgage or the Other Security Documents, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security for any such indebtedness; (g) any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security for any such indebtedness; (h) any assignment, sale, pledge or other transfer of any of the indebtedness arising under this Note, the Mortgage or the Other Security Documents; or (i) any manner, order or method of application of any payments or

credits on any indebtedness arising under this Note, the Mortgage or the Other Security Documents.

30.    Makers hereby waives, for the benefit of the Payee: (a) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; (b) any defense based upon the Payee's errors or omissions in the administration of the Debt; (c) (i) any principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof and any legal or equitable discharge of its obligations hereunder, (ii) the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof, (iii) any rights to set-offs, recoupments and counterclaims, and (iv) promptness, diligence and any requirement that the Payee protect, secure, perfect or insure any security interest or lien or any property subject thereto; and (d) notices, demands, presentments, protests, notices of protest, notices of dishonor and notices of any action or inaction, including acceptance hereof, notices of default thereunder or under this Note, the Mortgage or the Other Security Documents, any agreement or instrument related thereto, notices of any renewal, extension or modification of the Debt or any agreement related thereto, notices of any extension of credit to the Maker and notices of any matters referred to in any guaranty securing this Note and any right to consent to any thereof.

31.    Intentionally Omitted.


**[Remainder of Page Intentionally Left Blank]**

**IN WITNESS WHEREOF**, Maker has duly executed this Note the day and year first above written.

**1932 MCGRAW AVENUE LLC**
a New York limited liability company

By: _____
Name: David DeLucia
Title:   Authorized Signatory

STATE OF NEW YORK              )
                              )    ss.:
COUNTY OF WESTCHESTER          )

On the **3RD** ___ day of June in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared DAVID DELUCIA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ERIC R. KELLERMAN
Notary Public, State of New York
No. 01KE6262573
Qualified in Westchester County
Commission Expires July 2, 20__