# EXHIBIT 17

*EXECUTION VERSION*

THIS MORTGAGE EXTENSION AND MODIFICATION AGREEMENT (this "**Agreement**") is made as of May $\underline{31}$ , 2023, effective as of April 28, 2023 (the "**Effective Date**") between **1932 MCGRAW AVENUE LLC**, a New York limited liability company with an address at $\underline{214\ Outlook\ Avenue,\ Bronx,\ NY\ 10465}$  ("**Borrower**"), **DAVID DELUCIA**, an individual having an address at 243 Manhattan Avenue, Yonkers, New York 11010, **JAMES MCMANUS**, an individual having an address at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465, and **RANDYLYNN RASTELLO-MCMANUS**, an individual having an address at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465 (individually and collectively, "**Guarantor**"), and **FAIRBRIDGE CREDIT LLC**, a Delaware limited liability company with an address at 330 Post Road, Suite 230, Darien, Connecticut 06820 ("**Lender**")

WITNESSETH:

WHEREAS, the Borrower is now the owner in fee simple of the parcels of land and the improvements thereon being commonly known as 1932 McGraw Avenue, Bronx, New York 10462; tax map designation Block 3931, Lot 18; Borough and County of Bronx (the "**Mortgaged Property**"); and

WHEREAS, by assignment from Fairbridge Real Estate Investment Trust LLC F/K/A RealFi Real Estate Investment Trust LLC (the "**Original Lender**"), the Lender is the owner and holder of that certain Note (as defined below) and that certain Mortgage (as defined below) securing the same as further set forth on the attached Schedule A; and

WHEREAS, under the Note and Mortgage the Borrower is now indebted to the Lender in the principal sum of up to ONE MILLION THREE HUNDRED NINETY FOUR THOUSAND AND XX/100 DOLLARS ($1,394,000.00) lawful money of the United States of America (the "**Debt**"), as aforesaid, with interest thereon based on the terms of the Note (as hereinafter defined) secured by the Note and Mortgage, the terms of which are evidenced in and secured by, among other things: (i) that certain Building Loan Note dated as of October 28, 2021 (the "**Note**"), and (ii) that certain Building Mortgage and Security Agreement dated as of October 28, 2021;

WHEREAS, simultaneously with in connection with the Loan closing, Original Lender made that certain loan to Borrower in the principal sum of $706,000.00 (the "**Land Loan**"), as such Land Loan is now owned and held by Lender by assignment from Original Lender;

WHEREAS, at the Loan and the Land Loan closing, an interest reserve (the "**Interest Reserve**") was established pursuant to and in accordance with that certain Prepaid Interest Agreement dated as October 28, 2021 for the prepayment of certain monthly interest payments due under the Loan and the Land Loan;

WHEREAS, simultaneously herewith, the terms of the Land Loan are being modified and extended pursuant to and in accordance with the terms of that certain Mortgage

Extension and Modification Agreement of even date herewith (the "**Land Loan Extension Agreement**");

WHEREAS, in addition to the Loan and the Land Loan, Lender is the owner and holder of those certain loans secured by the Mortgaged Property: (i) loan made to Borrower by Original Lender dated as of October 28, 2021 in the principal sum of $200,000.00 (the "**Subordinate Loan**"); and (ii) loan made to Borrower by Lender dated as of June 3, 2022 in the principal sum of $500,000.00 (the "**Air Rights Loan**"), each of which are being modified and extended simultaneously herewith (the "**Subordinate Loan Extension Agreement**"; and the "**Air Rights Loan Extension Agreement**", respectively); and

WHEREAS, the Borrower and the Lender desire to further modify and extend the time and manner of payment of the Debt as set forth in the Note, as hereinafter provided so that the Debt shall be paid in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the Mortgaged Property and the mutual covenants and agreements of the parties and the sum of Ten and 00/100 ($10.00) Dollars to each party by the other in hand paid, the receipt and sufficiency of which are hereby acknowledged, and for the purposes of carrying out the intentions as expressed, the Borrower and the Lender hereby covenant and agree as follows:

1.        **Extension of Maturity Date and Modification of Interest Rate**. Lender hereby extends the time of payment of the principal indebtedness secured by the Note and Mortgage from the present Maturity Date of April 28, 2023 to and including September 1, 2023 (the "**Extended Maturity Date**") pursuant to and subject to the following terms:

(a)        Payment of Amounts Owed. Simultaneously herewith, Borrower shall pay to Lender any interest and arrears due under the Note and Mortgage that are due and payable as of the date hereof.

(b)        Modification of Interest Rate. Borrower shall pay interest on the amounts owing on the Note and Mortgage at the increased rate of thirteen (13.00%) percent per annum.

(c)        Replenishment of Interest Reserve. Simultaneously herewith, subject to and as further set forth in Paragraph 3(a), Borrower shall replenish the Interest Reserve in an amount sufficient to pay the interest due on the Loan at the Interest Rate, as amended hereby, of 13.00% per annum for the period beginning April 29, 2023 through the Extended Maturity Date.

(d)        Extension Fee. Simultaneously herewith, Borrower shall pay to Lender a fee of THIRTEEN THOUSAND NINE HUNDRED FORTY AND XX/100 DOLLARS ($13,940.00), representing the extension fee equal to one (1.00%) percent of the Loan (the "**Extension Fee**").

(e)        Searches. At Borrower's expense, Lender's receipt of an updated title report search that is satisfactory to Lender in its sole discretion. Based on the results of such search, Borrower shall pay or cause to be paid and/or released any outstanding taxes, liens, or unpermitted

encumbrances on or affecting the Mortgaged Property as determined by Lender in its sole discretion.

**2.** **Conditions Precedent to Effectiveness.** As consideration for Lender agreeing to enter into this Agreement and as a condition precedent to the effectiveness of this Agreement, each of the conditions set forth in Paragraph 1 and Paragraph 3 must be satisfied to the satisfaction of Lender in its sole discretion

**3.** **Payment of Interest and Fees; Replenishment of Interest Reserves; and Other Amounts from Building Loan Undrawn Funds.** As of the date hereof, $929,530.00 remains undrawn under the Building Loan (the "**Undrawn Funds**"). Borrower and Guarantor acknowledge and agree that each of the following is to be paid using the Undrawn Funds in the amounts set forth in this Paragraph 3:

(a) Land Loan and Building Loan.

(i) *Replenishment of Land Loan and Building Loan Interest Reserve.* Simultaneously herewith, Borrower shall replenish the Interest Reserve in the sum of $53,256.39 (combined $422.67 per diem; 13.00% interest rate; 126 days), as an amount sufficient to pay: (i) the interest due on the Building Loan at the Interest Rate, as amended hereby, of 13.00% per annum for the period beginning April 29, 2023 through the Extended Maturity Date, as required under Paragraph 1(c) hereof; and (ii) the interest due on the Land Loan at the interest rate as amended and set forth in the Land Loan Extension Agreement, for the period beginning April 29, 2023 through the Land Loan extended maturity date as set forth in the Land Loan Extension Agreement, as required under paragraph 1(c) of the Land Loan Extension Agreement.

(ii) *Building Loan Extension Fee.* $13,940.00 as the Extension Fee pursuant to and in accordance with Paragraph 1(d).

(iii) *Land Loan Extension Fee.* $7,060.00 as the Land Loan extension fee due under the Land Loan Extension Agreement.

(b) Subordinate Loan.

(i) *Replenishment of Subordinate Loan Interest Reserve.* Simultaneously herewith, pursuant to and in accordance with paragraph 1(c) of the Subordinate Loan Extension Agreement, the Subordinate Loan interest reserve shall be replenished in an amount equal to $9,099.72.

(ii) *Subordinate Loan Extension Fee.* $2,000.00 as the Subordinate Loan extension fee due under the Subordinate Loan Extension Agreement.

(c) Air Rights Loan.
(i) *Replenishment of Air Rights Loan Interest Reserve.* Simultaneously herewith, pursuant to and in accordance with paragraph 1(c) of the Air Rights Loan Extension

Agreement, the Air Rights Loan interest reserve shall be replenished in an amount equal to $22,712.76.

(ii) *Payment of Amounts Owed under the Air Rights Loan.* Simultaneously herewith, pursuant to and in accordance with paragraph 1(a) of the Air Rights Loan Extension Agreement, an amount equal to $31,899.98, calculated as follows:

  A. $9,333.33 in interest for the period February 1, 2023 through February 28, 2023 at the default interest rate of 24% per annum;

  B. $933.33 late fee on the unpaid February 2023 interest;

  C. $10,333.33 in interest for the period March 1, 2023 through March 31, 2023 at the default interest rate of 24% per annum.

  D. $1,033.33 late fee on the unpaid March 2023 interest;

  E. $9,333.33 in interest for the period April 1, 2023 through April 28, 2023 at the default interest rate of 24% per annum; and

  F. $933.33 late fee on the unpaid April 2023 interest.

(iii) *Air Rights Loan Extension Fee.* $5,000.00 as the Air Rights extension fee due under the Air Rights Loan Extension Agreement.

(d) <u>Payment of Unpaid Taxes and ECB/OATH Violations</u>. Amounts required to be paid under Paragraph 1(e) shall be paid from the Undrawn Funds, including but not limited to any unpaid taxes and/or ECB/OATH Violations including any late fees, interest, and penalties, on or affecting the Mortgaged Property which shall be attached hereto as <u>Schedule B</u>.

**4.** **<u>Payment of Debt and Incorporation of Covenants, Conditions and Agreements</u>.** Borrower shall pay all monthly installments of interest and principal as provided for in the Note, as amended by this Agreement, and shall repay the Debt on or before the Extended Maturity Date, at the time and in the manner provided in the Note and Mortgage, as amended by this Agreement. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents including, without limitation, the Note and Mortgage, now or hereafter executed by Borrower and/or others and by or in favor of Lender, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note, Mortgage, guarantees and agreements (the "**Loan Documents**") are hereby made a part of this Agreement to the same extent and with the same force as if fully set forth herein. The Note is evidence of that certain loan in the amount of $1,394,000.00 made to the Borrower by the Original Lender (as defined on Schedule A), as such Loan is now owned and held by Lender (the "**Loan**" and/or the "**Building Loan**").

**5.** **<u>Controlling Agreement</u>.** It is expressly stipulated and agreed to be the intent of Borrower, and Lender, at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this <u>Paragraph 5</u> shall control every other covenant and agreement in this Agreement and the other Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Lender's exercise of the option to

accelerate the maturity of the Note, or if any prepayment by Borrower results in Lender having paid any interest in excess of that permitted by applicable law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of the Note and all other Debt, and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

6.      **Performance of Other Agreements.**    Borrower and/or Guarantor shall observe and perform each and every term to be observed or performed by Borrower and/or Guarantor, as applicable, pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

7.      **Further Assurances and Acknowledgment of Parties Regarding Obligations.** Lender and Borrower hereby confirm, renew and extend the rights, titles, security interests, liens, powers and privileges existing under or by virtue of the Loan Documents until all of the indebtedness evidenced by the Note and secured by the Loan Documents has been paid in full, and agree that this Agreement shall not in any way or manner release, discharge, affect, change, modify or impair the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges existing by virtue of, arising under or in connection with, or relating to the Note and the Loan Documents, the purpose of this Agreement being simply to renew, extend and/or modify, as applicable, the indebtedness evidenced by the Note and the Loan Documents in accordance with the terms and provisions herein, and to continue and carry forward all of the rights, titles, security interests, liens, powers and privileges existing by virtue of the Loan Documents, each of which are hereby acknowledged by Borrower and Lender to be legal, valid and subsisting. Borrower and Lender acknowledge and agree that the Loan Documents validly evidence and secure the payment of the Loan indebtedness. Lender and Borrower agree that a novation is expressly denied and not intended to be effected, and except as amended or modified by this Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Loan Documents shall remain unchanged and unimpaired by this Agreement and are in full force and effect.

8.      **Representations and Warranties.** Borrower and Guarantor each hereby represent

and warrant to Lender as follows:

> (a) This Agreement is valid, binding and an enforceable obligation of Borrower and Guarantor;

(b) Each of the statements and representations made by Borrower or Guarantor in this Agreement and the Loan Documents is true and correct as of the date hereof;

(c) Neither Borrower or Guarantor has any claims against the Lender;

(d) Borrower or Guarantor has no defenses to, or offsets against, any of its obligations under the Loan Documents;

(e) Lender has performed and satisfied all of its obligations under the Loan Documents through the date hereof;

(f) No documentary taxes or other similar taxes are payable in connection with the transaction evidenced by this Agreement;

(g) Borrower and Guarantor have the capacity, right, power and authority to execute this Agreement and to perform its obligations hereunder and to consummate the transaction described herein, and to execute and deliver all documentation required by this Agreement; and

(h) Borrower and Guarantor shall, from and after the execution of this Agreement, execute and deliver to the Lender whatever additional documents, instruments, and agreements that the Lender may require, to the extent commercially reasonable, in order to vest or perfect the Loan Documents and the collateral granted therein more securely in the Lender and to otherwise give effect to the terms and conditions of this Agreement.

9.    **Fees and Expenses.** Borrower shall be responsible for the payment of all actual out-of-pocket costs, fees and expenses incurred in connection with the preparation of this Agreement including, without limitation, Lender's reasonable attorneys' fees and expenses, title fees and premiums, filing fees and recording costs, and appraisal fees, if any. Payment of said costs, fees and expenses shall be a condition precedent to the effectiveness of this Agreement.

10.    **Acknowledgement and Reaffirmation by Guarantor.** Guarantor hereby (i) acknowledges and agrees with the terms and conditions of this Agreement in any and all of its capacities including, without limitation, as a guarantor, subordinated creditor, hypothecator of property, pledgor, assignor or grantor of a lien, collateral assignment or security interest, or otherwise; (ii) acknowledges and confirms that Guarantor's obligations under that certain Guaranty of Completion dated as of October 28, 2021 and that certain Conditional Guaranty dated as of October 28, 2021 (the "**Guaranty**") and any of the other Loan Documents heretofore executed and delivered by such Guarantor in connection with the Loan shall not be limited, reduced or in any way impaired by the transactions under this Agreement; (iii) reaffirms its obligations to Lender under the Guaranty and each of the other Loan Documents executed by such Guarantor, each as modified hereby; and (iv) acknowledges, reaffirms and reasserts each of the waivers made by such Guarantor in the Guaranty and each of the other Loan Documents to which Guarantor is a party, as if set forth in full herein.

11.    **Legal Counsel.** Borrower and Guarantor acknowledge that they have been advised by Lender to seek the advice of legal counsel in connection with the negotiation and preparation of this Agreement. If Borrower and/or Guarantor have chosen not to obtain legal

representation, whether due to cost considerations or for other reasons, the lack of such representation shall not furnish Borrower or Guarantor with any defense to the enforcement of this Agreement by Lender.

12. **No Other Modifications.** Except as otherwise expressly provided herein, all other terms, covenants and obligations under the Loan Documents are and shall remain in full force and effect for the remaining term of the Loan, as modified herein.

13. **Governing Law.** Notwithstanding any provision of any previous documents to the contrary, this Agreement, the Note and the Loan Documents, as amended hereby, shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law), except where federal law is applicable (including, without limitation, any applicable federal law preempting state laws).

14. **WAIVER OF JURY TRIAL.** EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. EACH PARTY HERETO ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT OR ANY OTHER CREDIT DOCUMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

15. **Capitalized Terms.** All capitalized terms not defined herein shall have the meanings given to them in the Loan Documents. In the case of a conflict, the terms of this Agreement shall prevail.

16. **Waiver and Release.** Borrower and Guarantor hereby acknowledge and agree that they have no offsets, defenses, claims, causes of action, or counterclaims against the Lender or the Lender's officers, directors, employees, attorneys, representatives, affiliates, subsidiaries, predecessors, successors, and assigns with respect to the Loan or the Loan Documents, or otherwise, and that if the Borrower and/or Guarantor now has, or ever did have, any offsets, defenses, claims, causes of action, or counterclaims against the Lender or the Lender's officers, directors, employees, attorneys, affiliates, subsidiaries, representatives, predecessors, successors, and assigns, whether known or unknown, at law or in equity, from the beginning of the world through the Effective Date and through the time of execution of this Agreement, all of them are hereby expressly WAIVED, and the Borrower and Guarantor hereby RELEASE the Lender and

the Lender's officers, directors, employees, attorneys, representatives, affiliates, subsidiaries, predecessors, successors, and assigns from any liability therefor. It is understood and agreed that this Paragraph shall not be deemed or construed as an admission by Lender of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise.

**17.    Entire Agreement.** This Agreement shall be binding upon Borrower and the Guarantor and its respective employees, representatives, successors, and assigns, and shall inure to the benefit of the Lender and the Lender's successors and assigns. This Agreement and all documents, instruments, and agreements executed in connection herewith incorporate all of the discussions and negotiations between Borrower and the Lender, either expressed or implied, concerning the matters included herein and in such other documents, instruments and agreements, any statute, custom, or usage to the contrary notwithstanding. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No modification, amendment, or waiver of any provision of this Agreement, or any provision of any other document, instrument, or agreement between Borrower, the Guarantor and the Lender, shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver.

**18.    Illegality or Unenforceability.** Any determination that any provision or application of this Agreement is invalid, illegal, or unenforceable in any respect, or in any instance, shall not affect the validity, legality, or enforceability of any such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Agreement.

**19.    Counterparts.** To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto. Further, facsimile or electronic (e.g., .pdf format) copies of signatures shall be considered originals for purposes of binding the parties hereto.

**20.    No Other Modifications.** Except as otherwise expressly provided herein, all other terms, covenants and obligations under the Loan Documents are and shall remain in full force and effect for the remaining term of the Loan, as modified herein.

[INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Borrower, Guarantor, and Lender have executed this Agreement the day and year first above written.

BORROWER:

**1932 MCGRAW AVENUE LLC,**
a New York limited liability company

By: _____
Name:
Title:

GUARANTOR:

_____
**DAVID DELUCIA**, individually

_____
**JAMES MCMANUS**, individually

_____
**RANDYLYNN RASTELLO-MCMANUS,**
individually

[Signature Pages Continue to Next Page]

LENDER:

**FAIRBRIDGE CREDIT LLC,**
a Delaware limited liability company


By: _____
Name:
Title:

## Schedule A

### Mortgage and Note Schedule

1. Building Mortgage and Security Agreement dated as of October 28, 2021, made by 1932 MCGRAW AVENUE LLC, a New York limited liability company, as mortgagor ("**Borrower**"), to REALFI REAL ESTATE INVESTMENT TRUST LLC (n/k/a FAIRBRIDGE REAL ESTATE INVESTMENT TRUST LLC), a Delaware limited liability company, as mortgagee ("**Original Lender**"), in the principal sum of up to $1,394,000.00, and recorded or filed in the Office of the City Register of the City of New York on January 24, 2022 as CRFN 2022000034722.

2. Building Loan Note dated as of October 28, 2021, made by Borrower, as maker, in favor of Original Lender, as payee, in the principal sum of up to $1,394,000.00.