# **EXHIBIT 20**

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Agreement"), made as of October 18, 2023, effective as of September 1, 2023 (the "Effective Date"), is by and among **FAIRBRIDGE CREDIT LLC**, a Delaware limited liability company with its principal place of business at 330 Post Road, Suite 230, Darien, CT 06820 (as successor by assignment from RealFi Real Estate Investment Trust LLC n/k/a Fairbridge Real Estate Investment Trust LLC) ("Lender"), **1932 MCGRAW AVENUE, LLC**, a New York Limited Liability Company ("Borrower"), **DAVID DELUCIA,** an individual with a primary residence at 243 Manhattan Avenue, Yonkers, New York 11020, **JAMES MCMANUS**, an individual with a primary residence at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465, **RANDYLYNN RASTELLO-MCMANUS**, an individual with a primary residence at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465, (each a "Guarantor", and collectively, "Guarantors").

## BACKGROUND

**WHEREAS**, Borrower and Guarantors are obligated to Lender pursuant to certain loan documents (the "Loan Documents") executed in connection with the following loans made by RealFi Real Estate Investment Trust LLC being now known as Fairbridge Real Estate Investment Trust LLC ("Original Lender") to Borrower: (i) in the principal sum of ONE MILLION THREE HUNDRED NINETY FOUR THOUSAND AND XX/100 DOLLARS ($1,394,000.00) dated as of October 28, 2021 (the "Building Loan"); (ii) in the principal sum of SEVEN HUNDRED SIX THOUSAND AND XX/100 DOLLARS ($706,000.00) dated as of October 28, 2021 (the "Land Loan"); (iii) in the principal sum of TWO HUNDRED THOUSAND AND XX/100 DOLLARS ($200,000.00) dated as of October 28, 2021 (the "Subordinate Loan"); and (iv) in the principal sum of FIVE HUNDRED THOUSAND AND XX/100 DOLLARS ($500,000.00) dated as of June 3, 2022 (the "Air Rights Loan") (each a "Loan", and collectively the "Loan"), as the Loan is now owned and held by Lender;

**WHEREAS**, The Loan and terms of repayment of the Loan are set forth in and evidenced by that those certain notes (as modified and extended, each a "Note", collectively the "Note") dated made by Borrower in favor of Original Lender, as assigned to Lender, which is secured by, among other things, (i) those certain mortgages (as modified and extended, each a "Mortgage", collectively the "Mortgage") by Borrower in favor of Original Lender, as assigned to Lender, encumbering the property commonly known as 1932 McGraw Avenue, Bronx, New York 10462 (the "Mortgaged Property"), and (ii) those certain limited guarantees executed by Guarantor in favor of Original Lender, as assigned to Lender, (each a "Guaranty", collectively the "Guaranty"), and (iii) together with this Agreement, and all other documents now or hereafter executed and/or delivered by Borrower or Guarantor. All capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Loan Documents;

**WHEREAS**, Borrower, Guarantor, and Lender entered into those certain Mortgage Extension and Modification Agreements made as of May 31, 2023 effective as of April 28, 2023 (each an "Extension Agreement", collectively, the "Extension Agreement") whereby the maturity date of the Loan was extended to September 1, 2023 pursuant and subject to the terms as set forth therein;

1

**WHEREAS**,   as of the date hereof, Borrower owes Lender an amount of $2,060,405.60, plus accruing interest, costs, fees and expenses as set forth in the Loan Documents and herein (collectively, together with all other obligations now or hereafter due from Borrower or any Guarantor under the Loan Documents, the "Indebtedness"). For the avoidance of doubt, said amount does not include accruing interest, costs, fees and expenses;

**WHEREAS**, the Borrower and Guarantors are in default under the Loan Documents for reasons including that the Loan is in maturity default as it matured on September 1, 2023;

**WHEREAS**, Lender is willing, in reliance upon the representations and agreements of Borrower and Guarantors herein, to forbear from exercising certain of the rights and remedies available to Lender on a temporary basis, subject to and under certain conditions which are hereinafter set forth; and

**WHEREAS**, the parties hereto seek to memorialize the terms of their agreements by this writing.

**NOW, THEREFORE**, for good and valuable consideration, receipt of which is hereby acknowledged, and in contemplation of the foregoing, the parties agree as follows:

**AGREEMENTS**

1.      **Confirmation of Existing Indebtedness and Ratification of Loan Documents.**

(a)      Borrower and Guarantor hereby unconditionally acknowledge and confirm that, as of the date hereof, Borrower is in default under the Loan Documents as set forth above and that it is absolutely liable and indebted to the Lender for all existing Indebtedness and future Indebtedness evidenced by the Loan Documents, without claim, counterclaim, right of recoupment, defense or set-off of any kind or nature whatsoever, which, as of the date hereof, is $2,060,405.60, comprised of the following: (i) $625,034.37 as the unpaid principal balance of the Building Loan, (ii) $706,000.00 as the unpaid principal balance of the Land Loan, (iii) $2,200.57 in interest for the month of August 2023 due September 1, 2023, on the Building Loan and Land Loan, (iv) $220.06 late fee for nonpayment of the August 2023 interest due September 1, 2023, on the Building Loan and Land Loan, (v) $14,974.14 in interest for the month of September 2023 due October 1, 2023 at the interest rate of 13.50% (pursuant to Section 2(b) of this Agreement), on the Building Loan and Land Loan, (vi) $1,497.41 late fee for nonpayment of the September 2023 interest due October 1, 2023, on the Building Loan and Land Loan, (vii) $200,000.00 as the unpaid principal balance of the Subordinate Loan, (viii) $1,794.72 in interest for the month of August 2023 due September 1, 2023, on the Subordinate Loan, (ix) $179.49 late fee for nonpayment of the August 2023 interest due September 1, 2023, on the Subordinate Loan, (x) $2,250.00 in interest for the month of September 2023 due October 1, 2023 at the interest rate of 13.50% (pursuant to Section 2(b) of this Agreement), on the Subordinate Loan, (xi) $225.00 late fee for nonpayment of the September 2023 interest due October 1, 2023, on the Subordinate Loan, (xii) $500,000.00 as the unpaid principal balance of the Air Rights Loan, (xiii) $5,481.69  in interest for the month of September 2023 due October 1, 2023 at the interest rate of 13.50% (pursuant to Section 2(b) of this Agreement), on the Air Rights Loan, and (xiv) $548.17 late fee for nonpayment of the September 2023 interest due October 1, 2023, on the Air Rights Loan,  plus

2

accrued and unpaid interest, and continually accruing interest and all related costs, fees and expenses of the Lender. For the avoidance of doubt, said amounts do not include accruing interest, costs, fees and expenses.

(b)      Borrower and Guarantors unconditionally ratify and confirm and reaffirm, in all respects and without condition, all of the terms, covenants and conditions set forth in the Loan Documents and agree that each of them remain unconditionally liable as limited by the guarantees to the Lender in accordance with the respective terms, covenants and conditions of such instruments, agreementsand documents and that all liens and security interests and pledges encumbering the Collateral created pursuant to and/or referred to in the Loan Documents continue unimpaired and in full force and effect, and secure and shall continue to secure the Indebtedness as the same may be modified by the terms of this Agreement.

2.      **Terms of Forbearance.** Subject to the terms and conditions of this Agreement, the principal repayment of the Loan under the Note is temporarily suspended for the period beginning on September 1, 2023, until December 1, 2023 (the "Forbearance Period"), and lender has agreed not to accelerate the Loan or input at default interest provided that:

(a)      Borrower and Guarantors have complied with, and shall continue to comply with, all terms, covenants and conditions of this Agreement and the Loan Documents.

(b)      Interest on the Loan shall accrue monthly in arrears at the interest rate of 13.50% in the manner set forth in the Note. Payment of said interest payments shall be deferred until the earlier of (X) the date on which the Debt is paid off in full under the Loan Documents and (Y) the end of the Forbearance Period, December 1, 2023.

(c)      Borrower shall pay to Lender an exit fee (the "Exit Fee") equal to one percent (1%) of the Loan on the earlier of (X) the date on which the Debt is paid off in full under the Loan Documents and (Y) the end of the Forbearance Period, December 1, 2023. If such Exit Fee constitutes interest under applicable law, the amount of such Exit Fee will be reduced to an amount which, when added to all other amounts which constitute interest under applicable law, will not exceed the maximum amount of interest which may be contracted for, charged or received with respect to the Loan under applicable law for the actual period of time such Loan is outstanding.

(d)      Lender agrees to collect the aforementioned amounts as set forth above provided, that the Borrower and Guarantor complies with the terms of this Agreement in its entirety. This agreement to collect the aforementioned amounts as set forth above shall be in effect unless the Borrower or Guarantors default under the terms of this Forbearance Agreement. Should Borrower and Guarantors default under this Agreement, Lender shall have the right to collect all interest, default interest and fees it is entitled to under the Loan Documents.  Borrower and Guarantors hereby acknowledge and agree to the foregoing. Borrower and Guarantors further acknowledge and agree that the following interest payments and late fees are currently outstanding, due and owing and shall be collected by Lender on the earlier of  (X) the date on which the Debt is paid off in full under the Loan Documents and (Y) the end of the Forbearance Period, December 1, 2023:

(i)      $2,200.57 in interest for the month of August 2023 due September 1, 2023, on the Building Loan and Land Loan

(ii)      $220.06 late fee for nonpayment of the August 2023 interest due September

3

1, 2023, on the Building Loan and Land Loan

(iii)    $1,794.72 in interest for the month of August 2023 due September 1, 2023, on the Subordinate Loan

(iv)    $179.49 late fee for nonpayment of the August 2023 interest due September 1, 2023, on the Subordinate Loan

(v)    $14,974.14 in interest for the month of September 2023 due October 1, 2023 at the interest rate of 13.50%, on the Building Loan and Land Loan

(vi)    $1,497.41 late fee for nonpayment of the September 2023 interest due October 1, 2023, on the Building Loan and Land Loan

(vii)    $2,250.00 in interest for the month of September 2023 due October 1, 2023 at the interest rate of 13.50%, on the Subordinate Loan

(viii)    $225.00 late fee for nonpayment of the September 2023 interest due October 1, 2023, on the Subordinate Loan

(ix)    $5,481.69 in interest for the month of September 2023 due October 1, 2023 at the interest rate of 13.50%, on the Air Rights Loan

(x)    $548.17 late fee for nonpayment of the September 2023 interest due October 1, 2023, on the Air Rights Loan

(e)    Notwithstanding anything to the contrary in this Agreement or in any other Loan Document, in the event of any new Event of Default under the Loan Documents and/or default under this Agreement by Borrower and/or Guarantor, Lender may, at any time and from time to time, take any actions as Lender may deem necessary to protect its interest in the Loan and any Collateral. Borrower and Guarantor hereby acknowledge and agree that any default by Borrower and/or Guarantor under this Agreement shall constitute an Event of Default under the Loan Documents, and any additional default and/or Event of Default by Borrower and/or Guarantor under the Loan Documents shall constitute a default under this Agreement. Borrower to be put on written notice of any "new defaults" and given right to cure.

(f)    The Loan Documents shall remain in full force and effect; Borrower and Guarantor shall continue to perform under the Loan Documents; no Event(s) of Default shall occur under the Loan Documents; and Borrower shall continue to conduct its business and maintain its assets as heretofore conducted and maintained except as otherwise provided in the Loan Documents or in this Agreement.

3.    **<u>Reaffirmations and Release; Waiver</u>**.

(a)    The Loan Documents, except as specifically modified hereby, shall remain in full force and effect and Borrower and Guarantor each hereby reaffirm the Loan Documents, as modified by this Agreement, the Guaranty, and all collateral and other documents executed and delivered to Lender in connection with the Loan Documents and herewith.

(b)    Borrower and Guarantor, as releasors, on behalf of themselves, their successors and assigns, and all those entities claiming by, through, or under them, as releasors, together with their successors and assigns (collectively referred to as the "<u>Releasors</u>"), for good and valuable consideration, do hereby unconditionally remise, release, and forever discharge Lender,

4

its past and present officers, directors, shareholders, members, employees, agents, attorneys, parent corporations, subsidiaries, affiliates, successors, and assigns, and the heirs, executors, trustees, administrators, successors, and assigns of any suchpersons or entities, as releasees (collectively referred to as the "Releasees"), of and from any and all manner of actions, causes of action, suits, claims, counterclaims, liabilities, obligations, defenses, and demands whatsoever, at law or in equity, if any, which any of the Releasors ever had, now has, or hereafter can, shall, or may claim to have against any of the Releasees for or by reason of any cause, matter, or thing whatsoever, arising from the beginning of the world to the date of execution of this Agreement. Said release does not preclude borrower from pursuing any claims or defenses they would have under original loan documents.

(c)    Borrower and Guarantor hereby waive any rights of set-off, defenses counterclaims or claims any of them may have against any Releasee with respect to the Loan andthe Indebtedness due the Lenders by Borrower and the Guarantors. Said release does not preclude borrower from pursuing any claims or defenses they would have under original loan documents.

(d)    Borrower and Guarantor acknowledge that default interest is due and owing under the Loan Documents at the Default Rate, which default interest is agreed to be waived provided Borrower and Guarantor comply with the terms of this Agreement,

4.    **Reservation of Rights**.  Borrower and Guarantor acknowledge and agree that (i) Lender is not waiving any provision or requirement under the Loan Documents, and (ii) except as otherwise expressly set forth in this Agreement, Borrower and Guarantor have no further right to cure any other defaults or Events of Default that otherwise may exist on the date hereof under the Loan Documents. However payoff of loan shall be deemed curing any defaults. In addition, Borrower and Guarantor acknowledge and agree that Lender is not waiving any of its rights under the Loan Documents. Lender is not, by executing this Agreement, releasing any claims that they may have against the parties to the Loan Documents, however agrees to release borrower and guarantors unconditionally upon loan payoff. This Agreement is being executed by Lender to accommodate the request of Borrower and Guarantor. Borrower and Guarantor acknowledge and agree the relationship between Lender and Borrower and Guarantor is a debtor/creditor relationship. Borrower and Guarantor acknowledge and agree that Borrower and Guarantor should not assume that Lender will continue to forbear beyond the Forbearance Termination Date or that Lender will extend or otherwise modify the Loan Documents. Borrower and Guarantor acknowledge and agree that Lender is not waiving its right to require immediate payment in full of all amount due under the Note, or initiate a foreclosure action if Lender is not paid in full by the end of the Forbearance Period. Nothing in this Agreement shall be deemed to be a satisfaction or release, in whole or in part, of Borrower's and/or Guarantor's obligations under the Loan Documents.

5.    **Expenses**. The Borrower and Guarantor agree to pay on demand by Lender all reasonable, customary and verifiable out of pocket expenses of or on behalf of the Lender including, without limitation, out of pocket fees and disbursements of counsel for the Lender, in connection with the transactions contemplated by this Agreement, the negotiations for and preparation of this Agreement and any other documents related hereto and in the establishment, maintenance, protection or the enforcement of the rights of Lender under the Loan Documents,

this Agreement or under such other documents executed in connection therewith.

6.    **Failure to Comply**. If the Borrower and/or Guarantor fails to comply with the terms of this Agreement, any such failure shall be considered an immediate Event of Default hereunder and under the Loan Documents written notice to be provided with right to cure without further notice or expiration of any grace period. All of the Lender's rights and remedies hereunder, the documents executed in connection herewith or under the Loan Documents are cumulative.

7.    **Miscellaneous**.

(a)    **Counterparts**. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all the counterparts shall together constitute one and the same instrument. Signatures by facsimile or in Portable Document Format shall be deemed to constitute originals.

(b)    **Entire Agreement**. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and shall supersede and take the place of any other instrument purporting to be an agreement of the parties hereto relating to the transactions contemplated hereby. This Agreement may not be changed orally but only by an agreement in writing signed by a duly authorized officer of Lender and Borrower, and by the Guarantor, to the extent any such party is to be bound thereby. Borrower and Guarantor acknowledge and agree that nothing contained herein, nor any other communication between the parties, constitutes an agreement or accommodation with respect to the Indebtedness or the Loan,or shall require Lender to enter into any agreement or accommodation with respect to the Indebtedness or the Loan, except as expressly set forth herein. The Background recitals in this Agreement are deemed to be incorporated into the Agreement as if fully set forth herein. Except to the limited extent provided hereinabove, Lender's entering into this Agreement and any delay on the part of Lender in exercising any rights granted hereunder or under the Loan Documents, or in taking any action to compel or enforce payment of the Loan and/or Indebtedness shall not operate as a waiver of any such rights or in any manner prejudice the Lender's rights against Borrower or Guarantor. This Agreement shall in no way be construed as continuing or as preventing the exercise of such rights or remedies with respect to any other Event of Default or subsequent Events of Default, except as expressly provided herein.  This Agreement shall not relieve or release Borrower or Guarantor or other obligor in any way from any of its respective duties, obligations, covenants or agreements under the Loan Documents or from the consequences of any Event of Default thereunder, except as expressly described in this Agreement.

(c)    **Third Parties**.  The provisions of this Agreement whether express or implied shall not give any third party (other than successors and assigns of the parties permitted under theLoan Documents) any benefit of any equitable or legal right, remedy or claim under applicable law.

(d)    **Invalidity**. If any provision or part of any provision contained in this Agreement shall be found for any reason to be illegal, invalid or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions or the remaining part of any effective provisions of this Agreement and this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions or part thereof had never been contained herein,but only to the extent of its invalidity, illegality, or unenforceability. In addition, a comparable, enforceable

6

provision or part thereof, as close as possible to such invalid, illegal or unenforceable provision or part thereof, if any exists, shall be deemed incorporated in this Agreement, as if part of this Agreement from its inception.

(e)    **Representations and Warranties**.    Each of Borrower and Guarantor represent and warrant to Lender that:

(i)    All representations and warranties of Borrower and Guarantor set forth in the Loan Documents are true and complete as of the date hereof;

(ii)    No condition or event exists or has occurred which would constitute an Event of Default under the Loan Documents, other than as addressed by this Agreement;

(iii)    Borrower and Guarantor each has the power and authority to execute and deliver this Agreement, and this Agreement is their binding and enforceable obligation in accordance with its terms; and

(iv)    The execution and delivery of this Agreement by Borrower and Guarantor:

(1)    will not conflict with or result in the breach of or constitute a default (upon the passage of time, delivery of notice, or both) under any of Borrower's organizational documents or any applicable statute, law, rule, regulation, or ordinance or any indenture, mortgage, loan, or other document or agreement to which the Borrower or Guarantor is a party or by which any of them is bound or affected; and

(2)    will not result in the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of the property or assets of any Borrower or Guarantor, except liens in favor of the Lenders or as permitted under the Loan Documents.

(v)    Borrower and Guarantor each has at all times pertinent to this Agreement, been represented by advisors of its own selection including but not limited to attorneys at law and accountants; that it has not relied upon any representation, warranty, agreement or information provided by Lender, its employees, agents or attorneys; that it acknowledges that it has been and is informed of its duties and obligations with respect to the Loan due the Lender under all applicable laws; **that it has no set-offs, defenses counterclaims or claims against any Releasor with respect to the Loan and the Indebtedness due the Lender by Borrower and Guarantor and that the Borrower and the Guarantor are jointly and severally indebted to the Lender in the amounts recited in this Agreement. Said release does not preclude Borrower from pursuing any claims or defenses they would have under original loan documents.**

(vi)    Borrower and Guarantor each acknowledges and agrees that Lender has not made any representations, warranties, agreements or provided information to them in order to induce the execution of this Agreement. Borrower and Guarantor further

acknowledges and agrees that all agreements of then parties are set forth in this Agreement and/or in the written documentation evidencing theLoan.

(f)    **Acceptance of Payments**. Any and all payments delivered to Lender by or on behalf of Borrower, whether or not required hereunder, whether partial or full payments, and whether or not an Event of Default has occurred, may nevertheless be accepted by Lender without prejudice to its rights and remedies hereunder or under the Loan Documents, however all payments shall be credited against sums due and owing.

(g)    **No Impairment of Collateral**. Nothing herein contained shall impair any rights of the Lender with respect to any Collateral heretofore, now or hereafter pledged to Lender as security for the Loan.

(h)    **Governing Law**. This Agreement is delivered and shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law.

(i)    **Waiver of Right to Trial by Jury**. The Borrower and Guarantor expresslyratifies and confirms the waiver of jury trial provisions contained in the Loan Documents.

(j)    **Further Assurances**. Borrower and  Guarantor will execute and deliver, or cause to be executed and delivered, to Lender such documents, agreements and instruments, and will take or cause to be taken such further actions (including the filing and recording of financing statements, fixture filings, mortgages, deeds of trust and other documents and such other actions or similar deliveries, which may be required by any applicable law or which Lender may, from time to time, reasonably request to carry out the terms and conditions of this Agreement and the other Loan Documents and to ensure perfection and priority of the liens created or intended to be created by the Loan Documents, all at the expense of Borrower. Provided none of the aforementioned documents materially change the terms of the original loan documents.

(k)    **Notices**.  Any notices required or permitted to be given hereunder shall be made as set forth in the Loan Documents.

**IN WITNESS WHEREOF**, the parties hereto have signed this Agreement as of the date set forth above.

BORROWER:

**1932 MCGRAW AVENUE LLC,**
a New York limited liability company

By: _____
Name: _____
Title: _LLC partner_____

GUARANTOR:

_____
David DeLucia, an Individual

_____
James McManus, an Individual

_____
Randylynn Rastello-McManus , an Individual

LENDER:

**FAIRBRIDGE CREDIT LLC,**
a Delaware limited liability company

By: _____
Name: _____
Title: _____

8

**IN WITNESS WHEREOF**, the parties hereto have signed this Agreement as of the date set forth above.

**BORROWER:**

**1932 MCGRAW AVENUE LLC,**
a New York limited liability company

By: _____
Name: _____
Title: _____

**GUARANTOR:**

_____
David DeLucia, an Individual

_____
James McManus, an Individual

_____
Randylynn Rastello-McManus , an Individual

**LENDER:**

**FAIRBRIDGE CREDIT LLC**,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

9