**THIS SECOND MORTGAGE EXTENSION AND MODIFICATION AGREEMENT** (this "**Agreement**") is made as of February 9, 2024 (the "**Date of Execution**"), but is made effective as of January 1, 2024 (the "**Effective Date**"), by and among **47 POPLAR OWNERS LLC**, a Connecticut limited liability company with an address at 399 Knollwood Road Ext., Elmsford, New York 10523 ("**Borrower**"), **THOMAS LEE** an individual having an address at 399 Knollwood Road, White Plains, New York 10603 and **JAMES MCMANUS**, an individual having an address at 214 Outlook Avenue, Sunrise Marina Estates, New York 10465 (individually and collectively, "**Guarantor**"), and **FAIRBRIDGE CREDIT LLC**, a Delaware limited liability company with an address at 330 Post Road, Suite 230, Darien, Connecticut 06820 ("**Lender**").

WITNESSETH:

**WHEREAS**, the Borrower is now the owner in fee simple of the parcels of land and the improvements thereon being commonly known 47 Poplar Street, New Milford, Connecticut 06776; Property ID 35.4/79 and 35.4/79.22, Town of New Milford, County of Norwalk (the "**Mortgaged Property**"); and

**WHEREAS**, on or about December 29, 2021, Fairbridge Real Estate Investment Trust LLC f/k/a RealFi Real Estate Investment Trust LLC (the "**Original Lender**"), made a loan in the principal sum of SIX HUNDRED FIFTY THOUSAND AND XX/100 DOLLARS ($650,000.00) (the "**Loan**") which Loan was evidenced by that certain Mortgage Note, dated as of December 29, 2021, made by Borrower in favor of Original Lender (the "**Original Note**") and secured by (i) that certain Open-End Mortgage Deed and Security Agreement, dated as of December 29, 2021, made by Borrower in favor of Original Lender (the "**Original Mortgage**") and (ii) all and any of the documents including, without limitation, the Original Note and Original Mortgage, now or hereafter executed by Borrower, Guarantor and/or others and by or in favor of Lender, which evidences, secures or guarantees all or any portion of the payments due under the Original Note or otherwise is executed and/or delivered in connection with the Original Note, Original Mortgage, guarantees and agreements (such documents, together with the Original Note and Original Mortgage, are collectively hereinafter referred to as, the "**Original Loan Documents**");; and

**WHEREAS**, on or about May 11, 2022, Original Lender made a construction loan to the Borrower in the maximum principal sum of $4,550,000.00 (the "**Construction Loan**"), which Construction Loan was evidenced by that certain Construction Mortgage Note, dated as of May 11, 2022, made by Borrower in favor of Original Lender (the "**Original Construction Note**") and secured by (i) that certain Construction Open-End Mortgage Deed and Security Agreement, dated as of May 11, 2022, made by Borrower in favor of Original Lender (the "**Original Construction Mortgage**") and (ii) all and any of the documents including, without limitation, the Original Construction Note and Original Construction Mortgage, now or hereafter executed by Borrower, Guarantor and/or others and by or in favor of Lender, which evidences, secures or guarantees all or any portion of the payments due under the Original Construction Note or otherwise is executed and/or delivered in connection with the Original Construction Note, Original Construction Mortgage, guarantees and agreements (such documents, together with the Original Construction Note and Original Construction Mortgage, are collectively hereinafter referred to as, the "**Original Construction Loan Documents**"); and

00147265.5

1

**WHEREAS**, on or about September 1, 2022, (i) the Original Note, Original Mortgage and the other Original Loan Documents were subsequently assigned by the Original Lender to Lender pursuant to certain assignment documents, as more particularly described on the attached Schedule A; and (ii) the Original Construction Note, Original Construction Mortgage and the other Original Construction Loan Documents were subsequently assigned by the Original Lender to Lender; and

**WHEREAS**, on or about June 29, 2023, the Borrower, Guarantor and the Lender entered into (i) that certain Mortgage Extension and Modification Agreement, dated June 29, 2023 (the "**First Extension Agreement**"), which First Extension Agreement modified and extended the payment of the indebtedness set forth in the Original Note (the Original Note, as modified by the First Extension Agreement, and as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Note**"), the Original Mortgage (the Original Mortgage, as modified by the First Extension Agreement, and as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Mortgage**") and the other Original Loan Documents (the Original Loan Documents, as modified by the First Extension Agreement, and as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Documents**"); and (ii) that certain Mortgage Extension and Modification Agreement, dated June 29, 2023 (the "**First Construction Loan Extension Agreement**"), which First Construction Loan Extension Agreement modified and extended the payment of the indebtedness set forth in the Original Construction Note (the Original Construction Note, as modified by the First Construction Loan Extension Agreement, and as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Construction Note**"), the Original Construction Mortgage (the Original Construction Mortgage, as modified by the First Construction Loan Extension Agreement, and as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Construction Mortgage**") and the other Original Construction Loan Documents (the Original Construction Loan Documents, as modified by the First Construction Loan Extension Agreement, and as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Construction Loan Documents**"), and, in the case of both the First Extension Agreement and the First Construction Loan Extension Agreement, incorporated, among other things, a cross-default provision regarding the Note, Mortgage and the other Loan Documents and the Construction Note, Construction Mortgage and the other Construction Loan Documents; and

**WHEREAS**, under the Note and Mortgage the Borrower is now indebted to the Lender in the principal sum of SIX HUNDRED FIFTY THOUSAND AND XX/100 DOLLARS ($650,000.00) lawful money of the United States of America, with interest thereon based on the terms of the Note, and such other amounts due and owing under the Note, Mortgage and the other Loan Documents (the "**Debt**"), which Note is secured by the Mortgage and the other Loan Documents; and

**WHEREAS**, the Borrower and the Lender desire to further modify and extend the time and manner of payment of the Debt as set forth in the Note, the Mortgage and the other Loan Documents as hereinafter provided so that the Debt shall be paid in accordance with the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the Mortgaged Property and the mutual

covenants and agreements of the parties and the sum of Ten and 00/100 ($10.00) Dollars to each party by the other in hand paid, the receipt and sufficiency of which are hereby acknowledged, and for the purposes of carrying out the intentions as expressed, the Borrower, Guarantor and the Lender each hereby covenants and agrees as follows:

1.      **Extension of Maturity Date, Modification of Interest Rate, Etc.** Lender hereby extends the time of payment of the principal indebtedness secured by the Note and Mortgage from the present "Maturity Date" set forth in Section 2 of the Note of January 1, 2024 to July 1, 2024 (the "**Second Extended Maturity Date**") pursuant to and subject to the following terms:

(a)     Payment of Amounts Owed. Simultaneously herewith, Borrower shall pay to Lender any interest and arrears due under the Note, Mortgage and the other Loan Documents that are due and payable as of the Date of Execution.

(b)     Exit Fee. Upon the earlier to occur of (i) the Second Extended Maturity Date, or (ii) full repayment of the Loan and all other obligations, including, but not limited to, satisfaction of the Debt, whether as a result of the acceleration of the Loan or otherwise, Borrower shall pay to Lender a fee of NINE THOUSAND SEVEN HUNDRED FIFTY AND XX/100 DOLLARS ($9,750.00), representing an exit fee equal to one and one-half (1.50%) percent of the full Loan amount.

(c)     Legal Fee. Simultaneously herewith, Borrower shall pay to Lender the sum of $2,500.00 for legal fees and expenses incurred in connection with this Agreement.

(d)     Searches. At Borrower's expense, Lender's receipt of an updated title report search that is satisfactory to Lender in its sole discretion. Based on the results of such search, Borrower shall pay or cause to be paid and/or released any outstanding taxes, liens, or unpermitted encumbrances on or affecting the Mortgaged Property as determined by Lender in its sole discretion.

(e)     Modification of Interest Rate. As of the Effective Date, Borrower shall pay interest on the amounts owing on the Note, Mortgage and the other Loan Documents at the increased rate of Thirteen (13.00%) percent per annum. For the avoidance of doubt, upon the occurrence of any Event of Default or after the Second Extended Maturity Date, the interest rate due under the Loan will be increased to twenty-four (24.00%) percent per annum.

(f)     Raised Equity. Borrower must furnish evidence to Lender by May 30, 2024, demonstrating that they have raised ONE MILLION FIVE HUNDRED THOUSAND DOLLARS and 00/100 ($1,500,000.00) in equity (which shall be invested into the completion of the Mortgaged Property in accordance with the terms of the Construction Loan Documents), such evidence to be reasonably satisfactory to Lender.

(g)     Construction Completion Commitment. The Borrower shall complete the 4th floor of the Mortgaged Property by February 28, 2024, all in accordance with the terms and conditions of the Construction Loan Documents.

(h)     Completion Guaranty. Guarantor shall have executed and delivered to Lender, no later than March 1, 2024, an executed copy of the Completion Guaranty for the Construction Loan, in form and substance satisfactory to Lender in its sole discretion.

(i)     Incumbency Certificate. Borrower shall have executed and delivered to Lender an incumbency certificate attaching (i) all of the organizational documents of the Borrower; (ii) a current organizational chart of Borrower; and (iii) resolutions authorizing the transactions contemplated by this Agreement.

(j)     Right to Extend. As of the Effective Date, Section 17 of the Note is hereby deemed deleted in its entirety.

All references in this Note and in the other Loan Documents to the "Maturity Date" shall mean the Second Extended Maturity Date in the event that all conditions precedent under Paragraph 2 below have been met.

2.     **Conditions Precedent to Effectiveness.** As consideration for Lender agreeing to enter into this Agreement and as a condition precedent to the effectiveness of this Agreement (i) each of the conditions set forth in Paragraph 1 must be satisfied to the satisfaction of Lender in its sole discretion; (ii) Lender's receipt of an executed copy of this Agreement and the Completion Guaranty to the satisfaction of Lender in its sole discretion; and (iii) the payment of all costs and expenses further described in Paragraph 8 below.

3.     **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.** Borrower shall pay all monthly installments of interest and principal as provided for in the Note, as amended by this Agreement, and shall repay the Debt on or before the Second Extended Maturity Date, at the time and in the manner provided in the Note, Mortgage and the other Loan Documents, as amended by this Agreement. All the covenants, conditions and agreements contained in (a) the Note; (b) the Mortgage and (c) the other Loan Documents are hereby made a part of this Agreement to the same extent and with the same force as if fully set forth herein.

4.     **Controlling Agreement.** It is expressly stipulated and agreed to be the intent of Borrower and Lender, at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Paragraph 4 shall control every other covenant and agreement in this Agreement and the other Loan Documents. If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Lender's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Borrower results in Lender having paid any interest in excess of that permitted by applicable law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of the Note and all other Debt, and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable

00147265.5                                                4

law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

5.      **Performance of Other Agreements.** Borrower and/or Guarantor shall each observe and perform each and every term to be observed or performed by Borrower and/or Guarantor, as applicable, pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

6.      **Further Assurances and Acknowledgment of Parties Regarding Obligations.** Lender, Borrower and Guarantor each hereby confirm, renew and extend the rights, titles, security interests, liens, powers and privileges existing under or by virtue of the Loan Documents until all of the indebtedness evidenced by the Note and secured by the other Loan Documents has been paid in full, and agree that this Agreement shall not in any way or manner release, discharge, affect, change, modify or impair the debts, duties, obligations, liabilities, rights, titles, security interests, liens, powers and privileges existing by virtue of, arising under or in connection with, or relating to the Note and the other Loan Documents, the purpose of this Agreement being simply to renew, extend and/or modify, as applicable, the indebtedness evidenced by the Note and the other Loan Documents in accordance with the terms and provisions herein, and to continue and carry forward all of the rights, titles, security interests, liens, powers and privileges existing by virtue of the Loan Documents, each of which are hereby acknowledged by Borrower, Guarantor and Lender to be legal, valid and subsisting. Borrower, Guarantor and Lender each acknowledges and agrees that the Loan Documents validly evidence and secure the payment of the Loan indebtedness. Lender, Borrower and Guarantor each agrees that a novation is expressly denied and not intended to be effected, and except as amended or modified by this Agreement, the terms, provisions, conditions, rights, duties and obligations contained in the Loan Documents shall remain unchanged and unimpaired by this Agreement, and are in full force and effect.

7.      **Representations and Warranties.** Borrower and Guarantor each hereby represents and warrants to Lender as follows:

(a)      As of the Date of Execution, the outstanding principal balance of the Loan is SIX HUNDRED FIFTY THOUSAND AND XX/100 DOLLARS ($650,000.00);

(b)      This Agreement is valid, binding and an enforceable obligation of Borrower and Guarantor;

(c)      Each of the statements and representations made by Borrower or Guarantor in this Agreement and the Loan Documents is true and correct as of the Date of Execution;

00147265.5                                        5

(d)    Neither Borrower nor Guarantor has any claims against the Lender;

(e)    Borrower or Guarantor has no defenses to, or offsets against, any of its obligations under the Loan Documents;

(f)    Lender has performed and satisfied all of its obligations under the Loan Documents through the Date of Execution;

(g)    No documentary taxes or other similar taxes are payable in connection with the transaction evidenced by this Agreement;

(h)    Borrower and Guarantor have the capacity, right, power and authority to execute this Agreement and to perform its obligations hereunder and to consummate the transaction described herein, and to execute and deliver all documentation required by this Agreement; and

(i)    Borrower and Guarantor shall, from and after the execution of this Agreement, execute and deliver to the Lender whatever additional documents, instruments, and agreements that the Lender may require, to the extent commercially reasonable, in order to vest or perfect the Loan Documents and the collateral granted therein more securely in the Lender and to otherwise give effect to the terms and conditions of this Agreement.

8.    **Fees and Expenses.** Borrower and Guarantor shall be, jointly and severally, responsible for the payment of all reasonable and customary actual out-of-pocket costs, fees and expenses incurred in connection with the preparation of this Agreement including, without limitation, Lender's reasonable attorneys' fees and expenses, title fees and premiums, filing fees and recording costs, and appraisal fees, if any. Payment of said costs, fees and expenses shall be a condition precedent to the effectiveness of this Agreement.

9.    **Acknowledgement and Reaffirmation by Guarantor.** Guarantor hereby (i) acknowledges and agrees with the terms and conditions of this Agreement in any and all of its capacities including, without limitation, as a guarantor, subordinated creditor, hypothecator of property, pledgor, assignor or grantor of a lien, collateral assignment or security interest, or otherwise; (ii) acknowledges and confirms that Guarantor's obligations under that certain Commercial Guaranty dated as of December 29, 2021, made by Guarantor in favor of Original Lender (the "**Guaranty**"), the Completion Guaranty and any of the other Loan Documents heretofore executed and delivered by such Guarantor in connection with the Loan shall not be limited, reduced or enhanced or in any way impaired by the transactions under this Agreement; (iii) reaffirms its obligations to Lender under the Guaranty, the Completion Guaranty and each of the other Loan Documents executed by such Guarantor, each as modified hereby; and (iv) acknowledges, reaffirms and reasserts each of the waivers made by such Guarantor in the Guaranty, the Completion Guaranty and each of the other Loan Documents to which Guarantor is a party, as if set forth in full herein.

10.    **Legal Counsel.** Borrower and Guarantor acknowledge that they have been advised by Lender to seek the advice of legal counsel in connection with the negotiation and preparation

of this Agreement. If Borrower and/or Guarantor have chosen not to obtain legal representation, whether due to cost considerations or for other reasons, the lack of such representation shall not furnish Borrower or Guarantor with any defense to the enforcement of this Agreement by Lender.

11. **No Other Modifications.** Except as otherwise expressly provided herein, all other terms, covenants and obligations under the Loan Documents are and shall remain in full force and effect for the remaining term of the Loan, as modified herein.

12. **Governing Law.**

(a) NOTWITHSTANDING ANY PROVISION OF ANY OF THE LOAN DOCUMENTS TO THE CONTRARY, THIS AGREEMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS, AS AMENDED HEREBY, AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS WITH RESPECT TO THE MORTGAGED PROPERTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE MORTGAGED PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER AND GUARANTOR EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS, AND THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(b) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER, BORROWER OR GUARANTOR ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL, AT LENDER'S OPTION, BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE COUNTY OF NEW YORK, STATE OF NEW YORK, AND BORROWER AND GUARANTOR EACH WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER AND GUARANTOR EACH HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER AND GUARANTOR EACH FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION

00147265.5

7

OR PROCEEDING BY REGISTERED OR CERTIFIED, POSTAGE PREPAID, TO BORROWER OR GUARANTOR AT THE ADDRESS FOR NOTICES DESCRIBED IN THIS AGREEMENT, AND CONSENTS AND AGREES THAT SUCH SERVICE WILL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF THE LENDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER OR GUARANTOR IN ANY OTHER JURISDICTION.

13.    **WAIVER OF JURY TRIAL.** EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. EACH PARTY HERETO ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT OR ANY OTHER CREDIT DOCUMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

14.    **Capitalized Terms.** All capitalized terms not defined herein shall have the meanings given to them in the Loan Documents. In the case of a conflict, the terms of this Agreement shall prevail.

15.    **Waiver and Release.** Borrower and Guarantor, to the fullest extent permitted by law, each hereby acknowledges and agrees that they have no offsets, defenses, claims, causes of action, or counterclaims against the Lender or the Lender's officers, directors, employees, attorneys, representatives, affiliates, subsidiaries, predecessors, successors, and assigns with respect to the Loan or the Loan Documents, or otherwise, and that if the Borrower and/or Guarantor now has, or ever did have, any offsets, defenses, claims, causes of action, or counterclaims against the Lender or the Lender's officers, directors, employees, attorneys, affiliates, subsidiaries, representatives, predecessors, successors, and assigns, whether known or unknown, at law or in equity, from the beginning of the world through the Date of Execution and through the time of execution of this Agreement, all of them are hereby expressly WAIVED, and the Borrower and Guarantor each hereby RELEASES the Lender and the Lender's officers, directors, employees, attorneys, representatives, affiliates, subsidiaries, predecessors, successors, and assigns from any liability therefor. It is understood and agreed that this Paragraph shall not be deemed or construed as an admission by Lender of liability of any nature whatsoever arising from or related to the subject of this Paragraph or otherwise.

16.    **Entire Agreement.** This Agreement shall be binding upon Borrower and the Guarantor and their respective employees, representatives, successors, and assigns, and shall inure to the benefit of the Lender and the Lender's successors and assigns. This Agreement and all

00147265.5

8

documents, instruments, and agreements executed in connection herewith incorporate all of the discussions and negotiations between Borrower and the Lender, either expressed or implied, concerning the matters included herein and in such other documents, instruments and agreements, any statute, custom, or usage to the contrary notwithstanding. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No modification, amendment, or waiver of any provision of this Agreement, or any provision of any other document, instrument, or agreement between Borrower, the Guarantor and the Lender, shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver.

17.    **Illegality or Unenforceability.** Any determination that any provision or application of this Agreement is invalid, illegal, or unenforceable in any respect, or in any instance, shall not affect the validity, legality, or enforceability of any such provision in any other instance, or the validity, legality, or enforceability of any other provision of this Agreement.

18.    **Counterparts.** To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature and acknowledgment of each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto. Further, facsimile or electronic (e.g., .pdf format) copies of signatures shall be considered originals for purposes of binding the parties hereto.

19.    **No Other Modifications.** Except as otherwise expressly provided herein, all other terms, covenants and obligations under the Loan Documents are and shall remain in full force and effect for the remaining term of the Loan, as modified herein.

20.    **Notice**. All notices, demands, requests, consents, approvals or other communications (any of the foregoing, a "**Notice**") required, permitted or desired to be given hereunder shall be in writing and shall be sent by registered or certified mail, postage prepaid, return receipt requested, or delivered by hand or by reputable overnight courier, addressed to the party to be so notified at its address hereinafter set forth, or to such other address as such party may hereafter specify in accordance with the provisions of this Section 20. Any Notice shall be deemed to have been received: (a) three (3) days after the date such Notice is mailed if sent by registered or certified mail; (b) on the date of delivery by hand if delivered during business hours on a business day (otherwise on the next business day); and (c) on the next business day if sent by an overnight commercial courier, in each case addressed to the parties as follows:

If to Borrower:          47 Poplar Owners LLC
                         399 Knollwood Road Ext.
                         Elmsford, New York 10523
                         Attn: Thomas Lee, Administrative Member

If to Guarantor:         Thomas Lee

00147265.5                              9

399 Knollwood Road
White Plains, New York 10603

James McManus
214 Outlook Avenue
Sunrise Marina Estates, New York 10465

If to Lender:    Fairbridge Credit LLC
330 Post Road, Suite 230
Darien, Connecticut 06820
Attn: John Lettera

With a copy to:    Braunstein Turkish LLP
7600 Jericho Turnpike, Suite 402
Woodbury, New York 11797
Attn: Vincent L. Georgetti, Esq.

Any party may change the address to which any such Notice is to be delivered by furnishing ten (10) days' written notice of such change to the other parties in accordance with the provisions of this Section 20. Notices shall be deemed to have been given on the date set forth above, even if there is an inability to actually deliver any Notice because of a changed address of which no Notice was given or there is a rejection or refusal to accept any Notice offered for delivery. Notice for any party may be given by its respective counsel.

   21.    **Recitals**. The recitals to this Agreement are incorporated herein as if fully set forth herein.

   22.    **Prejudgment Remedy Waiver**. TO THE EXTENT CONNECTICUT LAW APPLIES, THE BORROWER AND GUARANTOR EACH ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THE NOTE IS A COMMERCIAL TRANSACTION AND WAIVES THEIR RIGHTS TO NOTICE AND HEARING UNDER CHAPTER 903A OF THE CONNECTICUT GENERAL STATUTES, OR AS OTHERWISE ALLOWED BY ANY OTHER STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE LENDER MAY DESIRE TO USE, AND FURTHER, WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST, AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THE NOTE. BORROWER AND GUARANTOR EACH ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEY. BORROWER FURTHER CONSENTS TO THE ISSUANCE OF ANY SUCH PREJUDGMENT REMEDIES WITHOUT A BOND OR OTHER SECURITY AND AGREES NOT TO REQUEST OR FILE MOTIONS SEEKING TO REQUIRE THE POSTING OF A BOND UNDER PUBLIC ACT 93-431 IN CONNECTION WITH LENDER'S EXERCISE OF ANY PREJUDGMENT REMEDIES.

00147265.5                                    10

**23.** **Cross-Collateralization and Cross-Default**. Borrower and Guarantor each acknowledges and agrees that the occurrence of an Event of Default under the terms of the Note, Mortgage and the other Loan Documents, as amended hereby, shall constitute a default under any loan documents evidencing any other loan now existing or hereafter made by Lender to Borrower, which includes, without limitation, the Construction Loan Documents, and a default under any of said existing or future loans (including, without limitation, the Construction Loan Documents) shall constitute an Event of Default under the Loan Documents. The security interests, liens and other rights and interests in and relative to any of the collateral now or hereafter granted to Lender by Borrower by or in any instrument or agreement, including but not limited to the Note, Mortgage and the other Loan Documents, shall serve as security for any and all liabilities of Borrower to Lender, including but not limited to the liabilities described in the Note, Mortgage and the other Loan Documents, and, for the repayment thereof, Lender may resort to any security held by it in such order and manner as it may elect.

[INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]

00147265.5

11

**IN WITNESS WHEREOF**, Borrower, Guarantor, and Lender have executed this Agreement the day and year first above written.

BORROWER:

**47 POPLAR OWNERS LLC,**
a Connecticut limited liability company

By: _____
Name: _____
Title: _____

GUARANTOR:

_____
**THOMAS LEE**, individually

_____
**JAMES MCMANUS**, individually

LENDER:

**FAIRBRIDGE CREDIT LLC**
a Delaware limited liability company

By: _____
Name: Steven J. Wissak
Title: Authorized Signatory

00147265.5                                    12

## Schedule A

### Mortgage and Note Schedule

Note

1. Mortgage Note (the "**Note**") dated December 29, 2021, made by 47 POPLAR OWNERS LLC, a Connecticut limited liability company, with a principal place of business at 399 Knollwood Road Ext, Elmsford, New York 10523, as borrower, in favor of REALFI REAL ESTATE INVESTMENT TRUST LLC n/k/a FAIRBRIDGE REAL ESTATE INVESTMENT TRUST LLC, a Delaware limited liability company, with its principal place of business at 330 Post Road, Suite 230, Darien, Connecticut 06820, as lender, in the principal sum of $650,000.00.
   a. As the Note has been assigned by Original Lender to FAIRBRIDGE CREDIT LLC, a Delaware limited liability company, with its principal place of business at 330 Post Road, Suite 230, Darien, Connecticut 06820.
   b. As modified and extended by the Mortgage Extension and Modification Agreement

Mortgage

1. Open-End Mortgage Deed and Security Agreement (the "**Mortgage**") dated December 29, 2021, made by 47 POPLAR OWNERS LLC, a Connecticut limited liability company, having its principal office at 399 Knollwood Road Ext, Elmsford, New York 10523, as grantor, to FAIRBRIDGE REAL ESTATE INVESTMENT TRUST LLC, a Delaware limited liability company, with its principal place of business 330 Post Road, Suite 230, Darien, Connecticut 06820, as grantee, in the principal sum of $650,000.00, and recorded on February 15, 2022 in the New Milford Land Records in Volume 1239 at Page 733.
   a. As assigned by Assignment dated as of September 1, 2022 by FAIRBRIDGE REAL ESTATE INVESTMENT TRUST LLC (f/k/a REALFI REAL ESTATE INVESTMENT TRUST LLC f/k/a TRADEX REAL ESTATE INVESTMENT TRUST LLC), as assignor, to FAIRBRIDGE CREDIT LLC, as assignee.
   b. As modified and extended by the Mortgage Extension and Modification Agreement

00147265.5

13