# **EXHIBIT 29**

## LOAN SALE AGREEMENT

**THIS LOAN SALE AGREEMENT** (this "**Agreement**") entered into as of May __, 2025 by and between **FAIRBRIDGE CREDIT LLC**, a Delaware limited liability company, with an address at 330 Post Road, Suite 230, Darien, Connecticut 06820 ("**Seller**"), and **UPSIDE CONSULTING GROUP LLC**, a New York limited liability company, with an address at 4 Running Brook Lane, New City, New York 10956 ("**Buyer**"), sets forth the terms and conditions whereby Seller agrees to sell and Buyer agrees to purchase the Loan (defined below) set forth on the attached Schedule "A" for the consideration herein stated.

**NOW, THEREFORE**, the Seller and the Buyer agree and represent as follows:

1.  **DEFINITIONS**.  The following terms shall be defined as follows:

    1.1  *Assigned Rights* means:

        1.1.1  All of Seller's right, title and interest in and to the Loan and the Loan Documents; and

        1.1.2  Any and all claims, causes of actions, enforcement actions or the like of or by Seller, whether known or unknown, against any person or entity which are in any way based upon, arise out of, or relate to, the Loan or any of the Loan Documents and the real property commonly known as 1932 McGraw Avenue, Bronx, New York 10462 (the "**Real Property**") relating thereto.

    1.2  *Agreement* means this Loan Sale Agreement and the attachments and schedules hereto.

    1.3  *Borrower* means, 1932 McGraw Avenue LLC, a New York limited liability company.

    1.4  *Business Day* means any day other than a Saturday, Sunday or a national holiday.

    1.5  *Closing* means the simultaneous delivery by Seller and Buyer of documents and funds, and the performance of the acts herein provided to be performed at the Closing.

    1.6  *Closing Date* means the date as agreed upon by the parties.

    1.7  *Collateral Document* means each deed of trust, Mortgage, Assignment of Leases and Rents and Security Agreement, Loan Agreement, assignment of leases and rents, security agreement, assignment of security interest, letter of credit, pledge, collateral agreement, personal or corporate guaranty, loan agreement, the original Secured Promissory Note or other agreement or document, whether an original or copy or whether similar to those enumerated, securing the performance or payment of any of the Notes evidencing any of the Loan subject to this Agreement, and inuring to the benefit of the holder of the Notes.  A schedule of the known Collateral Documents is attached hereto as Schedule "B".

    1.8  *Debtor* means any obligor or guarantor or surety of any Loan or any other party liable

for the performance of obligations associated with any Loan subject to this Agreement, including without limitation the Borrower and any guarantors.

1.9    *Loan* and *Loans* means and includes:

    1.9.1    the obligations evidenced by each promissory Note and any and all amendments thereto; and

    1.9.2    all rights, powers, liens, and security interests of the Seller in or under any Collateral Document and any and all amendments thereto.

1.10    *Loan Documents* means, collectively, any and all documents which evidence or secure the Loan referenced on Schedule "A" attached hereto.

1.11    *Loan Purchase Price* means $1,300,000.

*1.12 Note and Notes* means each promissory note or other evidence of indebtedness included in each Loan.

1.13    *Parties* means Buyer and Seller, collectively.

1.14    *Party* means Buyer or Seller, as applicable.

1.15    *Loan Schedule* means the document containing a full and complete list of all Loans and the current outstanding principal balances thereof, which Loans are the subject of this transaction (Schedule "A" hereto).

2.    **TERMS AND CONDITIONS OF SALE**.  Seller agrees to sell, assign, transfer, and convey to Buyer, on the terms and conditions set forth in this Agreement, all the right, title and interest of Seller, as of the date hereof, in and to the Loan, the Collateral and the Assigned Rights for the Loan Purchase Price.

3.    **CLOSING OF LOAN SALE TRANSACTION**.

3.1    *Time and Place of Closing*.  The within sale transaction shall occur, payment for the Loan, and delivery of the Notes and the Collateral Documents to the Buyer, shall be made at such place and time as may be practicable and agreed upon by the Parties on the Closing Date.  Delivery of the files and other closing documents required to be delivered by the Seller shall be made upon receipt of the Loan Purchase Price, and the closing documents required to be delivered by the Buyer.  The Closing shall, at the Seller's option, be either by e-mail, telephone, confirmed by letter or wire, overnight courier service or conducted in person at the place designated by the Seller.

3.2    *Payment of the Loan Purchase Price.*  At Closing, Buyer shall remit an amount equal to the Loan Purchase Price to Seller on the Closing Date, by wire transfer thereof in immediately available funds to an account designated by Seller.

3.3    *Delivery of Collateral Documents*.  Subject to Section 1.11, upon Closing, and following receipt of the Loan Purchase Price required to be paid at Closing under Section 3.2,  Seller shall deliver to Buyer each known original Collateral Document in its possession associated with each Loan.  In the

event Seller is unable to locate an original Collateral Document and believes such original Collateral Document to have been lost, misplaced or destroyed, Seller shall provide Buyer with a lost Collateral Document affidavit attesting to the fact that such original Collateral Document is believed to have been lost, misplaced or destroyed, but not otherwise assigned or transferred by Seller, and that the original of such Collateral Document shall be provided to Buyer at Seller's expense if subsequently located by Seller.

3.4    *Assignment of Loan and Collateral Documents*.  Subject to Section 1.11, upon Closing, and following receipt of the Loan Purchase Price, Seller shall execute and deliver to Buyer such instruments to transfer to Buyer the right, title and interest of Seller in and to the Loan and such of the Collateral Documents related to each such Loan as the Buyer may reasonably request.    Buyer hereby releases Seller from any loss or damage incurred by Buyer due to the contents of such instruments. Buyer shall record or file said instruments promptly following Closing at its sole expense.  Seller shall cooperate with Buyer to execute such documents as are reasonably necessary to assign the Loan, the Loan Documents and the Assigned Rights to Buyer pursuant to this Agreement.

4.    **REPRESENTATIONS AND WARRANTIES OF BUYER**.  Buyer represents and warrants as follows:

4.1    It will not violate any laws relating to unfair credit collection practices in connection with any of the Loan transferred to Buyer pursuant to this Agreement.  With respect to matters after the closing and acquisition from Seller, Buyer hereby agrees to indemnify Seller and hold Seller harmless from and against any and all claims, demands, actual losses, actual damages, penalties, fines, forfeitures, judgments, payments, reasonable legal fees and any other costs, fees, and expenses hereafter reasonably and actually incurred and disbursed by Seller as a result of (a) a breach by Buyer of the aforesaid warranty, or any other misconduct of the Buyer that results in the assertion of any claims by the Borrower, any Debtors or other third parties against the Seller, (b) except for matters alleged to have occurred prior to the Closing Date herein any claim, demand, or assertion that the Seller was in any way involved in or had in any way authorized any unlawful collection practices by Buyer in connection with any of the Loan transferred to Buyer pursuant to this Agreement, or (c) any claim, demand or assertion that the Seller was in any way involved or engaged in any improper conduct in connection with the sale of the Loan (or any of them) to the Buyer.  Buyer agrees to notify Seller, and Seller agrees to notify Buyer, within ten (10) Business Days of notice or knowledge of any such claim, demand or assertion.  In the event Borrower asserts any such claim, Buyer shall have the right to defend such claim with its own separate counsel. This indemnity shall automatically terminate upon the occurrence that a foreclosure sale on the Real Property in connection with Loan is completed.

4.2    It will not, without the express prior written consent of Seller, institute any legal action in the name of Seller; nor shall Buyer, intentionally or unintentionally, through misrepresentation or nondisclosure, mislead or conceal the identity of the owner of the Loan purchased pursuant to this Agreement so as to imply that Seller continues to be the owner of the Loan and the holder of the Notes. Buyer acknowledges that there is no adequate remedy at law for violation of the provisions of this subparagraph and consents to the entry of a judicial order enjoining any violation or threatened violation of the provisions of this subparagraph.  Buyer hereby agrees to indemnify Seller and hold Seller harmless from and against any and all claims, demands, losses, damages, judgments, legal fees and any other costs, fees and expenses heretofore or hereafter incurred by Seller as a result of a breach by the Buyer of the aforesaid warranty.  In the event Borrower asserts any such claim, Buyer shall have

the right to defend such claim with its own separate counsel. This indemnity shall automatically terminate upon the occurrence that a foreclosure sale on the Real Property in connection with Loan is completed.

4.3     *No Disqualification, etc.*  Buyer is not itself, and is not controlled by, any person with whom Seller is restricted from doing business under the Internal Emergency Economic Powers Act, 50 U.S.C. Section 1701 et seq.; the Trading With The Enemy Act, 50 U.S.C. App. Section 5; the U.S.A. Patriot Act of 2001; any executive orders promulgated thereunder, any implementing regulations promulgated thereunder by the U.S. Department of Treasury Office of Foreign Assets Control ("OFAC") (including those persons and/or entities named on OFAC's List of Specially Designated Nationals and Blocked Persons); or any other applicable law of the United States.

4.4     *Enforceability.*  This Agreement has been duly executed and delivered by the Buyer and constitutes the legal, valid and binding obligation of the Buyer enforceable against the Buyer in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.5     *Performance.*  Buyer's performance of its duties and obligations under this Agreement will not conflict with, result in a breach of or default under, or be adversely affected by, any agreement, instrument, decree, judgment, injunction, order, writ, law, rule or regulation, or any determination or award of any arbitrator, to which the Buyer is a party or by which it or its assets are or may be bound.

4.6     *Compliance with Terms.*  Buyer agrees to abide and be bound by all of the terms and conditions of the Notes, the Collateral Documents and all other agreements related to each of the Loan purchased hereunder, including without limitation the obligations of the Buyer with respect to discharge of mortgages and clearances of applicable lien information, from and after the Closing Date.

4.7     *Independent Investigation.*  Buyer agrees and represents that its decision to purchase the Loan subject to this Agreement is based upon Buyer's own independent review and evaluation of the Loan and of the files made available to it prior to Closing.  Buyer has made such independent investigation as Buyer deems to be warranted into the nature, validity, enforceability, collectability, and value of the Loan, and all other facts it deems material to their purchase, and is entering into this transaction herein provided for, solely on the basis of that investigation and Buyer's own judgment, and is not acting in reliance on any oral or written representation of, or information furnished by any employee or other representative of Seller, and acknowledges that no employee or representative of the Seller has been authorized to make any statements or representations other than those specifically contained in this Agreement.  Buyer hereby waives any right or cause of action it might now or in the future have or claim to have against Seller as a result of its purchase of the Loan subject to this Agreement; provided, however, that this waiver does not include any action taken as a result of Seller's failure to materially perform under the terms of this Agreement.  Buyer is aware of the status of, and has performed its own independent investigation of, any ongoing litigation respecting the Debtors.

4.8     *Sophisticated Entity.*  Buyer (a) is a sophisticated entity with respect to the purchase of the Assigned Rights, (b) is able to bear the economic risk associated with the purchase of the Loan and the Assigned Rights, (c) will not be rendered insolvent by reason of its purchase of the Loan and consummation of the transactions completed herein, (d) has adequate information concerning the

NH2020-2106082335-757729_1                                    4

business and financial condition of Borrower and the other Debtors to make an informed decision regarding the purchase of the Loan and the Assigned Rights, (e) has such knowledge and experience, and has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights and assumption of liabilities of the type contemplated in this Agreement and (f) has independently and without reliance upon Seller, and based on such information as Buyer has deemed appropriate, made its own analysis and decision to enter into this Agreement.  Buyer acknowledges that Seller has not given Buyer any investment advice, credit information or opinion on whether the purchase of the Loan and the Assigned Rights is prudent as to value to Buyer.

4.9    *Authorization*.  Buyer represents that Buyer is duly and legally authorized to enter into this Agreement, that all laws, rules, regulations, charter provisions, agreements and bylaws to which Buyer may be subject have been duly complied with, and that the undersigned representative of Buyer is duly authorized to act on behalf of and bind Buyer to the terms of this Agreement.  Buyer, if a corporation, limited liability company or partnership, warrants that it is duly organized and validly existing under the laws of the jurisdiction in which it is incorporated and will at the Closing supply Seller with a certified copy of the resolution of its Board of Directors, managing members or general partner  authorizing Buyer's entry into this Agreement through such representative, or such other proof of authority as may be acceptable to the Seller, together with such other documents as Seller may reasonably require as evidence of Buyer's good standing.  If Buyer is other than a corporation, Buyer will supply such other evidence of Buyer's existence and authority as Seller may reasonably require including, without limitation, a unanimous written consent of the members of the Buyer.

5.    **SELLER'S DISCLAIMER OF WARRANTIES, REPRESENTATIONS AND RECOURSE**.

5.1    *Disclaimer of Warranties and Representations.*  THE LOAN SOLD TO THE BUYER UNDER THIS AGREEMENT IS SOLD WITHOUT RECOURSE EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT.  OTHER THAN AS EXPRESSLY SET FORTH IN THIS AGREEMENT, NO WARRANTIES OR REPRESENTATIONS OF ANY KIND OR NATURE WHATSOEVER, EXPRESS OR IMPLIED, HAVE BEEN MADE BY SELLER OR BY ANYONE ACTING ON ITS BEHALF.  IN PARTICULAR, BUT WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE FOREGOING, NO WARRANTIES OR REPRESENTATIONS HAVE BEEN MADE REGARDING (a) THE COLLECTABILITY OF ANY LOAN, (b) THE CREDITWORTHINESS OF ANY DEBTOR, (c) THE VALUE OF ANY COLLATERAL SECURING PAYMENT OF ANY LOAN, (d) ANY LOAN DOCUMENTATION (INCLUDING WITHOUT LIMITATION THE EXISTENCE OF SUCH DOCUMENTATION) OR FREEDOM FROM LIENS AND ENCUMBRANCES, IN WHOLE OR IN PART, OR (e) THE TRANSFERABILITY AND ENFORCEABILITY OF ANY NOTE OR ANY OF THE COLLATERAL DOCUMENTS SUPPORTING THE LOAN.

5.2    Further, any other provisions of this Agreement to the contrary notwithstanding, Seller and Buyer agree that no guarantee of any kind or type whatsoever, whether made by public, private, or governmental entity, which is purchased, acquired, assumed, or in any other manner transferred or conveyed to Buyer pursuant to this Agreement, whether as a Collateral Document or otherwise, is represented or warranted by Seller to be enforceable, valid, transferable, current or legal with respect to any Loan.  Further, Seller has not, does not and will not make any representations or warranties with regard to compliance with any environmental protection, pollution or land use laws, rules, regulations, orders or requirements including, but not limited to, those pertaining to the use, handling, generating,

treating, storing or disposing of any hazardous waste, hazardous substances, petroleum product storage tanks or asbestos.

5.3    *Enforceability*.  This Agreement has been duly executed and delivered by the Seller and constitutes the legal, valid and binding obligation of the Seller enforceable against the Seller in accordance with its terms except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

5.4    *Authorization*.  Seller represents that Seller is duly and legally authorized to enter into this Agreement and to execute and deliver all of the Assignment Documents and all other Seller deliverable documents referenced herein to the Buyer, and that all laws, rules, regulations, charter provisions and bylaws to which Seller may be subject have been duly complied with, and that such representative is authorized to act upon behalf of and bind Seller to the terms of this Agreement.  Seller, if a corporation, warrants that it is duly organized and validly existing under the laws of the jurisdiction in which it is incorporated.

5.5    *Performance*.  Seller's performance of its duties and obligations under this Agreement will not conflict with, result in a breach of or default under, or be adversely affected by, any agreement, instrument, decree, judgment, injunction, order, writ, law, rule or regulation, or any determination or award of any arbitrator, to which the Seller is a party or by which it or its assets are or may be bound.

5.6    *No Required Authorizations*.  No authorizations, consents, notices, filings or approvals are or will be necessary to be made to, or must be received from, any person, entity or governmental body, for the valid execution, delivery or performance by Seller of the transaction contemplated in this Agreement.

5.7    *Title to the Loan*.  The Loan, the Loan Documents, the Notes and the Collateral Documents are not subject to any prior assignment or agreement to assign and Seller is the sole and legal beneficial holder and has good title to the same, free and clear of any liens, pledges, claims and encumbrances with respect to the Seller's title.  Seller has not previously assigned the same, or any interest therein, in whole or in part and Seller has not executed any loan sale agreements related to the Loan or Loan Documents or Assigned Interests herein.

6.    **FILES AND RECORDS**.  The Buyer further agrees as follows:

6.1    Buyer agrees to abide by all applicable state and federal laws, rules and regulations regarding the handling and maintenance of all documents and records relating to the Loan purchased hereunder including, but not limited to, the length of time such documents and records are to be retained.

6.2    After transfer of documents or files to Buyer pursuant to the terms of this Agreement, Buyer agrees that Seller shall have the continuing right to use, inspect, and make extracts from or copies of any such documents or records, upon Seller's reasonable notice to Buyer through the date the foreclosure on the Real Property in connection with the Loan is completed or the payoff / settlement of the Loan or resale of the Loan by Buyer.

6.3    Before destruction or disposition of any documents or files transferred hereunder, Buyer agrees to give reasonable notice to Seller and to allow the Seller, at its own expense, to recover the same from Buyer for a period of 12 months after the Closing Date.

7.    **REPORTING TO OR FOR THE INTERNAL REVENUE SERVICE**.  Buyer agrees to submit all Internal Revenue Service forms and information returns for all Loans transferred to Buyer under this Agreement for the balance of the year in which the Closing occurs and thereafter.

8.    **FURTHER ASSURANCES**.  Each of Buyer and Seller agree to (i) execute and deliver, or to cause to be executed and delivered, all such further documents and instruments, and (ii) to take or cause to be taken all such other actions, as Buyer or Seller may reasonably request to effectuate the intent and purpose and to carry out the terms of this Agreement.

9.    **BUYER'S DUTIES REGARDING LOAN IN WHICH THE COLLATERAL IS INSURED**.  Buyer is solely responsible for having itself substituted as mortgagee and/or loss payee on all collateral risk insurance in which the Seller is currently listed as a mortgagee and/or loss payee. Any loss after execution of this Agreement by Seller and Buyer to either a Debtor or to Buyer or to the value or collectability of any Loan due to Seller's cancellation of collateral risk insurance or its failure to identify Buyer as mortgage and/or loss payee is the sole responsibility of Buyer.

10.    **REIMBURSEMENT FOR USE OF SELLER'S EMPLOYEES**.  In the event of litigation with respect to any of the Loans purchased by Buyer in which Seller or its employees are requested or required by subpoena, court order or otherwise, to perform any acts including, but not limited to, testifying in litigation, preparing responses to subpoenas or other legal process or pleadings and/or performing any review of public or private records such as tracing funds, whether said litigation is commenced by Buyer or any other party, Seller shall be reimbursed by Buyer for the time expended by each of Seller's employees involved in the performance of said acts at the rate of Fifty and 00/100ths ($50.00) Dollars per hour, per employee plus all associated travel, lodging and per diem costs.  Seller shall, in its sole and absolute discretion, determine and assign the personnel necessary to perform said acts.  Buyer also agrees to reimburse Seller for copies made in the course of performing said acts at the rate of twenty-five cents ($.25) per copy.  Nothing in this paragraph shall require Seller to provide Buyer with any information or service in this regard

11.    **INDEMNIFICATION**.

11.1    In addition to the obligations of the Buyer to indemnify and hold Seller harmless set forth in Sections 4.1 and 4.2, and 4.9 above, provided Seller has fully performed under this Agreement and has not otherwise breached its obligations and / or representations set forth under this Agreement, then Buyer agrees to indemnify, defend, and hold Seller and its officers, directors, agents, partners, members, controlling entities, attorneys and employees (collectively, "**Seller Indemnitees**") harmless from and against any liability, claim, cost, loss, judgment, damage or expense (including reasonable attorneys' fees and expenses) (collectively, a "**Claim**") that any Seller Indemnitee incurs or suffers as a result of, or arising out of, (a) a material breach of any of Buyer's representations, warranties, covenants or agreements in this Agreement, (b) any claim asserted by Borrower, any Debtor, or any third party, arising from or relating to Buyer's alleged conduct related to purchase of the Loan or any of the foregoing representations, warranties or covenants in this Agreement, and (c) any claim asserted by Borrower, any Debtor, or any third party, arising out of or relating to any action taken by Buyer

subsequent to the purchase of the subject Loan, or to any position taken by Buyer in any action or proceeding relating to the Loan, any collateral security for the Loan or the priority of any liens against the collateral security for the Loan, and in each case described in clauses (a) through (c) above, whether or not such Seller Indemnitee is a party thereto but only to the extent that such claim arises after the Closing Date.  This indemnity shall automatically terminate upon the occurrence that a foreclosure sale on the Real Property in connection with Loan is completed.   Notwithstanding, If this indemnity is triggered, then Buyer may use its own counsel to defend such claim.

11.2    Except for the principal loan amount, and only respecting to partial payments made on account of the Notes from the date the loan was originated through  the date of this Agreement, if Seller is hereinafter forced to remit, rescind or restore the amount or amounts of any such payments under any federal or state bankruptcy law or law for the relief of debtors, or for any other reason, then, in accordance with the terms of the Notes and the Loan Documents, (a) the amount or amounts of such payments shall be considered to have been unpaid at all times, (b) the obligations of the Borrower under the Notes and the Loan Documents shall be automatically reinstated, (c) the Buyer shall immediately pay to Seller all such partial payments that Seller was forced as a matter of law to so remit, rescind or restore, and (d) the Buyer will indemnify and hold Seller harmless from and against any and all losses and reasonable costs and expenses, including reasonable legal fees, incurred by Seller in connection with such remittance, rescission or restoration.  This indemnity shall automatically terminate upon the occurrence that a foreclosure sale on the Real Property in connection with the Loan is completed or upon the payoff / settlement of the Loan.

11.3    Each indemnity in this Agreement is a continuing obligation, separate and independent from the other obligations of the Parties and survives termination of this Agreement as set forth in this Agreement.

12.    **<u>NOTICE TO DEBTOR</u>**.  Buyer or, at Seller's option, Seller, shall promptly after the Closing Date, but in no event later than thirty (30) days after the Closing Date, at its own cost and expense, give notice of this transfer to the Debtors by first class United States mail at their current or last known addresses of record.

13.    **<u>NOTICE OF CLAIM</u>**.  Buyer shall immediately notify Seller of any claim, threatened claim, or any litigation against Seller which may come to its attention regarding the Loan.

14.    **<u>NOTICES</u>**.  All notices or deliveries required or permitted hereunder shall be in writing and shall be deemed given when personally delivered to the individual hereinafter designated or when actually received by means of overnight mail, courier, or certified mail, return receipt requested, at the following address, or such other address as either party may hereafter designate by notice to the other party, making specific reference to this paragraph of this Agreement:

BUYER:    UpSide Consulting Group LLC
4 Running Brook Lane
New City, New York 10956
Attn: _____

SELLER:    Fairbridge Credit  LLC
330 Post Road, Suite 230
Darien, Connecticut 06820

Attn: John Lettera

15. **CONFIDENTIALITY**. Each Party agrees that, without the prior written consent of the other Party, it shall not disclose the contents of this Agreement (including, without limitation, the Loan Purchase Price) to any person or entity, except that either Party may make any such disclosure (a) to its affiliates and its affiliates' respective directors, officers, counsel, accountants and other professional advisors (collectively, "**Representatives**"), (b) as shall be required to implement or enforce this Agreement, (c) in any statement, testimony or other disclosure pursuant to a subpoena or order by any governmental authority or as otherwise may be required by any law, rule or regulation, (d) upon the request or demand of any governmental authority having or asserting jurisdiction over it, or I (e) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other Person. Each Party agrees that is will not issue any press release or make any public statement with respect to the transactions contemplated hereby without the prior written consent of the other Party (which consent shall not be unreasonably withheld or delayed), except as may be required by law or regulation. Notwithstanding anything to the contrary set forth herein, each Party hereto (and each of its Representatives) may disclose to any and all persons, without limitation of any kind, the U.S. federal income tax treatment and U.S. federal income tax structure of the transactions contemplated hereby and all materials of any kind (including opinions or other tax analyses) that are or have been provided to any Party hereto relating to such tax treatment or tax structure, and it is hereby confirmed that each Party hereto has been authorized to make such disclosures since the commencement of discussions regarding the transaction contemplated hereby.

16. **USE OF SELLER'S NAME**. Buyer agrees that it will not use or permit the use by its agents, successors or assigns, of any name or combination of letters which is similar to Seller. Buyer will not represent or imply that it is affiliated with, authorized by, or in any way related to Seller or a federal agency. Buyer and Seller agree and stipulate that breach of the provisions of this section will result in actual and substantial damages to Seller.

17. **RELATIONSHIP BETWEEN BUYER AND SELLER**. The relationship between Seller and Buyer shall be that of seller and buyer. Neither is a trustee or agent for the other, nor does either have any fiduciary obligations to the other. This Agreement shall not be construed to create a partnership or joint venture between the Parties.

18. **NO THIRD-PARTY BENEFICIARY. Nothing in this Agreement is intended to, or shall in any way be construed to, convey to or confer any rights or benefits upon any third party, and no third party shall have the right to enforce any of the terms hereof, excepting only that any released party shall have the right to enforce the release rights of that part**y.

19. **COSTS AND EXPENSES**. The parties to this Agreement agree to pay their own legal and other costs and expenses in connection with the preparation, negotiation, execution and delivery of this Agreement and all related documents and the consummation of the transaction contemplated hereunder.

20. **SURVIVAL**. Each and every covenant made by Buyer or Seller in this Agreement shall survive the Closing and shall not merge into the closing documents, but instead shall be independently enforceable.

21.    **HEADINGS**.  The headings of the various paragraphs and sections of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

22.    **COUNTERPARTS**.  This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or other electronic transmission of a duly executed counterpart of this Agreement shall be as valid, in all respects, as an original.

23.    **CHOICE OF LAW**.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles. To the extent not controlled by the laws of the State of New York, this Agreement shall be controlled by federal law.  Buyer consents to jurisdiction in the federal or state courts of New York.

24.    **WAIVER OF TRIAL BY JURY**.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

[Signature Page Immediately Follows]

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Loan Sale Agreement as of the day and year first above written.

**BUYER:**

**UPSIDE CONSULTING GROUP LLC**, New York limited liability company

By: _____
    Name:
    Title:

**SELLER:**

**FAIRBRIDGE CREDIT LLC**, a Delaware limited liability company

By: _____
    Name:  John Lettera
    Title:  Authorized Signatory

**SCHEDULE "A"**
**LOAN SCHEDULE**

| Loan Reference | Origination Date | Address | Loan Amount | Outstanding Principal Balance |
|---|---|---|---|---|
| Acquisition Loan | February 19, 2021 | 1932 McGraw Avenue, Bronx, New York | $576,000.00 | |
| Building Loan | October 28, 2021 | 1932 McGraw Avenue, Bronx, New York | $1,394,000.00 | |
| Land Loan | October 28, 2021 | 1932 McGraw Avenue, Bronx, New York | $706,000.00 | |
| Subordinate Loan | October 28, 2021 | 1932 McGraw Avenue, Bronx, New York | $200,000.00 | |
| Air Rights Loan | June 3, 2022 | 1932 McGraw Avenue, Bronx, New York | $500,000.00 | |

**SCEHDULE "B"**
**COLLATERAL DOCUMENTS**

The Collateral Documents pertaining to the Loan include the following:

**(a) Acquisition**

Each dated as of February 19th, 2021 unless otherwise stated.

1. Secured Promissory Note
2. Loan Agreement
3. Mortgage, Assignment of Leases and Rents and Security Agreement
4. Assignment of Leases and Rents to additionally Secure $576,000 Secured Promissory Note
5. Attorney Opinion Letter
6. Borrowers Affidavit
7. Certification of Commercial Loan Waiver of Federal and State Truth-In-Lending Disclosures and Jury Trial and Representation by Attorney and OFAC Certification
8. Certificate of 1932 McGraw Avenue LLC
9. Certificate of Title
10. Corporate Borrowing Resolution and General Certificate
11. Environmental Certificate and Indemnity Agreement
12. Errors and Omissions Affidavit and Agreement
13. Estoppel Certificate
14. Agreement to Provide Insurance
15. Cash Collateral and Interest Reserve Agreement
16. Limited Guaranty
17. Acknowledgement of Review of Loan Documents
18. Ownership Certificate
19. Ownership Interests Pledge and Security Agreement (David Delucia)
20. Ownership Interests Pledge and Security Agreement (Eliezer Torres)
21. Ownership Interests Pledge and Security Agreement  (RandyLynn Rastello-McManus)

**(b) Building Loan**

Each dated as of October 28th, 2021 unless otherwise stated.

1. Assignments of Leases and Rents
2. Building Loan Agreement
3. Building Loan Note
4. Building Mortgage and Security Agreement
5. Certification of Budget
6. Collateral Assignment of Architectural Drawings
7. Collateral Assignment of Construction Contract
8. Collateral Assignment of Contracts, permits and Development Rights
9. Guaranty of Completion
10. Notice of Lending
11. UCC-1 Financing Statement (County)
12. UCC-1 Financing Statement (State)

**(c) Land Loan**

Each dated as of October 28th, 2021 unless otherwise stated.

1. Affidavit of Title and other Borrower Representations
2. Assignment of Leases and Rents
3. Attorney Opinion Letter
4. Certification of 1932 McGraw Avenue LLC
5. Conditional Guaranty
6. Consolidated, Amended, and Restated Mortgage and Security Agreement
7. Consolidated, Amended, and Restated Note
8. Environmental Indemnity Agreement
9. Gap Mortgage
10. Gap Note
11. Instructions to Register Pledge
12. Certificate of Title
13. Ownership Interests Pledge and Security Agreement
14. Prepaid Interest Agreement
15. Share Certificate #1
16. Share Certificate #2
17. Share Certificate #3
18. Statement of Understanding
19. Unanimous Consent of the Members
20. UCC-1 Financing Statement (County)
21. UCC-1 Financing Statement (State)
22. UCC-1 Financing Statement (Pledge)

**(d) Subordinate Loan**

Each dated as of October 28th, 2021 unless otherwise stated.

1. Affidavit of Title and Other Borrower Representations
2. Assignment of Leases and Rents
3. Certification of 1932 McGraw Avenue LLC
4. Conditional Guaranty
5. Environmental Indemnity Agreement
6. Prepaid Interest Agreement
7. Subordinate Mortgage and Security Agreement
8. Subordinate Promissory Note
9. UCC-1 Financing Statement (County)
10. UCC-1 Financing Statement (State)
11. Unanimous Consent of the Members

**(e) Air Rights Loan**

Each dated as of June 3rd, 2022, unless otherwise stated.

1. Affidavit of Title and Other Borrower Representations
2. Assignments of Leases and Rents
3. Attorney Opinion Letter
4. Conditional Guaranty
5. Environmental Indemnity Agreement

6. Certificate of Title
7. Mortgage and Security Agreement
8. Prepaid Interest Agreement
9. Secured Promissory Note
10. UCC-1 Financing Statement (County)
11. UCC-1 Financing Statement (State)

