UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

JAMES MCMANUS ON BEHALF OF 1932 MCGRAW AVENUE, LLC, 47 POPLAR OWNERS LLC, AND JAMES MCMANUS, individually,

:
:
:
:

Case No. 25-cv-10573

                    **Plaintiffs,**

:
:

            **-against-**

:
:

Hon. Arun Subramanian

JOHN C. LETTERA, STEVE WISSAK, PAT MARUGGI, BRIAN T. WALTER, ANTHONY C. BALBO, FAIRBRIDGE MORTGAGE LLC D/B/A FAIRBRIDGE CREDIT LLC, FAIRBRIDGE ASSET MANAGEMENT LLC, FAIRBRIDGE STRATEGIC CAPITAL LLC, REALFI PRIVATE LENDING LLC, REALFI CAPITAL FUNDING LLC, REALFI NATIONAL LAND SERVICES LLC, REALFI REAL ESTATE INVESTMENT TRUST LLC, FB POPLAR LLC and FB CHURCHILL FACILITY LLC,

:
:
:
:
:
:
:
:
:
:
:
:
:
:

                    **Defendants.**

:
:

------------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE IMPERTINENT, SCANDALOUS AND IMMATERIAL ASSERTIONS FROM THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f)**

                                **MELTZER, LIPPE, GOLDSTEIN &**
                                   **BREITSTONE, LLP**
                               **190 Willis Avenue**
                               **Mineola, New York 11501**
                               **Tel.: (516) 747-0300**

                                 *Attorneys for Defendants*

**March 18, 2026**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ……………………………………………    ii

PRELIMINARY STATEMENT …………………………………………    1

    A.     The Many Substantive Defects in the Amended Complaint …    1

    B.     The Amended Complaint's Impertinent, Scandalous and
           Immaterial Assertions ……………………………………….    3

ARGUMENT …………………………………………………………    9

     THE COURT SHOULD STRIKE ALL OF THE SCANDALOUS
     ASSERTIONS FROM THE AMENDED COMPLAINT …………    9

CONCLUSION ……………………………………………………….    12

WORD-LIMITATION COMPLIANCE CERTIFICATE ………………..    Appendix A

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ……………………………………………… 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ……………………………………………. 2

*Brown v. Maxwell*,
   929 F.3d 41 (2d Cir. 2019) …………………………………… 9

*Cabble v. Rollieson*,
   2006 WL 464078 (S.D.N.Y. 2006) ………………………………... 11

*G-I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) ………………………………... 10, 12

*Global View Ltd. Venture Capital v. Great Central
   Basin Exploration, L.L.C.*,
   288 F. Supp. 2d 472 (S.D.N.Y. 2003) ………………………………... 10

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) ………………………………... 9

*Low v. Robb*,
   2012 WL 173472 (S.D.N.Y. 2012) ………………………………... 9, 11, 12

*Roberto's Fruit Market, Inc. v. Schaffer*,
   13 F. Supp. 2d 390 (E.D.N.Y. 1998) ……………………………………. 10-11

*Scheuer v. United States Liability Ins. Co.*,
   2023 WL 4275114 (S.D.N.Y. 2023) ……………………………………. 11

*Toto v. McMahan, Brafman, Morgan & Co.*,
   1995 WL 46691 (S.D.N.Y. 1995) ……………………………………. 11-12

*Williams v. Williams*,
   23 N.Y.2d 592 (1969) ………………………………………………... 8

4912-2021-9288, v. 2

**Page**

**Rules**

Fed. R. Civ. P. 8 …………………………………………………… 2

Fed. R. Civ. P. 9(b) ………………………………………………… 2

Fed. R. Civ. P. 12(f) …………………………………………………….. *passim*

**Statutes**

N.Y. Civ. Rights Law § 74 …………………………………………… 8

**Other Authorities**

"FBI's Mafia Org. Chart," accessible at *https://www.fbi.gov/file-repository/mafia-family-tree.pdf/view#:~:text=Documents, Philadelphia%2C%20Chicago%2C%20and%20Detroit*) ……………….. 4

"John C. Lettera Commended for Continued Success in the Real Estate Private Credit Sector," 24-7PressRelease (March 4, 2026), accessible at *https://www.24-7pressrelease.com/press-release/532376/john-c-lettera-commended-for-continued-success-in-the-real-estate-private-credit-sector* …………………………………………………………….. 6-7

"Leading Investment Management Firm Provides Grant for Experiential Learning at the Elisabeth Haub School of Law, Naming Its RealFi Funding Investor Rights Clinic," Pace University (Oct. 7, 2021), accessible at *https://www.pace.edu/news/leading-investment-management-firm-provides-grant-experiential-learning-elisabeth-haub-school* ................................................................................ 7-8

Lee Lamothe and Adrian Humphreys, *The Sixth Family: The Collapse of the New York Mafia and the Rise of Vito Rizzuto* (HarperCollins Canada 2006) ……………………………………………………………… 4

Tom Fehn and Jessi Rucker, "FBI Speaks To the Impact About State of the Mafia," *The Impact* (April 30, 2012), accessible at *https://theimpactnews.com/archives-2011/2012/04/30/fbi-speaks-to-the-impact-about-state-of-the-mafia/* …………………………................. 6

iii

Defendants Fairbridge Credit LLC ("*Fairbridge*"); Fairbridge Mortgage LLC; Fairbridge Asset Management LLC; Fairbridge Strategic Capital LLC; Realfi Private Lending LLC; Realfi Capital Funding LLC; Realfi National Land Services LLC; Realfi Real Estate Investment Trust LLC; FB Poplar LLC and FB Churchill Facility LLC (collectively, the "*Fairbridge Entities*") and John C. Lettera; Steven Wissak; Brian T. Walter; Anthony C. Balbo; and Patrick Maruggi (collectively, the "*Individual Defendants*") respectfully submit this Memorandum of Law in support of their motion, pursuant to the inherent authority of this Court and the power granted to it under Rule 12(f) of the Federal Rules of Civil Procedure (the "*Rules*" or a "*Rule*"), for an Order striking immaterial, impertinent and scandalous allegations from the Amended Complaint (the "*Amended Complaint*" or "*Cmplt.*") filed by plaintiff James McManus ("*McManus*") in both his individual capacity and his purportedly representative capacity on behalf of 1932 McGraw Avenue, LLC ("*McGraw*") and, apparently, 47 Poplar Owners LLC ("*Poplar*") (collectively, the "*Plaintiffs*").

The Fairbridge Entities and the Individual Defendants are referred to collectively hereinafter as the "*Defendants*."

## PRELIMINARY STATEMENT

### A.   The Many Substantive Defects in the Amended Complaint

For all the reasons set forth in Defendants' Memorandum of Law in support of their motion to dismiss the Amended Complaint, as well as in the supporting March 16, 2026 Affidavit of John C. Lettera (with exhibits) submitted therewith (the "*Dismissal Motion*"), which are being filed separately with the Court on this date, each and every claim alleged in the

1

Amended Complaint should be dismissed with prejudice.  Defendants respectfully incorporate into this Memorandum of Law their supporting papers in support of their Dismissal Motion.

Defendants' Dismissal Motion demonstrates that the Amended Complaint is fatally defective as a matter of law and should be dismissed with prejudice.  The several fatal defects include, but are not limited to, lack of standing; release and waiver; reliance upon conclusory, implausible fact assertions in lieu of the well-pled, particularized factual allegations required under *Twombly, Iqbal* and Rules 8 and 9(b); ignoring and concealing from the Court the key contracts and other documents that are so integral to and which thoroughly undermine the claims attempted to be pled in the Amended Complaint; and utterly failing to plead the elements of each of the purported claims, which include two baseless RICO claims.

As detailed in Defendants' memorandum of law in support of their Dismissal Motion, McManus — who lacks standing to sue derivatively on behalf of McGraw or Poplar (or to assert direct claims by Poplar) and who, along with McGraw and Poplar, has fully released all claims against Defendants — glosses over the material breaches by McGraw (and later, Poplar) of its contractual repayment obligations to Fairbridge.  In so doing, McManus attempts baselessly to smear as wrongful — indeed, as criminal — (a) Fairbridge's routine, lawful extension of certain commercial construction-related loans to McGraw, (b) Fairbridge's routine, lawful entry into respective mortgage-loan repurchase facilities to finance said loans and (c) Fairbridge's routine, lawful exercise, upon the borrowers' defaults, of foreclosure rights expressly provided by a set of arm's-length-negotiated loan contracts agreed to by McGraw and other sophisticated commercial counterparties, all of whom were represented by separate legal counsel.

Fairbridge's foreclosure rights were exercised in late 2025 in response to McGraw's continued default of its contractual obligations to repay to Fairbridge by their April 2023 maturity date four construction-related loans made to McGraw in connection with the latter's failed efforts to construct at 1932 McGraw Avenue in the Bronx (the "***McGraw Property***"), a multifamily apartment building (the "***Construction Project***"), and then, in February 2026, in connection with Poplar's default under the terms of its separate mortgage loan with Fairbridge.

Again, as explained in the Dismissal Motion, no matter how many ethnic and other *ad hominem* attacks and pejorative adjectives/adverbs McManus sprinkles into his thoroughly defective conclusory allegations, and no matter how many extraneous third parties McManus references gratuitously therein, the Amended Complaint — like his Original Complaint filed on December 19, 2025 — fails to plead a single viable claim and should therefore be dismissed with prejudice.

### B. The Amended Complaint's Impertinent, Scandalous and Immaterial Assertions

In a desperate attempt to compensate for its failure to include any well-pled or plausible allegations of fact, as opposed to bald, conclusory assertions, in support of its defective claims against Defendants, the Amended Complaint relies upon *ad hominem*, defamatory attacks contained in scores of impertinent, scandalous and immaterial assertions (collectively, the "***Scandalous Assertions***").  These Scandalous Assertions are designed to defame and embarrass Defendants, while obscuring the fatal defects mandating dismissal of the Amended Complaint.

4912-2021-9288, v. 2

Defendants respectfully request that the more egregious Scandalous Assertions identified in the emphasized statements from the Amended Complaint set forth below be stricken from the Amended Complaint pursuant to Rule 12(f):

(a) "***THE FAIRBRIDGE 'SIXTH FAMILY' HIERARCHY***."  Cmplt. at unnumbered page 4, ECF No. 24, page 4 of 36 (emphasis added).  This outrageous smear is apparently based upon a book published by Lee Lamothe and Adrian Humphreys, *The Sixth Family: The Collapse of the New York Mafia and the Rise of Vito Rizzuto* (HarperCollins Canada 2006).

(b) "***The defendant's [sic] business structure eerily reflects your run-of-the-mill organized crime racketeering operation***[.]"  Cmplt. ¶ 25 (emphasis added).

(c) "***The Fairbridge Enterprise operates not as a legitimate lender, but as a Systemic Pathogen within the $1.4 Trillion private credit market. Utilizing a roster of FDIC banned and accused tax fraud operatives, the Enterprise utilized bank fraud to inject 'toxic,' mob-linked***, and structured loan defaults into three distinct pillars of the global financial system."  Cmplt. ¶ 27 (emphasis added).

(d) "The Defendant 'infected' the billion-dollar platforms of Churchill Asset Management and specialized investment affiliate and subsidiary of Nuveen with ***notes guaranteed by convicted organize [sic] crime individuals***."  Cmplt. ¶ 81 (emphasis added).

(e) "***Defendants and their associates are a version of what today's modern-day mafia strives for***."  Cmplt. ¶ 135 (emphasis added).

(f) "Defendants and their affiliated companies are comprised of ***professional con-artists and disbarred attorneys***."  *See* Cmplt. ¶ 137 (emphasis added).

In recklessly comparing to the Mafia the lawful, highly acclaimed top-notch business that Defendants have worked so hard to build, Paragraph 26 of the Amended Complaint spews shameful ethnic slurs and lies.  Apparently tracking the FBI's Mafia organizational chart (*see "*FBI's Mafia Org. Chart," accessible at *https://www.fbi.gov/file-repository/mafia-family-tree.pdf/view#:~:text=Documents, Philadelphia%2C%20Chicago%2C%20and%20Detroit*),

4

Paragraph 26 of the Amended Complaint asserts that "Defendants [*sic*] 'business' structure is as follows:

> "***The 'Boss'***: John Lettera
>
> "<u>The Profile</u>: The '***Neighborhood Intellectual.'  A Desert Storm Veteran, Pace Adjunct Professor***, and Attorney.
>
> "<u>The RICO Role</u>: Utilizes his ***professional 'mask'*** to provide legitimacy to 30 years of 'Shylocking' origins. He is the architect of the 'Institutional Laundry Cycle' — approving loans for future structural defaults 'washing' it through his Pace/Attorney credentials to deceive both borrowers and his funding institutions.
>
> "***The 'Underboss***.'  Brian Walter (***The Yale Connection***)
>
> "<u>The Profile</u>. The ***Yale University graduate who brought the 'Wall Street Fuel***.'
>
> "<u>The RICO Role</u>: He is the bridge to Oaktree Capital.  Walters [*sic*] utilized his Yale pedigree and previous institutional relationships to secure the $100 Million Warehouse Line.  He is the 'Face' that convinced investors the Enterprise was 'Institutional Grade' ***while knowing the 'engine' was fueled by Colombo and Lucchese associates***.
>
> "***The 'Consigliere***': Steve Wissak
>
> "<u>The Profile</u>: The Background 'Legal Architect'
>
> "<u>The RICO Role</u>: Responsible for manufacturing the 'Procedural Haze' — the deficient Connecticut filings (FB Poplar) and the Cross-Collateralization traps.  He ensures the Enterprise's 'paperwork' remains convoluted enough to mask the fraud from audit.
>
> "***The 'Caporegime***': [Non-party attorney] William Turkish (***The Long Island Enforcer***)
>
> "<u>The Profile</u>: The ***'Shadow Counsel' with a Public Record of Alleged Tax Evasion***.
>
> "<u>The RICO Role</u>: Runs the 'Execution Phase.'  His firm was the location of the 'sham' UCC Auction while plaintiff was recovering from a sextuple bypass.
>
> "***The 'Soldiers'*** (***The Compliance Killers***)

> "[Non-party] Biagio Maffettone: The purported ***FDIC-Banned Banking Technician*** whose intimate knowledge allowed defendants to evade banking regulator scrutiny.
>
> "Pat Maruggi: ***A Disbarred Attorney and Convicted Felon who 'Targets' the victims***."

Cmplt. ¶ 26 (underscoring in original; boldface italicized emphasis added).

That McManus and his counsel would dare compare Fairbridge to the murderous career criminals that comprise the Mafia is beyond outrageous. *See generally* Tom Fehn and Jessi Rucker, "FBI Speaks To the Impact About State of the Mafia," *The Impact* (April 30, 2012) (FBI Agent Tim Flannelly explained that the Mafia "'are dangerous to the financial infrastructure of the city by ***their union criminal activity and the use of coordinated violence to reinforce their objectives***.' . . . '***The truth is [the Mafia] are very harmful physically***, and harmful to our economic infrastructure.'") (emphasis added), accessible at *https://theimpactnews.com/archives-2011/2012/04/30/fbi-speaks-to-the-impact-about-state-of-the-mafia/*.

The Scandalous Assertions serve no legitimate purpose except to further McManus's vindictive attempt to publicly disparage and embarrass Fairbridge and to erode its sterling reputation, which reputation is reflected in the below sample press releases concerning Fairbridge and its personnel:

► "John C. Lettera has been selected for inclusion in Marquis Who's Who. . . .

"John C. Lettera is a strategic leader in real estate private credit and Co-Founder of Fairbridge Asset Management, a national real estate credit platform and REIT operating across all 50 states. Since 2018, he has helped build Fairbridge into a nationally recognized fund backed by institutional investors, with a diversified portfolio spanning residential mortgages, commercial bridge lending, and complex asset resolutions.

"With more than 35 years of experience in real estate finance and law, Mr. Lettera focuses on protecting and enhancing portfolio performance through disciplined

6

asset management.  He oversees the resolution of non-performing loans, restructurings, foreclosures, and bankruptcies — stabilizing assets and preserving investor capital across market cycles.  His operator's mindset and legal precision have established Fairbridge as a trusted capital partner in transitional and value-oriented credit opportunities nationwide.

"A graduate of the Elisabeth Haub School of Law at Pace University, where he finished at the top of his class, Mr. Lettera began his legal career at Milbank LLP before applying the strategic rigor developed on Wall Street and through his service in the U.S. Marine Corps to private credit investing.  He is a Forbes Councils contributor and adjunct professor of corporate and real estate finance, mentoring the next generation of legal and financial professionals.

".  .  .  A Marine Corps combat veteran, he also actively supports veterans' initiatives nationwide.

"Mr. Lettera has been married for more than 27 years and is the father of two children.  He regards his military service and dedication to family among his proudest achievements."

"John C. Lettera Commended for Continued Success in the Real Estate Private Credit Sector,"

24-7PressRelease (March 4, 2026), accessible at *https://www.24-7pressrelease.com/press-release/532376/john-c-lettera-commended-for-continued-success-in-the-real-estate-private-credit-sector*.

►    "The Elisabeth Haub School of Law at Pace University has received a generous five-year grant to name its Investor Rights Clinic after RealFi Financial LLC, a leading, technology-driven, alternative investment management firm.  .  .  .
* * *
"'We deeply appreciate RealFi's generous gift, which will help the clinic continue to expand its important work to bring access to justice to small investors and provide our students with additional educational and advocacy opportunities,' said Professor Elissa Germaine, Executive Director of John Jay Legal Services and Director of the RealFi Funding Investor Rights Clinic.

"The grant from RealFi was inspired by its Founder and CEO John C. Lettera, who is a 1999 graduate of Haub Law and also serves as an adjunct professor at the Law School, teaching Corporate Finance to upper level students.
* * *
"Lettera is another alumni success story for the Elisabeth Haub School of Law. He has over 21 years of legal experience and over 27 years experience in real estate debt originations and acquisitions as well as equity investing.  .  .  .  His teaching and philanthropic commitments are among many contributions to the law

7

school, as he generously lends his expertise on panels and his broad network for fundraising events.  In 2013, he received the distinguished Haub Law Leadership Award recognizing his support."

"Leading Investment Management Firm Provides Grant for Experiential Learning at the Elisabeth Haub School of Law, Naming Its RealFi Funding Investor Rights Clinic," Pace University (Oct. 7, 2021), accessible at *https://www.pace.edu/news/leading-investment-management-firm-provides-grant-experiential-learning-elisabeth-haub-school*.

Moreover, ***McManus and his counsel have recently continued their smear campaign outside this lawsuit***, embarking upon a coordinated media blitz in which they have made a host of statements doubling down on and going beyond the Scandalous Assertions made in the Amended Complaint.  Such defamatory statements are not protected by litigation immunity.  At the appropriate time, Defendants will address what they believe to be the blatant violation by McManus and his counsel of — among other statutes, ethical rules and principles of law — New York Civil Rights Law § 74, which makes clear that a litigant is shielded from civil claims only if said litigant publishes "a fair and true report of any judicial proceeding[.]"  *See, e.g., Williams v. Williams*, 23 N.Y.2d 592, 599 (1969) (Civil Rights Law § 74 does not "allow 'any person' to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute.  'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation[.]'").

Accordingly, Defendants respectfully submit that the Scandalous Assertions should be stricken in their entirety under Rule 12(f).

4912-2021-9288, v. 2

## ARGUMENT

### THE COURT SHOULD STRIKE ALL OF THE SCANDALOUS ASSERTIONS FROM THE AMENDED COMPLAINT

"The Supreme Court has explained that '[e]very court has supervisory power over its own records and files' to ensure they 'are not used to gratify private spite or promote public scandal' or 'serve as reservoirs of libelous statements for press consumption.'" *Brown v. Maxwell*, 929 F.3d 41, 52 (2d Cir. 2019). The Second Circuit emphasized that "[t]his supervisory function is not only within a district court's power, but also ***among its responsibilities***." *Id.* at 52 (emphasis added). "In practice, district courts may employ several methods to fulfill this function. . . . [For example], under Federal Rule of Civil Procedure 12(f), the district court may strike such material from the filings on the grounds that it is 'redundant, immaterial, impertinent, or scandalous.' Because such rejected or stricken material is not 'relevant to the performance of the judicial function' it would not be considered a 'judicial document' and would enjoy no presumption of public access." *Id*.

In evaluating Rule 12(f) motions, courts consider whether "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Low v. Robb*, 2012 WL 173472, at *8 (S.D.N.Y. 2012). "Motions to strike serve 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018).

4912-2021-9288, v. 2

Under Rule 12(f), "*allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones*." *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (emphasis added). As noted, most of the Scandalous Assertions are designed to speciously equate Fairbridge to the Mafia. *See, e.g.*, Cmplt. ¶ 135 ("Defendants and their associates are a version of what today's modern-day mafia strives for"); *id.* ¶ 26 (attempting frivolously to manufacture out of whole cloth a Mafia crime family by the use of defamatory and inflammatory terms such as "Boss," "Underboss," "Consigliere," "Caporegime," "Soldiers" and the "SIXTH FAMILY").

Respectfully, this Court should strike the Scandalous Assertions from the Amended Complaint. *See, e.g., Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 472, 481 (S.D.N.Y. 2003) ("[T]he court nevertheless strikes the paragraph [alleging that "[t]his action stems from what is, upon information and belief, the fraudulent, self-dealing, malicious and otherwise outrageous misconduct of Bloch and Salazar, two unscrupulous, unprincipled con artists who have acted in a wanton and malicious matter in their commercial dealings with Plaintiffs"]. *The above-quoted paragraph amounts to nothing more than name calling, and does not contribute to Global View's substantive claims. Whether or not Global View ultimately prevails depends on whether Bloch and Salazar have committed the particular torts alleged, not on whether they are 'unscrupulous' people or 'con artists*.'") (emphasis added); *Roberto's Fruit Market, Inc. v. Schaffer*, 13 F. Supp. 2d 390, 397 (E.D.N.Y. 1998) ("*references to purported [criminal] investigations, reputed 'ties to organized crime,' or crimes which do not constitute predicate acts under RICO, have no place in the Complaint. Even assuming such allegations were true, they are interesting side issues which bear no relation to a RICO claim. . . . The dozens of paragraphs devoted to such tangents*

10

*. . .  **should be stricken from the Amended Complaint under Rule 12(f)**, which prohibits 'immaterial, impertinent and scandalous' matters.") (emphasis added).  *See also Scheuer v. United States Liability Ins. Co.*, 2023 WL 4275114, at \*2-\*4 (S.D.N.Y. 2023) ("[t]he Court finds that Plaintiffs' allegation that USLI is 'treating their own insureds like fiscal enemies' is inflammatory and irrelevant to Plaintiffs' claims, and therefore GRANTS Defendant's motion to strike that specific portion alleged in paragraph 31 of the Verified Complaint").

Even where, unlike in the Amended Complaint, inflammatory allegations have some relevance to the alleged claims, the court should strike them where they are impertinent, scandalous or immaterial.  *See, e.g., Low*, 2012 WL 173472, at \*10-\*11 ("These paragraphs do provide some relevant background information.  But they also contain disparaging comments on matters that are simply not pertinent to any material issue.  Specifically, the allegations that Robb was 'lucky' enough to be 'born into extreme wealth,' and that he was 'home-schooled and had not distinguished himself in any way,' do not bear on any issue in the case."); *Cabble v. Rollieson*, 2006 WL 464078, at \*11 (S.D.N.Y. 2006) ("A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court.  Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'").

Finally, the Scandalous Assertions set forth in the Amended Complaint should also be stricken because, like the media statements by McManus and his counsel referenced above, the Scandalous Assertions are designed to poison the jury pool.  *See, e.g., Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691, at \*17 (S.D.N.Y. 1995) ("This Court agrees with defendants that these [criminal overtone] references should be stricken as immaterial, impertinent and scandalous [to a RICO claim].  **If the jury is ultimately made aware**

11

*of these matters at trial through reading the Amended Complaint, defendants will be prejudiced. The Court therefore grants defendants' motion and hereby strikes the indicated references to purported criminal tax fraud violations, the references to Wexler's indictment, and the references to Minor Eager's naming as an unindicted co-conspirator*") (emphasis added); *G-I Holdings*, 238 F. Supp. 2d at 556 (striking scandalous allegations because, "[i]n addition to the lack of relevance of the allegations, they are also prejudicial. [The allegations] are amorphous, unspecific and cannot be defended against. *Further, the allegations, which have been publicized, harm [defendant] in the public eye and could influence prospective jury members*.") (emphasis added); *Low*, 2012 WL 173472, at *10 ("*disparaging comments . . . appear[ing] to be an attempt to gin up resentment against [defendants] on the part of the jury, or, more generally, to embarrass . . . [and] ad hominem character attacks that do not assert any facts . . . are [not] immune to Rule 12(f)*") (emphasis added).

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that the Court strike the Scandalous Assertions contained in the Amended Complaint.

**Dated: Mineola, New York**
**March 18, 2026**

**MELTZER, LIPPE, GOLDSTEIN &**
**BREITSTONE, LLP**

By: */s/ Robert A. Alessi*
    **Robert A. Alessi (*ralessi@meltzerlippe.com*)**
    **Matthew R. Ross (*mross@meltzerlippe.com*)**
    **Preston S. Scherr (*pscherr@meltzerlippe.com*)**
**190 Willis Avenue**
**Mineola, New York 11501**
**Tel.: (516) 747-0300**

*Attorneys for Defendants*

12

## APPENDIX A

## WORD-COUNT CERTIFICATION
## PURSUANT TO LOCAL CIVIL RULE 7.1(c)

In reliance upon the word-count feature of the word-processing system on which the foregoing *Defendants' Memorandum of Law in Support of Their Motion To Strike Impertinent, Scandalous and Immaterial Assertions From the Amended Complaint Pursuant To Fed. R. Civ. P. 12(f)* (the "***Brief***") was prepared, the undersigned hereby certifies that the Brief contains 3,268 words, excluding (a) the case caption page, (b) the Table of Contents, (c) the Table of Authorities, (d) the dated signature block on the final page of the Brief and (e) this Word-Count Certification.

*/s/ Matthew R. Ross*
**Matthew R. Ross**